UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

EDWARD PITRE,

                                        Plaintiff,

        - against -                                                 **JOINT PROPOSED JURY
                                                                    INSTRUCTIONS**[2]

THE CITY OF NEW YORK, FIRE                                          Case No. 18-CV-5950-VM
DEPARTMENT OF THE CITY OF NEW YORK[1],
JAN BORODO, individually,  and JOSEPH M.
MASTROPIETRO, individually,

                                        Defendants.
------------------------------------------------------------------x

        The parties, plaintiff Edward Pitre ("Plaintiff"), by his attorneys, The Derek Smith Law

Group, PLLC, and defendants The City of New York("City"), Jan Borodo ("Borodo"),  ,[3] and

Joseph M. Mastropietro ("Mastropietro"), collectively "Defendants," by their attorney, Hon.

Sylvia Hinds-Radix, Corporation Counsel of the City of New York,  New York as for their Joint

Jury Instructions set forth as follows:[4]


I.      **INITIAL INTRODUCTORY INSTRUCTIONS**[5]


**Joint Instruction No. 1:        Introduction**

---

[1] The Fire Department of the City of New York, as an agency of the City of New York, is not a suable entity. See
Olabopo v. Gomes, 2016 U.S. Dist. LEXIS 134521, at *9 (E.D.N.Y. September 28, 2016) (dismissing claims
against FDNY because it is a non-suable entity); United States v. City of New York, 683 F.Supp.2d 225, 243
(E.D.N.Y.2010) (citing Warheit v. City of New York, No. 02 Civ. 7345 (PAC), 2006 U.S. Dist. LEXIS 58167, 2006
WL 2381871, at 13 (S.D.N.Y. Aug. 15, 2006)) (dismissing all claims against FDNY because FDNY is not suable).
Accordingly, any claims against FDNY must be dismissed from this case and removed from the caption.
[2] The parties have highlighted points of disagreement as follows: language that defendants object to is italicized and
language that plaintiff objects to is underlined.
[3] Defendant's object to including Fiorentino in the jury instructions.  Plaintiff represented that Plaintiff intends to
dismiss Defendant Fiorentino from the action and not substitute another party in his place.
[4] The parties reserve the right to amend and supplement their proposed jury instructions as required.
[5] The parties respectfully note that in addition to substantive instruction charges for the jury, they have also
submitted general instruction charges in an abundance of caution,  but are mindful that the Court likely has its own
preliminary and general instructions for use at trial.  In addition, the parties respectfully reserve the right to include
additional substantive jury charges, if necessary, at the time of trial based upon the course of the proceedings.

Ladies and gentlemen of the jury, we are about to begin the trial of the case you heard about during the jury selection.  Before the trial begins, I am going to give you instructions that will help you understand what will be presented to you and how you should conduct yourself during trial.

During the trial you will hear me use a few terms that you may not have heard before. Let me briefly explain some of the most common to you.  The party who sues is called the plaintiff. In this action, the plaintiff is Edward Pitre.  The parties being sued are called defendants.  In this action, the defendants are The City of New York, Jan Borodo, and Joseph M. Mastropietro.

Over the course of this trial, you will sometimes hear me refer to "counsel." "Counsel" is another way of saying "lawyer" or "attorney." I will sometimes refer to myself as the "Court." When I say, "admitted into evidence" or "received into evidence," I have ruled that this particular statement or the particular exhibit may be considered by you in making decisions you must make at the end of the case.

Because you will be asked to decide the facts of this case, you should give careful attention to the testimony and evidence presented.  During the trial you should keep an open mind and should not form or express any opinion about the case until you have heard all of the testimony and evidence, the lawyers' closing arguments, and my instructions to you on the law.

From time-to-time during the trial, I may make rulings on objections or motions made by the lawyers.  It is a lawyer's duty to object when the other side offers testimony or other evidence the lawyer believes is not admissible.  You should not be biased or partial against a lawyer or the lawyer's client because the lawyer has made objections.  When I "sustain" an objection, I am excluding that evidence from this trial.  When you hear that I have "overruled" an objection, I am permitting that evidence to be admitted.  If I sustain or uphold an objection to a question that goes unanswered by the witness, you should not draw any inference or conclusions from the question.

2

You should not infer or conclude from any ruling or other comment I may make that I have any opinions on the merits of the case favoring one side or the other. I do not favor one side or the other.

During the course of the trial I may ask a question of the witness. If I do, that does not indicate that I have any opinion about the facts in the case.

The lawyers are not allowed to speak with you during the case. If you see the lawyers at a recess or pass them in the halls and they do not speak to you, they are not being rude or unfriendly; they are simply following the law.

During the trial, it may be necessary for me to talk with the lawyers out of your hearing about questions of law or procedure.  Sometimes, you may be excused from the courtroom during these discussions.  I will try to limit these interruptions as much as possible, but I ask that you keep in mind the importance of the matter you are here to determine and ask that you will be patient even though the case may seem to go slowly.

**SOURCE:**  3 O'Malley, Grenig & Lee, *Federal Jury Practice & Instructions* ("Fed. Jury Prac. & Instr."), § 101:01, 30, 31, 49 (6th ed.); 4 Sand, Siffert, Loughlin, Reiss, Allen, Rakoff, <u>Modern Federal Jury Instructions-Civil</u> ("Modern Fed. Jury Instr.-Civil"); Model Civ. Jury Instr. 3rd Cir. 1.1-1.12 (2017) (adapted).

**Joint Instruction No. 2:      Order of Trial**

The case will proceed in the following order:

First, Plaintiff will make his opening statements outlining his case.  Immediately after Plaintiff's statement, Defendants will make their opening statement outlining their respective cases.  The parties are not required to make an opening statement.  What is said in opening statements is not evidence, but is simply designed to provide you with an introduction as to the evidence that the parties intend to produce.

Second, Plaintiff will introduce evidence in support of his claims.  At the conclusion of Plaintiff's case, Defendants will introduce evidence if they choose.  In order to keep the case moving in an orderly fashion, the Defendants will present whatever questions or exhibits they would have put on during their case at the time the Plaintiff calls the witness to the stand.  This will keep us from having to call witnesses more than once and save time.

Third, the parties may present closing arguments to you as to what they consider the evidence has shown and as to the inferences that they contend you should draw from the evidence.  What is said in closing arguments, just as what is said in opening statements, is not evidence.  The arguments are designed to present to you the contentions of the parties based on the evidence introduced.

Fourth, I will instruct you on the law which you are to apply in reaching your verdict.

Source:         O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, §101.02 (5th ed. 2000).

**Joint Instruction No. 3:         Province of Judge and Jury**

Now that I have described the trial itself, let me explain the jobs that you and I are to perform during the trial.  After all the evidence has been heard and arguments and instructions are finished, you will meet to make your decision. You will determine the facts from all the testimony and other evidence that is presented. You are the sole and exclusive judge of the facts. By your verdict, you will decide disputed issues of fact.

I will decide all questions of law that arise during the trial. Before you begin your deliberation at the close of the case, I will instruct you in more detail on the law that you must follow and apply. In other words, as Judge, I will decide which rules of law apply to this case. I will make those decisions in response to questions raised by the parties as we go along and also in

the final instructions given to you after the evidence and arguments are completed. I must stress

that you are required to accept the rules of law that I give you, whether or not you agree with them.

As the jury, you will decide whether plaintiff has proved, by a preponderance of the

evidence, that defendants violated the law. You must base that decision only on the evidence in

the case and my instructions about the law.

I am permitted to comment on the evidence in the case during the trial or while instructing

the jury. Such comments are only expressions of my opinion as to the facts. You may disregard

these comments entirely, because you are to determine for yourself the weight of the evidence and

the credibility of each of the witnesses.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:10 (6th ed.); *see also Care Travel Co. v. Pan Am. World Airways, Inc.*, 944 F.2d 983, 991 (2d Cir. 1991) ("[A] federal district judge who conducts a jury trial has the duty to see that the facts are clearly presented . . .. In order to do so, the judge  is permitted to summarize the evidence for the jury and, if he chooses, to comment on it.  In  addition, a judge may also interpose relevant questions to witnesses to clarify both legal and   factual issues and thus minimize possible confusion in the jurors' minds.").

**Joint Instruction No. 4:       Jury Conduct**

Ladies and gentlemen, to ensure fairness to the parties in this action, you must obey the

following rules:  Do not talk to each other about this case or about anyone involved with this case

until the end of the trial when you go to the jury room to decide on your verdict. Do not talk with

anyone else about this case or about anyone involved with this case until the trial has ended and

you have been discharged as jurors. "Anyone else" includes members of your family and your

friends. You may tell people you are a juror, but do not tell them anything else about the case.

Outside the courtroom, do not let anyone tell you anything about the case, or about anyone

involved with it until after you have reached your verdict. If someone should try to talk to you

about the case before then, please report it to me immediately.

During the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case -- you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice.

Do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.  Do not do any research, such as checking dictionaries or searching the Internet, or make any investigation about the case, the parties, the witnesses, or the attorneys on your own.

Do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and the other jurors have discussed all the evidence.  If you need to tell me something, simply give a signed note to the clerk to give to me.  To reiterate, during the course of the trial you will receive all the evidence you properly may consider to decide the case. You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom. This means that during the trial you must not conduct any independent research about this case, the matters in the case, and the individuals or corporations involved in the case. In other words, you should not consult dictionaries or reference materials, search the Internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Until you retire to deliberate, you may not discuss this case with anyone, even your fellow jurors. After you retire to deliberate, you may begin discussing the case with your fellow jurors, but you cannot discuss the case with anyone else until you have returned a verdict and the case is at an end.

I expect you will inform me if you become aware of another juror's violation of these instructions.  The reason for these rules, as I am certain you will understand, is that your decision in this case must be made solely on the evidence presented at the trial.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:11-13 (6th ed.) (adapted).

**Joint Instruction No. 5: Conduct of Counsel**

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence that the attorney believes is not properly admissible.  Counsel also have the right and duty to ask the Court to make rulings of law and to request conferences at the side bar out of the hearing of the jury.  All those questions of law must be decided by me, the Court.  You should not show any prejudice against an attorney or his client because the attorney objected to the admissibility of evidence, or asked for a conference out of the hearing of the jury or asked the Court for a ruling on the law.

As I have already indicated, my rulings on the admissibility of evidence do not, unless expressly stated by me, indicate any opinion as to the weight or effect of such evidence.  You are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

**SOURCE:**  Instruction 71-6, <u>Modern Federal Jury Instructions—Civil</u> (LexisNexis 2009 ed.).

**Joint Instruction No. 6:        Role of the Jury**

As members of the jury, you are the sole and exclusive judges of the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence.

In determining these issues, no one may invade your province or functions as jurors. In order for you to determine the facts, you must rely upon your own recollection of the evidence. What the lawyers have said in their opening statements, in their closing arguments, in their objections, or in their questions is not evidence. Nothing I may have said during the trial or what I may say in these instructions is evidence pertaining to any fact. In this connection, you should bear in mind that a question put to a witness is never evidence; it is only the answer which is evidence. But you may not consider any answer that I directed you to disregard or that I directed struck from the record.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be. The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the either of the parties has proven its case.

I also ask you to draw no inference from the fact that upon occasion I asked questions of certain witnesses. These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinions on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witnesses. You are expressly to understand that the court has no opinion as to the verdict you should render in this case.

**SOURCE:**  3 Fed. Jury Prac. & Instr. §§ 103:01, 103:10 (6th ed.); 71 Modern Fed. Jury Instr.-Civil 71.01, 71-1, 71-2.

**Joint Instruction No. 7:**     **Duty of Impartiality**

As to the facts, ladies and gentlemen, you are the exclusive judges. You are to perform the duty of finding the facts without bias or prejudice to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion.

Your verdict must be based solely upon the evidence developed at this trial, or the lack of evidence. It would be improper for you to consider any personal feelings you may have about one of the parties. It would be equally improper for you to allow any feelings you might have about the nature of the claim against the defendants to influence you in any way. The parties in this case are entitled to a trial free from prejudice. Our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life.  All litigants are equal before the law and are entitled to the same fair consideration as you would give any other individual party.

All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences. In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy, and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

**SOURCE:**  4 Modern Fed. Jury Instr.-Civil 71.01, 71-4, 72.01, 72-1; 3 Fed. Jury Prac. & Instr. §§ 103:01, 103:10, 103:12 (6th ed.).

**Joint Instruction No. 8:        Burden of Proof**

This is a civil case. in a civil case such as this one, Plaintiff has the burden to prove every essential element of his claims by a preponderance of the evidence. When a party has the burden to prove any matter by a preponderance of the evidence, it means that you must be persuaded by the testimony and exhibits that the matter sought to be proved is more probably true than not true. In determining whether any fact in issue has been proved by a preponderance of the evidence,

unless otherwise instructed, you may consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In other words, a preponderance of the evidence means such evidence as, when considered and compared with the evidence opposed to it, has more convincing force, and produces in your minds a belief that what is sought to be proved is more likely true than not true. One way to think about this is as follows: if you were to put all of the evidence in favor of plaintiff, and all of the evidence in favor of defendants on opposite sides of a scale, plaintiff would have to make the scale tip somewhat to his side, however slightly. If, in your view, the scale tips in plaintiff's favor, he has met his burden, and your verdict must be for plaintiff. If plaintiff fails to meet this burden, your verdict must be for the defendants.

If plaintiff fails to establish any element of his claim by a preponderance of the evidence, you should find for the defendants as to that claim. I will explain these elements to you in detail.

Please keep in mind that, when assessing whether a party has met its burden of proof on any claim, the question is not which party called the greater number of witnesses, or how much time one party or another spent on that claim during the trial. Your focus must always be on the quality of the evidence: its persuasiveness in convincing you of its truth.

**SOURCE:** 3 Fed. Jury Prac. & Instr. §§ 101:41, 104:01 (6th ed.) (adapted); Modern Fed. Jury Instr.-Civil 73.01, 73-1, 73-2; *see also* Model Civ. Jury Instr. 9th Cir. 1.3 (2007); Model Civ. Jury Instr. 3rd Cir. 1.10 (2011).

## II.      INITIAL INSTRUCTION AS TO EVIDENCE

**Joint Instruction No. 9:        Evidence in this Case**

The evidence in the case consists of the following:  the sworn testimony of the witnesses, no matter who called the witness; all exhibits received in evidence, regardless of who may have produced the exhibits; and all facts that may have been judicially noticed, admitted by the parties or stipulated to between the parties, and that you must take as true for purposes of this case.

Where I have declared that I have taken judicial notice of some fact or event, you must accept that fact as true.

Statements and arguments by the lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statement, closing arguments, and at other times is intended to help you understand the evidence, but it is not evidence. Furthermore, if a lawyer asks a witness a question containing an assertion of fact, you may not consider the assertion as evidence of that fact.

Any evidence as to which I have sustained an objection and evidence that I have ordered stricken must be entirely disregarded.  Depositions may also be received in evidence. Depositions contain sworn testimony, with the lawyers for each party being entitled to ask questions. In some cases, a deposition may be played for you on videotape. Deposition testimony may be accepted by you, subject to the same instructions that apply to witnesses testifying in open court.

Some evidence is admitted for a limited purpose only. When I instruct you that an item of evidence has been admitted for a limited purpose, you must consider it only for that limited purpose and for no other purpose.

At the end of the trial you will have to make your decision based on what you recall of the evidence. You will not have a written transcript to consult, and it is difficult and time consuming for the reporter to read back lengthy testimony. I urge you to pay close attention to the testimony as it is given.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:40 (6th ed.) (adapted).

**Joint Instruction No. 10:      What is Not Evidence**

In deciding the facts of this case, you are not to consider the following as evidence: statements and arguments of the lawyers; questions and objections of the lawyers; testimony that I instruct you to disregard; and anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

**SOURCE:**  3 Fed. Jury Prac. & Instr. § 101:44 (6th ed.).

**Joint Instruction No. 11:      Credibility of Witnesses**

As the trial proceeds, the parties in this action will present you with the evidence they will use to make their cases. They will ask you to draw very different conclusions about various factual issues in the case.

In deciding the facts, you will have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, part of it, or none of it.  In considering the testimony of any witness, you may take into account many factors, including the witness' opportunity and ability to see or hear or know the things the witness testified about; the quality of the witness' memory; the witness' appearance and manner while testifying; the witness' interest in the outcome of the case; any bias or prejudice the witness may have; other evidence that may have contradicted the witness' testimony; and the reasonableness of the witness' testimony in light of all the evidence. The weight of the evidence does not necessarily depend upon the number of witnesses who testify.

In this process, ladies and gentlemen, you are the sole judges of the credibility of the witnesses and the weight their testimony deserves. It is your job to decide how believable each witness was in his or her testimony.

How do you determine where the truth lies? You will watch each witness testify. Everything a witness says or does on the witness stand counts in your determination. How did the witness impress you? Did he/she appear to be frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his/her demeanor -- that is, his/her carriage, behavior, bearing, manner and appearance while testifying? Often it is not what a person says but how he/she says it that moves us.

You should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the testimony.

You should carefully examine all the testimony given, the circumstances under which each witness has testified, and every matter in evidence tending to show whether a witness is worthy of belief. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying. You should consider the opportunity the witness had to see, hear, and know the things about which he/she testified, the accuracy of his/her memory, his/her candor or lack of candor, the reasonableness and probability of his/her testimony and its consistency or lack of consistency and its corroboration or lack of corroboration with other credible testimony.

Also, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict, and the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case. Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently.

In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.

After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

To repeat, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**SOURCE:** 3 Fed. Jury Prac. & Instr. §§ 101:43; 105:01 (6th ed.); 4 Modern Fed. Jury Instr.- Civil 76.01, 76-1 -- 76-4; *see also Dyer v. MacDougall*, 201 F.2d 265, 269 (2d Cir. 1952) ("[Jury] should [] take into consideration the whole nexus of sense impressions which they get from a witness.").

**Joint Instruction No. 12: Credibility of Witnesses No Inference from Filing Suit**

The fact that a person brought a lawsuit and is in court seeking damages creates no inference that the person is entitled to a judgment. Anyone may make a claim and file a lawsuit.

The act of making a claim in a lawsuit, by itself, does not in any way tend to establish that claim and is not evidence.

**SOURCE:** Modern Fed. Jury Instr.- Civil 3.6

## III.   <u>CONCLUDING INSTRUCTIONS</u>

**Joint Instruction No. 13:  Duties of Jurors**

Members of the jury, now that the evidence is in and counsel have summed up their contentions, the time has come for us to perform our respective functions in the administration of justice in this case.

As I stated to you at the outset, it is my duty to instruct you as to the principles of law to be followed, and it is your duty to accept those instructions as they are given by the Court and apply them to the evidence in this case.  In performing your function, you should not single out any one instruction as stating the law, but, rather, should consider these instructions as a whole.

The instructions to you will consist of three sections.  First, I will give you some general instructions applicable in every case.  Second, I will instruct you regarding the specific issues that will need to be decided by you in this case relating to alleged discrimination and damages.  Finally, I will give you some instructions regarding the conduct of your deliberations.

In defining the duties of the jury, let me first give you a few general rules:

It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them to be from the evidence in the case.

The questions that you must decide will be submitted to you in the form of a special verdict consisting of specific questions for you to answer.  You must answer these questions by applying the facts as you find them to be.  I shall give to you the rules of the law that apply to these questions. You must apply them in arriving at your answers.

You are not to single out any one instruction alone as stating the law, but, instead, must consider the instructions as a whole.  Nor are you to be concerned with the wisdom of any rule of law stated by me.  You are obligated to follow the law.

Nothing I say in these instructions is to be taken as an indication that the Court has any opinion, one way or the other, about the facts of the case.  It is not my function to determine the facts, but rather that is your function.

You must perform your duties as jurors without bias or prejudice as to any party.  You must follow the law as I give it to you, whether you agree with it or not.  The law does not permit you to be governed by sympathy, prejudice, or public opinion.  You are to treat all parties equally.  All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict.

**SOURCE:**    O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, §103.01 (5th ed. 2000).

**Joint Instruction No. 14:  Direct and Circumstantial Evidence**

There are, generally speaking, two types of evidence from which you may properly find the truth as to the facts of a case.  One is direct evidence, such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence: the proof of a chain of circumstances from which another fact may be inferred.

To illustrate what I mean by circumstantial evidence, let me give you an example.  Assume that when you entered the courthouse this morning the sun was shining brightly outside and it was a clear day.  In the courtroom, however, the shades are drawn, and you cannot see outside.  As the trial progresses, people start entering the courtroom wearing raincoats and carrying dripping umbrellas.  From these facts, you might reasonably infer that it has begun to rain, even though you cannot see out the window and do not know by direct observation or evidence that it is raining.

Having told you that the law recognizes both direct and circumstantial evidence, let me also instruct you that the law makes no distinction between the weight to be given to either direct or circumstantial evidence.

As I said before, which of the admitted evidence you will accept as authoritative is up to you. However, you may consider only what has been admitted as evidence in this trial – things that the Court has ruled inadmissible may not be considered. And, of course, it is for you to interpret the evidence.

**SOURCE:**    4 L. Sand, *et al*, <u>Modern Federal Jury Instructions</u>, §74-2 (2001) (modified); 4 Modern Federal Jury Instructions-Civil P. 74-2 (2019).

**Joint Instruction No. 15:      Inferences**

You are to consider only the evidence in the case. However, you are not limited to the statements of the witnesses. You may draw from the facts you find have been proved such reasonable inferences as seem justified in light of your experience. "Inferences" are deductions or conclusions that reason, and common sense lead you to draw from facts established by the evidence in the case.

During the trial you have heard the attorneys use the term "inference," and in their arguments they have asked you to infer, on the basis of your reason, experience, and common sense, from one or more established facts, the existence of some other fact. An inference is not a suspicion or a guess. It is a reasoned, logical conclusion that a disputed fact exists on the basis of another fact which has been shown to exist.

There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial evidence. The plaintiff asks you to draw one set of inferences, while the defense asks you to draw another. It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a deduction or conclusion which you, the jury, are permitted to draw—but not required to draw—from the facts which have been established by either direct or circumstantial evidence. In drawing inferences, you should exercise your common sense. So, while you are considering the evidence presented to you, you are permitted to draw, from the facts which you find to be proven, such reasonable inferences as would be justified in light of your experience.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 104:20 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 75.01. 75-1; *see also Schulz v. Pennsylvania R. Co.*, 350 U.S. 523, 526 (1956) ("The very essence of [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Fact finding does not require mathematical certainty. Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by witnesses or proof of circumstances from which inferences can fairly be drawn."); *Wilkins v. American Export Isbrandtsen Lines, Inc.*, 446 F.2d 480, 484 (2d Cir. 1971) ("Of course, in some situations proof of one fact provides a basis for inferring another.").

**Joint Instruction No. 16:     Credibility of Witnesses**

You have had the opportunity to observe all the witnesses. It is now your job to decide how believable each witness was in his or her testimony. You are the sole judges of the credibility of the witnesses and the weight their testimony deserves.

It must be clear to you by now that you are being called upon to resolve various factual issues raised by the parties in the face of very different pictures painted by both sides. It must also be obvious to you that both sides cannot be true, and this is where you play your role as jurors. In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence which may help you decide the truth and the importance of each witness' testimony.

You may be guided by the appearance and conduct of a witness, or by the manner in which a witness testifies, or by the character of the testimony given, or by evidence contrary to the

testimony. Consider each witness' intelligence, motive and state of mind, and demeanor or manner while testifying. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Did he or she appear to be frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his or her demeanor--that is, his or her behavior, bearing, manner and appearance while testifying? Often it is not what a person says but how he or she says it that moves us.

As I mentioned before the trial began, you should use all the tests for truthfulness that you would use in determining matters of importance to you in your everyday life. You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. In other words, consider any relation each witness may have with either side of the case, the manner in which each witness might be affected by the verdict.

You should consider the extent to which the testimony of each witness is either supported or contradicted by other evidence in the case, the opportunity the witness had to see, hear, and know the things about which he/she testified, the accuracy of his/her memory, his/her candor or lack of candor, his/her intelligence, and the reasonableness and probability of his/her testimony. Inconsistencies or discrepancies in the testimony of a witness, or between the testimonies of different witnesses may or may not cause you to discredit such testimony. Two or more persons seeing an event may see or hear it differently. In weighing the effect of a discrepancy, always consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood. Always remember that you should use your common sense, your good judgment and your own life experience. After making your own judgment, you will give the testimony of each witness such weight, if any, that you may think it deserves. In short, you may accept or reject the testimony of any witness, in whole or in part.

Please keep in mind that the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or nonexistence of any fact. You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 105:01 (6th ed.); 4 Modern Fed. Jury Instr.-Civil 76.01, 76-1.

**Joint Instruction No. 17:      Prior Inconsistent Statements**

A witness may be discredited or impeached by contradictory evidence or by evidence that at some other time the witness has said or done something or has failed to say or do something that is inconsistent with the witness' present testimony. Evidence of a prior inconsistent statement or conduct is not to be considered by you as affirmative evidence in determining liability. Evidence of a prior inconsistent statement is before you for the more limited purpose of helping you decide whether to believe the trial testimony of the witness who contradicted himself. If you find that the witness made an earlier statement that conflicts with his trial testimony, you may consider that fact in deciding how much of his trial testimony, if any, to believe.

If you believe any witness has been impeached and thus discredited, you may give the testimony of that witness such credibility, if any, you think it deserves. It is exclusively your duty, based upon all the evidence and your own good judgment, to determine whether the prior statement was inconsistent, and if so, how much, if any, weight to give to the inconsistent statement in determining whether to believe all or part of the witness' testimony. If a witness is shown knowingly to have testified falsely about any material matter, you have a right to distrust such witness' other testimony and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 105:04 (6th ed.); 4 Modern Fed Jury Instr.-Civil 76.01, 76-5; *see also Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 44 (2d Cir. 2000) ("To the extent that there is a conflict in a witness's testimony, such a conflict affects the weight of the testimony, not its admissibility. The weighing of the evidence is a matter for the trier of fact.") (internal citations omitted).

**Joint Instruction No. 18:     Multiple Defendants**

Although there are multiple defendants in this case, it does not follow that if one is liable, then the others are liable as well. Each defendant is entitled to fair, separate, and individual consideration of the case without regard to your decision as to any other defendant. If you find that only one defendant is liable, you must impose liability upon that one defendant.

## IV.     <u>CLAIMS & DAMAGES/SUBSTANTIVE LAW</u>

Now that I have given you general instructions on the law, I will turn to the specific instructions concerning the allegations made in this case.

I am going to briefly state the contentions of the respective parties. In stating these contentions, I express no opinion of the facts, because you are the sole judges of the facts. If I should inaccurately or insufficiently state any particular fact in this case, then you are to disregard that, as you alone are the judges of the facts. You will consider all the facts, the testimony from the stand, the physical facts and all legitimate inferences.

### <u>PLAINTIFF'S PROPOSED INSTRUCTION[6]</u>

*Plaintiff claims that he has been subjected to discrimination based on a disability, by being denied reasonable accommodations of a light duty assignment that was routinely granted to Plaintiff's coworkers and a transfer to an available location closer to his physical therapist, and*

---

[6] Defendants object to Plaintiff's proposed instruction. This instruction is unduly prejudicial and mischaracterizes the facts of this case.

*subjected to discrimination because of his race. Plaintiff also alleges that Defendants retaliated against him by issuing numerous false and unwarranted writeups and disciplinary actions against him, stripped him of benefits and seniority, and by denying discretionary grants routinely granted to coworkers similarly injured on the job, all because he participated in and was viewed by the Defendants as the motivating individual in a separate race discrimination and retaliation lawsuit in December 2011. Plaintiff brings these claims pursuant to the New York State Human Rights Law and the New York City Human Rights Law.*

*Plaintiff also claims that Defendants interfered with his rights under the Family and Medical Leave Act ("FMLA") and retaliated against him for exercising his rights under that act by, among other things, refusing to allow time off during training sessions to obtain medical treatment and by refusing to allow Plaintiff to return to a comparable light duty role where other disabled communications electricians have worked for years, and in some cases decades.[7]*

*Defendants deny all of Plaintiff's claims and assert that the actions they took were for legitimate, non-discriminatory, non-retaliatory business reasons.*

**DEFENDANTS' PROPOSED INSTRUCTION**

Plaintiff claims that he has been subjected to discrimination based on a disability, by being denied a reasonable accommodation, and subjected to discrimination because of his race. Plaintiff also alleges that Defendants retaliated against him because he participated in a separate lawsuit in December 2011. Plaintiff brings these claims pursuant to the New York State Human Rights Law and the New York City Human Rights Law.

---

[7] Defendants submit that plaintiff's FMLA claims are time barred and should not proceed to trial, while Plaintiff contends that the evidence in the record clearly shows Defendants' interference with and violations of Plaintiff's FMLA rights were willful, thus extending the statute of limitation from 2 years to 3 years, making Plaintiff's FMLA claim timely, and making statutory liquidated damages appropriate.

Plaintiff also claims that Defendants interfered with his rights under the Family and Medical Leave Act ("FMLA") and retaliated against him for exercising his rights under that act.[8]

Defendants deny all of Plaintiff's claims and assert that the actions they took were for legitimate, non-discriminatory, non-retaliatory business reasons.

Let me remind you that to find for the plaintiff on his claims, you must find that he has met her burden to prove every element of that claim by a preponderance of the credible evidence.

**SOURCE:**    O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, §175.1 (6th ed. 2014)

**Joint Instruction No. 19:    Interference under the Family and Medical Leave Act of 1993**

### PLAINTIFF'S PROPOSED INSTRUCTION

*Plaintiff claims that he was entitled to time off from work under the FMLA, and that Defendants interfered with, restrained, or denied his entitlement to that time off.*

[Under the FMLA, it is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA. FMLA rights include requesting or taking leave under the statute and having the employer maintain certain employment benefits during the leave. The FMLA does not require leave provided by employers to be paid.][9]

*To succeed in this case on his FMLA interference claim, Plaintiff must prove by a preponderance of the evidence each of the following elements:*

1. *Plaintiff  had injuries to his hand and shoulder that interfered with his regular work duties and that necessitated leave from work for medical treatment, including surgery and physical therapy.*

---

[8] Id.
[9] Both parties agree on the language in brackets

2. *This condition was a "serious health condition," defined in the statute as an illness, injury, impairment or physical or mental condition that involves either 1) inpatient care in a hospital or other care facility, or 2) continuing treatment by a health care provider;*

3. *Plaintiff gave appropriate notice of his need to be absent from work. "Appropriate notice" was given where, plaintiff notified the defendant as soon as practicable after he learned of the need for leave.*

4. *Plaintiff was required to timely notify [defendant] of the need for leave, but plaintiff was not required to specify that the leave was sought under the Family and Medical Leave Act, nor was plaintiff required to mention that Act in the notice. Nor was plaintiff required to provide the exact dates or duration of the leave requested. Moreover, plaintiff was not required to give defendant a formal written request for anticipated leave. Simple verbal notice is sufficient. The critical question for determining "appropriate notice" is whether the information given to defendant was sufficient to reasonably apprise it of plaintiff's request to take time off for a serious health condition.*

5. *Defendants interfered with the exercise of plaintiff's right to unpaid leave. Under the statute, "interference" can be found in a number of ways, including:*

> *Refusing to allow an employee to return to his or her job, or to an equivalent position, upon return from leave;*
>
> *ordering an employee not to take leave or discouraging an employee from taking leave;[10] and*

---

[10] Where an employee complains solely of an employer's *unsuccessful* attempt to discourage the taking of FMLA leave, it appears that no FMLA interference claim arises. See the Comment for a discussion of *Fraternal Order of Police v. City of Camden*, 842 F.3d 231, 245-46 (3d Cir. 2016).

*failing to provide an employee who gives notice of the need for a leave a written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations.*

*However, interference cannot be found simply because the Defendants imposed reporting obligations for employees who are on leave. For example, an employer does not interfere with an employee's right to take leave by establishing a policy requiring all employees to call in to report their whereabouts while on leave. The Family and Medical Leave Act does not prevent employers from ensuring that employees who are on leave do not abuse their leave.*

[The regulation implementing the FMLA permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements. Where an employee does not comply, and no unusual circumstances justify the noncompliance, FMLA-protected leave may be delayed or denied.][11]

[If Plaintiff otherwise satisfied the above elements, then it does not matter whether Defendants intended to violate the FMLA. If any Defendants denied Plaintiff a right to which he was entitled under the FMLA, then you should find for Plaintiff  as to that defendant. [12]

## **DEFENDANTS' PROPOSED INSTRUCTION**

Plaintiff claims that he was entitled to time off from work under the FMLA, and that Defendants interfered with, restrained, or denied his entitlement to that time off. Defendants deny Plaintiff's claims and contend that Plaintiff failed to request FMLA leave, but despite his failure to request FMLA leave, they still granted him leave and he was not denied any FMLA benefits.

---

[11] Language that is bracketed in each parties' proposed instruction is language that both parties agree to.   This is also true for the remainder bracketed language in this document.
[12] Both parties agree on the language in brackets under than identifying the number of elements.

[Under the FMLA, it is unlawful for an employer to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right provided by the FMLA. FMLA rights include requesting or taking leave under the statute and having the employer maintain certain employment benefits during the leave. The FMLA does not require leave provided by employers to be paid.]

To succeed in this case on his FMLA interference claim, Plaintiff must prove by a preponderance of the evidence each of the following elements:

1. that he was entitled to time off from work because he had a "serious health condition" that made him unable to perform the functions of his employment position;

2. that he gave Defendants proper notice of the need for time off from work due to a "serious health condition" that made him unable to perform the functions of his employment position; and

3. Defendants interfered with, restrained, or denied Plaintiff's entitlement to take time off from work.

With respect to the first element of his FMLA claim, a "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves either (a) inpatient care in a hospital, hospice, or residential medical care facility, or (b) continuing treatment by a health care provider.

With respect to the second element, the notice to defendants, an employee is required to give notice to the employer indicating when s/he requires FMLA leave. If the need for leave was not foreseeable—that is, the leave was unplanned or unexpected—the employee must give the employer notice as soon as was practicable under the facts and circumstances.

"As soon as practicable" generally means that an employee must give notice within the time prescribed by the employer's usual notice requirements for such leave. In extraordinary

circumstances when it is not feasible for the employee to give such notice, someone such as a family member should do so.

To give his employer proper notice of the need for FMLA leave, an employee is not required to expressly refer to or name the FMLA. The employee need provide the employer only enough information to put it on notice that leave was needed because of a serious health condition.

[The regulation implementing the FMLA permits employers to condition FMLA-protected leave upon an employee's compliance with the employer's usual notice and procedural requirements. Where an employee does not comply, and no unusual circumstances justify the noncompliance, FMLA-protected leave may be delayed or denied.]

[If Plaintiff otherwise satisfied the above three elements, then it does not matter whether Defendants intended to violate the FMLA. If any Defendants denied Plaintiff a right to which he was entitled under the FMLA, then you should find for Plaintiff  as to that defendant.][15]

**SOURCE:**    *Diamond Modern Federal Jury Instructions*-Civil 11.19 (2022); *see also* 29 C.F.R. § 825.303; *Wenc v. New London Bd. Of Educ.*, 702 F. App'x 27, 31 (2d Cir. 2017) (noting that the FMLA does not require paid leave).

**Joint Instruction No. 20:      Retaliation Under the FMLA**

Plaintiff also brings a retaliation claim against defendants under the FMLA. It is unlawful for an employer to retaliate against an employee for engaging in FMLA-protected activity. FMLA-protected activity includes, but is not limited to, requesting, or taking leave and having the employer maintain certain employment benefits during leave. Defendants deny that they in any way retaliated against Plaintiff for engaging in FMLA-protected activity.

---

[15] Both parties agree on the language in brackets other than the number of elements

To prevail on his claim for retaliation pursuant to FMLA, Plaintiff must prove by a preponderance of the evidence each of the following elements:

1. He engaged in FMLA-protected activity;

2. He was qualified for his position;

3. Plaintiff suffered an adverse employment action; and

4. The adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.[16]

With respect to the third element, an adverse employment action is defined as an action by an employer that "is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." [17]

For the fourth element, Plaintiff does not have to prove that his FMLA-protected activity is the only reason for an adverse action you have found. But Plaintiff must prove that he would not have been subjected to the alleged adverse employment action in the absence of his FMLA-protected activity.

Defendants contend that there were legitimate, non-retaliatory reasons for their employment decisions, and that they would have taken the same actions even in the absence of any FMLA leave activity. If you find by the preponderance of the evidence that defendants took their actions for these reasons and that plaintiff would have been subjected to the adverse employment action regardless of whether he did or did not take FMLA leave, then you must find for the defendants.

In considering Defendants' proffered non-retaliatory reasons for their actions, you should keep in mind that defendants' business judgment is not on trial in this case. The law does not

---

[16] *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).
[17] *Millea v. Metro-North R.R.*, 658 F.3d 154, 164 (2d Cir. 2011).

authorize courts or juries to judge the wisdom of Defendants' business decisions. Even if you were to believe that the Defendants exercised poor or questionable business judgment in their decisions or if you feel that you would have made a different decision under similar circumstances, that belief, taken alone, cannot be the basis for a verdict in favor of the plaintiff.

The Defendants have offered evidence that they took the adverse actions in this case entirely for non-discriminatory reasons. Remember that it is the plaintiff's burden to prove that at least one of the motivating reasons for the decision was intentional discrimination and that an employer may make adverse decisions against an employee for any reason, good or bad, as long as it is not discriminatory. However, if you find that that the reasons proffered by Defendants were "pretextual," that is, they were not the real reasons for the decision, then you may infer or not infer, as you choose, that the pretext was designed to conceal discrimination.

**SOURCE:**   5 Modern Federal Jury Instructions- Civil P. § 485a-88- 44. *Diamond Modern Federal Jury Instructions*-Civil 11.21 (2022).

**Joint Instruction No. 21:    Willfulness Under the FMLA: Three Year Statute of Limitations and Liquidated Damages**

In this case, plaintiff alleges that the defendants willfully violated the Family and Medical Leave Act.  Defendants claim that they did not violate the FMLA.  Moreover, that if any violation occurred, the violation was not willful.

The statute of limitations for most FMLA claims is two years. However, a three-year statute of limitations exists for willful FMLA violations. You may only find for plaintiff in this case if plaintiff proves to you by a preponderance of the evidence that the defendants' violation of the Family and Medical Leave Act was willful. Let me now give you more information what it means for a violation to be "willful."

In order to find defendants' violation of the Family and Medical Leave Act to be willful, plaintiff must prove by a preponderance of the evidence that Defendants knew or showed reckless disregard *for whether defendants' denial of plaintiff to leave work early for medical treatment was prohibited by the law.* **Defendants Proposed language:** <u>Defendants knew or showed reckless disregard to Plaintiff's FMLA rights.</u>

To establish willfulness, it is not enough to show that the defendants acted negligently. If you find that defendants knew, or knew that the law was potentially applicable, and acted in reckless disregard for whether its conduct was prohibited by the law, then defendants' conduct was willful. <u>Moreover, if an employer acted reasonably, or unreasonably but not recklessly in determining whether its actions were illegal, the alleged violations should not be considered willful.</u>

SOURCE: 29 U.S.C. § 2617(c)(1); (<u>Smith v. Westchester County,</u> 1769 F. Supp. 2d 448 (S.D.N.Y. Feb 14. 2011)

*If you find that any of the individually named defendants or any other supervisors in this case, acted "willfully" to violate Mr. Pitre's FMLA rights, that willfulness designation will be imputed to the corporate defendant, the City of New York, by virtue of that individual's role as a supervisor. Any finding of "willfulness" will extend the FMLA's 2-year statute of limitations to 3-years, and will trigger a liquidated damages provision in the law that automatically allows for double compensatory damages to be awarded to the plaintiff. This liquidated damages provision*

*under the FMLA will be discussed in greater detail in the "damages" portion of these instructions.[19]*

**Joint Instruction No. 21:   Disability Discrimination Claims under New York State and New York City Human Rights Law**

   a.  **Disability Discrimination Claims**

   **PLAINTIFF'S PROPOSED INSTRUCTION[20]**

*The New York State Human Rights Law states: "It shall be an unlawful discriminatory practice [...] For an employer [...], because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."*

*Under the New York State Human Rights law, Plaintiff alleges he was discriminated against and subjected to a hostile work environment because of his disability. Defendants deny this allegation.*

*Unlike federal antidiscrimination statutes, the New York State Human Rights Law additionally forbids: "any person to aid, abet, incite compel or coerce the doing of any acts forbidden under [the New York State Human Rights Law], or attempt to do so."[21] This is referred to as an "aiding and abetting" claim. Plaintiff alleges that Defendants aided and abetted in Defendants' alleged discriminatory conduct. Defendants deny this allegation. You should note, a Defendant can be liable for aiding and abetting their own unlawful conduct.[22]*

---

[19] Defendants object to this proposed language.   If the Court allows Plaintiff to seek liquidated damages, Defendants will seek to include an instruction that their action or failure to act was in good faith, and/or that Defendants had objectively reasonable grounds to believe they were not violating the FMLA.  See 29 U.S.C.S. § 2617(a)(1)(A)(iii).
[20] Defendants object to this instruction as it contains unnecessary language and is overly complicated.
[21] New York State Executive Law §296(6)
[22] Maher v. All. Mortg. Banking Corp., 650 F. Supp. 2d 249, 262–63 (E.D.N.Y. 2009)

*Plaintiff claims that Defendants have discriminated against him because of his disability. Defendants deny these allegations.*

*The New York City Administrative Code Title 8—also known as the New York City Human Rights Law—likewise offers employees protections both similar to and in addition to Title VII and the New York State Human Rights Law.*

*Section 8-107 [1] of the New York City Human Rights Law provides that:*

*"It shall be an unlawful discriminatory practice [...] For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."*

[Under the New York State Human Rights Law and the New York City Human Rights Law, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, and must establish facts demonstrating that: (1) his employer is covered by the New York State Human Rights Law and the New York City Human Rights Law; (2) he has a disability within the meaning of the New York State Human Rights Law and the New York City Human Rights Law; (3) he was qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability.]

[The parties do not dispute the first two elements of Plaintiff's claim. However, there is a dispute as to whether plaintiff was qualified to perform the essential functions of his job with or without reasonable accommodation. To establish that he is a qualified individual, the first thing Plaintiff must prove is that he is otherwise qualified for the position. This means that Plaintiff has the requisite skill, experience, education, and other job-related requirements of the employment

position involved in this case. If he cannot satisfy this standard, then Plaintiff is not a qualified individual, even if the reason he is not qualified is because of the disability.]

**SOURCE:**     5-88A Modern Fed. Jury Instructions- 88A-13.

[If you find that the Plaintiff was qualified for the position, then the next step is to determine whether he has proven by a preponderance of the evidence that he was able to perform the essential functions of the employment position with or without reasonable accommodation.]

[In order to make this determination, you will need to determine what the essential functions of the employment position were. The "essential functions of an employment position" are the basic duties of a job that a person must be able to perform in order to hold a particular position. ]

**SOURCE:**     5-88A Modern Fed. Jury Instructions-88A-15.

[If a plaintiff is unable to perform the essential functions of his job, he cannot be a victim of disability discrimination. Plaintiff bears the burden of production and proof on the issue of whether he was underwise qualified for the job in question.]

[There is also a dispute as to whether Plaintiff suffered an adverse employment action.]

[Under the SHRL, an employment action is considered adverse if the employee suffers a materially adverse change in the terms and conditions of his employment, such as termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits or significantly diminished material responsibilities.] Pretextual disciplinary actions, writeups, removal of benefits, removal of seniority and denial of rights, privileges, duties and accommodations granted to similarly situated coworkers can also be adverse employment actions.

33

[Under the CHRL, Plaintiff does not have to show that Defendants' actions were materially adverse to his employment.  Plaintiff simply has to show that he was treated differently in a way that was more than trivial, insubstantial, or petty.]

Additionally, The New York City Human Rights law expressly provides an action against corporate defendants via "Supervisory Liability."[31] The law provides that:

"An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where; (i) the employee or agent exercised managerial or supervisory responsibility[.]"

Plaintiff, through this claim, seeks to hold the City Defendants liable for Defendant Borodo's, Mastropietro's and former defendant Fiorentino's alleged behavior. Defendants deny this behavior ever occurred.

Finally, there is a dispute as to whether Plaintiff suffered an adverse employment action because of his disability and because he engaged in activities protected under the CHRL.

[To satisfy this element, the Plaintiff must prove by a preponderance of the evidence that the disability] and/or Mr. Pitre's participation in protected activities, such as his prior lawsuit or his requests for accommodation, [was a determinative factor in the decision to take that adverse action. It need not have been the sole factor, but it must have been the decisive factor, meaning that but for the consideration of the plaintiff's disability, the defendant would not have made the same employment decision.]

---

[31] New York City Administrative Code Title 8-107(13)(b).

[In order for the disability to have been a determinative factor in a Defendant's decision, the defendant must have known that the Plaintiff had a disability. This means that the person who made the decision to take the adverse action knew that plaintiff had a disability.]

**SOURCE:**       5-88A Modern Fed. Jury Instructions-Civil 88A-20.

[If the Plaintiff has produced evidence to support his allegation that an adverse employment action was taken against him and that it was caused by his disability, the Defendants must produce evidence of a legitimate, non-discriminatory reason for their employment decision.   A non-discriminatory reason is any reason or explanation which is unrelated to the Plaintiff's disability.]

[Let me explain this further.   In this case, if you find that the Plaintiff's evidence has raised an inference of discrimination, Defendants can rebut the inference of discrimination by articulating a legitimate, non-discriminatory reason for their actions.   In considering the non-discriminatory reasons put forth by Defendants, you are not to second-guess the decision or otherwise substitute your judgment for that of the defendants.   The question is not whether the Defendants showed poor or erroneous judgment.   You are not to judge the Defendants' wisdom.   The employer is entitled to set its own expectations and requirements for what constitutes satisfactory performance.] [36]

[Even if Plaintiff has shown that Defendants misjudged plaintiff or were unfair or not nice, or even that Defendants articulated reasons for making the employment decisions that were made concerning Plaintiff were ill-advised, this is not sufficient for Plaintiff to meet his burden to prove that Defendants' explanation is a pretext for discrimination.   An employer is entitled to make an employment decision for a good reason, a bad reason, or no reason at all, so long as the decision is not motivated by the plaintiff's disability.   The anti-discrimination statutes in this case do not

---

[36] Both parties agree on the language in brackets

make employers liable for doing ill-advised or even wicked things; they make employers liable for discriminating against employees on account of an employee's disability.]

[Here, the Defendants assert that they took actions against the Plaintiff, not because of Plaintiff's disability, but for a nondiscriminatory reason—specifically because of performance issues, repeated lateness, and failure to comply with FDNY policies and procedures. If you find that is true, that would be a complete defense. But if you find that the asserted reason is just a pretext, you may, if you wish, consider whether the real reason was discrimination on the basis of disability. Remember, however, that not all pretexts are designed to conceal discrimination and that it is Plaintiff's burden to satisfy you, by a preponderance of the evidence, that the adverse action would not have been taken, except for the Defendants' consideration of the Plaintiff's disability.]

**DEFENDANTS' PROPOSED INSTRUCTION**

Plaintiff claims that Defendants have discriminated against him because of his disability. Defendants deny these allegations and assert that all of their actions were taken for legitimate, non-discriminatory reasons – namely plaintiff's performance issues, repeated lateness and failure to comply with FDNY policies and procedures.  The laws under which plaintiff makes these claims are the New York State Human Rights Law and the New York City Human Rights Law.

[Under the New York State Human Rights Law and the New York City Human Rights Law, Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination, and must establish facts demonstrating that: (1) his employer is covered by the New York State Human Rights Law and the New York City Human Rights Law; (2) he has a disability within the meaning of the New York State Human Rights Law and the New York City Human Rights Law; (3) he was

qualified to perform the essential functions of his job, with or without reasonable accommodation; and (4) he suffered an adverse employment action because of his disability.]

**SOURCE:**     Authority: *McMillan v. City of New York,* 711 F.3d 120, 125 (2d Cir. 2013); *McBride v. BIC Consumer Products Mfg. Co., Inc.*, 583 F.3d 92 (2d Cir. 2009); Kinneary v. City of New York, 601 F.3d 151, 155-56 (2d. Cir. 2010); (elements for finding discrimination under NYSHRL and NYCHRL track the ADA); *Chernoff v. City of New York,* 2008 U.S. Dist. LEXIS 77869 at *21, n.8 (E.D.N.Y. Sept. 10, 2008) (claims under the New York City Human Rights Law are analyzed similarly to claims under the ADA).

<u>I will now proceed to explain the elements of each claim. Let me remind you again that to find for the Plaintiff on his claims, you must find that he met his burden to prove every element by a preponderance of the evidence.</u>

[The parties do not dispute the first two elements of Plaintiff's claim. However, there is a dispute as to whether plaintiff was qualified to perform the essential functions of his job with or without reasonable accommodation. To establish that he is a qualified individual, the first thing Plaintiff must prove is that he is otherwise qualified for the position. This means that Plaintiff has the requisite skill, experience, education, and other job-related requirements of the employment position involved in this case. If he cannot satisfy this standard, then Plaintiff is not a qualified individual, even if the reason he is not qualified is because of the disability.]

**SOURCE:**      5-88A Modern Fed. Jury Instructions- 88A-13.

[If you find that the Plaintiff was qualified for the position, then the next step is to determine whether he has proven by a preponderance of the evidence that he was able to perform the essential functions of the employment position with or without reasonable accommodation.]

[In order to make this determination, you will need to determine what the essential functions of the employment position were. The "essential functions of an employment position" are the basic duties of a job that a person must be able to perform in order to hold a particular position. ]

**SOURCE:**     5-88A Modern Fed. Jury Instructions-88A-15.

[If a plaintiff is unable to perform the essential functions of his job, he cannot be a victim of disability discrimination. Plaintiff bears the burden of production and proof on the issue of whether he was <u>otherwise</u> qualified for the job in question.]

[There is also a dispute as to whether Plaintiff suffered an adverse employment action. ]

[Under the SHRL, an employment action is considered adverse if the employee suffers a materially adverse change in the terms and conditions of his employment, such as termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits or significantly diminished material responsibilities.]

[Under the CHRL, Plaintiff does not have to show that Defendants' actions were materially adverse to his employment.  Plaintiff simply has to show that he was treated differently in a way that was more than trivial, insubstantial, or petty.]

<u>Finally, there is a dispute as to whether Plaintiff suffered an adverse employment action because of his disability.</u>

<u>To satisfy this element, the Plaintiff must prove by a preponderance of the evidence that the disability was a determinative factor in the decision to take that adverse action. It need not have been the sole factor, but it must have been the decisive factor, meaning that but for the consideration of the plaintiff's disability, the defendant would not have made the same employment decision.</u>

<u>In order for the disability to have been a determinative factor in a Defendant's decision, the defendant must have known that the Plaintiff had a disability. This means that the person who made the decision to take the adverse action knew that plaintiff had a disability.</u>

**SOURCE:**     5-88A Modern Fed. Jury Instructions-Civil 88A-20.

[If the Plaintiff has produced evidence to support his allegation that an adverse employment action was taken against him and that it was caused by his disability, the Defendants must produce evidence of a legitimate, non-discriminatory reason for their employment decision. A non-discriminatory reason is any reason or explanation which is unrelated to the Plaintiff's disability.]

[Let me explain this further. In this case, if you find that the Plaintiff's evidence has raised an inference of discrimination, Defendants can rebut the inference of discrimination by articulating a legitimate, non-discriminatory reason for their actions. In considering the non-discriminatory reasons put forth by Defendants, you are not to second-guess the decision or otherwise substitute your judgment for that of the defendants. The question is not whether the Defendants showed poor or erroneous judgment. You are not to judge the Defendants' wisdom. The employer is entitled to set its own expectations and requirements for what constitutes satisfactory performance.]

[Even if Plaintiff has shown that Defendants misjudged plaintiff or were unfair or not nice, or even that Defendants articulated reasons for making the employment decisions that were made concerning Plaintiff were ill-advised, this is not sufficient for Plaintiff to meet his burden to prove that Defendants' explanation is a pretext for discrimination. An employer is entitled to make an employment decision for a good reason, a bad reason, or no reason at all, so long as the decision is not motivated by the plaintiff's disability. The anti-discrimination statutes in this case do not make employers liable for doing ill-advised or even wicked things; they make employers liable for discriminating against employees on account of an employee's disability.]

[Here, the Defendants assert that they took actions against the Plaintiff, not because of Plaintiff's disability, but for a nondiscriminatory reason—specifically because of performance issues, repeated lateness, and failure to comply with FDNY policies and procedures. If you find that is true, that would be a complete defense. But if you find that the asserted reason is just a

pretext, you may, if you wish, consider whether the real reason was discrimination on the basis of disability. Remember, however, that not all pretexts are designed to conceal discrimination and that it is Plaintiff's burden to satisfy you, by a preponderance of the evidence, that the adverse action would not have been taken, except for the Defendants' consideration of the Plaintiff's disability.]

**SOURCE:** 5-88A Modern Fed. Jury Instructions-Civil 88A-22.

    **b. Reasonable Accommodation**

    <u>**PLAINTIFF'S PROPOSED INSTRUCTION**[51]</u>

*In this case plaintiff claims that defendants failed to provide a reasonable accommodation for the disabilities caused by his on-the-job shoulder and hand injuries, by denying light duty assignment, by prematurely forcing him to return to the job at full duty, which further and seriously aggravated his injuries, by refusing to transfer him to another FDNY location that was available for his position, then by refusing to grant him a light duty assignment, which they have granted to numerous communications electricians, sometimes for multiple decades. Defendants deny all of these allegations.*

*The SHRL and CHRL provide that an employer may not deny employment opportunities to a qualified individual with a disability if that denial is based on the need of the employer to make reasonable accommodations to that individual's disability, in order words, employers must make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless the employer can demonstrate that the accommodation would impose an undue hardship on the operation of its business.*

*In general, an accommodation is a change in the work environment or in the way things*

---

[51] Defendants object to this instruction as it improperly states the facts of this case, is unduly prejudicial, and improperly asserts Plaintiff's burden.

*are customarily done that enables an individual with a disability to enjoy equal employment opportunities. In the context of this case, this means allowing plaintiff the ability to work a light-duty assignment, allowing him reasonable time off to attend medical appointments, or a reasonable transfer to an available location closer to his medical providers. Examples of such reasonable accommodations include, but are not limited to, the following:*

- *Part-time or modified work schedule;*

- *Reassignment to a light duty position for which the employee is qualified;*

- *Acquisition or modifications of equipment or devices;*

- *Appropriate adjustment or modifications of examinations, training materials, or policies;*

- *Other similar accommodations for individuals with disabilities that limit their physical abilities similar to that of Mr. Pitre.*

*Note, however, that a "reasonable accommodation" does not require the defendants to do any of the following:*

- *Change or eliminate any essential function of employment;*

- *Promote plaintiff; or*

- *Make an accommodation that conflicts with an established seniority system, unless plaintiff proves by a preponderance of the evidence that "special circumstances" make an exception reasonable. For example, an exception might be reasonable (and so "special circumstances" would exist) if exceptions were often made to the policy. Another example might be where the policy already contains its own exceptions so that, under the circumstances, one more exception is not significant.*

*On the other hand, a proposed accommodation is not "reasonable" under the SHRL and CHRL if the disabled employee was forced to change to a less favorable job and a reasonable accommodation could have been made that would have allowed that employee to perform the essential functions of the job that he already had.*

*The intent of the ADA is that there be an interactive process between the employer and the*

*employee [applicant] in order to determine whether there is a reasonable accommodation that would allow the employee [applicant] to perform the essential functions of a job. Both the employer and the employee [applicant] must cooperate in this interactive process in good faith, once the employer has been informed of the employee's [applicant's] request for a reasonable accommodation.*

*Neither party can win this case simply because the other did not cooperate in an interactive process. But you may consider whether a party cooperated in this process in good faith in evaluating the merit of that party's claim that a reasonable accommodation did or did not exist*

[In order to establish a claim for failure to accommodate under the SHRL and NYCHRL, Plaintiff must establish by a preponderance of the evidence that (1) he has a disability as defined by the statute; (2) defendants knew or should have known about the disability; (3) with reasonable accommodation he could perform the essential functions of her job; and (4) defendants failed to make such accommodation.]

**SOURCE:**    *O'Connor v. Smith & Laqueria*, LLP, 2010 U.S. Dist. LEXIS 94088 (Sept. 8, 2010).

[As I stated, the Plaintiff must demonstrate by a preponderance of the evidence that he was able to perform the essential functions of the employment position with or without reasonable accommodation.]

### **DEFENDANTS' PROPOSED INSTRUCTION**

Plaintiff also claims that Defendants failed to provide him with a reasonable accommodation in violation of the New York State Human Rights Law and the New York City Human Rights Law.

[In order to establish a claim for failure to accommodate under the SHRL and NYCHRL, Plaintiff must establish by a preponderance of the evidence that (1) he has a disability as defined by the statute; (2) defendants knew or should have known about the disability; (3) with reasonable accommodation he could perform the essential functions of her job; and (4) defendants failed to make such accommodation.]

**SOURCE:**     *O'Connor v. Smith & Laqueria*, LLP, 2010 U.S. Dist. LEXIS 94088 (Sept. 8, 2010).

[As I stated, the Plaintiff must demonstrate by a preponderance of the evidence that he was able to perform the essential functions of the employment position with or without reasonable accommodation.]

If you find that the Plaintiff was otherwise qualified, as I explained that term to you, and that the Plaintiff was able to fulfill all of the essential functions of the job without any accommodation at the time of the adverse job action, then he is a qualified individual.  If he could not fulfill the essential functions of the job, he is not a qualified individual. If you do find that the plaintiff was otherwise qualified but unable to fulfill all of the essential functions of the job without accommodation, then you must consider whether there were reasonable accommodations that the Plaintiff requested and that the defendants could have granted that would have enabled the plaintiff to fulfill the essential functions which he could not otherwise fulfill.

A reasonable accommodation must be reasonable both in terms of cost and efficiency. It must not create an undue hardship in the conduct of the employer's business. Thus, you may consider the financial and administrative burdens that would be placed on the employer if required to make a particular accommodation.

A disabled employee has the obligation to suggest reasonable accommodations to the employer. An employer is not required to grant every request by an employee; it is required to make only those reasonable accommodations that allow the employee to function in the position. An employee may not require an employer to accept a particular accommodation if another one will accomplish the necessary result. Rather, an employer must engage in a good faith interactive process that assesses the needs of the disabled individual and the reasonableness of the accommodation requested.

**SOURCE:**  5-88A Modern Fed. Jury Instructions- 88A-16; *Phillips v. City of New York*, 66 A.D.3d 170, 176-177 (1st Dept. 2009)]

**Joint Instruction 22:  CHRL Aiding and Abetting**

**PLAINTIFF'S PROPOSED INSTRUCTION**

*Under the New York City Human Rights Law, Plaintiff alleges he was discriminated against and subjected to a hostile work environment because of his disability and race. Defendants deny this allegation.*

*Like the New York State law, the New York City law also provides a claim against an employer for aiding and abetting in that it is unlawful:*

*"For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."*

*Plaintiff alleges that Defendants aided and abetted in Defendants' alleged discriminatory conduct. Defendants deny this allegation.*

*You should note, the same legal standards of analysis used to evaluate aiding and abetting claims under the New York State Human Rights Law apply to such claims under the New York City*

*Human Rights Law.[56] I will discuss the application of these laws in your decision-making process shortly.*

*Plaintiff claims that Defendants Jan Borodo and Joseph Mastropietro aided and abetted in the alleged discriminatory conduct.  In order for an individual defendant to be liable for "aiding and abetting," you must find (1) that the alleged discriminatory conduct against the Plaintiff was motivated by the Plaintiff's race, disability, because he requested a reasonable accommodation or because he participated in an activity protected by anti-retaliation and anti-discrimination laws; and (2) that the individual defendant participated and assisted in the conduct giving rise to the alleged race and/or disability discrimination and/or retaliation for engaging in protected activities, such as bringing a discrimination lawsuit or requesting accommodations for disabilities.*

[If you decide (1) that Plaintiff has established, by a preponderance of the evidence that Plaintiff was discriminated based on his disability; and (2) that Defendants Borodo and/or Mastropietro, "actually participated" and assisted in the alleged discriminatory] *or retaliatory* [conduct, you will find that Borodo and/or Mastropietro aided and abetted in the conduct giving rise to the alleged race and/or disability discrimination] *or retaliation* [and you will proceed to consider the amount of Plaintiff's damages.]

[On the other hand, if you decide (1) that Plaintiff has failed to establish, by a preponderance of the evidence, the existence that Plaintiff was discriminated against based on his disability; or (2) that Borodo and Mastropietro did not "actually participate" and assist in the alleged discriminatory conduct, you will find that Borodo and Mastropietro are not liable to Plaintiff and you will proceed no further.]

---

[56] <u>Feingold v. New York</u>, 366 F.3d 138, 158 (2d Cir. 2004).

**SOURCE:**     Admin. Code § 8-107(6); N.Y. Exec. Law § 296 (Consol., Lexis Advance through 2022 released Chapters 1-657); *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995); *Falchenberg v. New York State Dept. of Educ.*, 338 Fed. Appx. 11 (2d Cir. 2009) (affirming dismissal of aiding and abetting claims when the underlying discrimination claim "fails on its merits"); *Dillon v. Ned Mgmt., Inc.*, 85 F.Supp.3d 639 (E.D.N.Y. 2015); *Conde v. Sisley Cosmetics USA, Inc.*, 2012 WL 1883505 (S.D.N.Y. 2012); *Nodelman v. Gruner & Jahr USA Pub'lg*, 2000 WL 502858 (S.D.N.Y. 2000) (finding individual recommending plaintiff's discharge was liable as an aider and abettor); *Bascom v. Smith Barney, Inc.*, 1999 WL 20853 (S.D.N.Y. 1999) (finding individual liable as an aider and abettor for approving discriminatory job requirement).

### <u>DEFENDANTS' PROPOSED INSTRUCTION</u>

<u>Plaintiff claims that Defendants Jan Borodo and Joseph Mastropietro aided and abetted in the alleged discriminatory conduct.  In order for an individual defendant to be liable for "aiding and abetting," you must find (1) that the alleged discriminatory conduct against the Plaintiff was motivated by the Plaintiff's disability; and (2) that the individual defendant "actually participated" and assisted in the conduct giving rise to the alleged disability discrimination.  In order to establish that an individual "actually participated" and assisted in the conduct giving rise to the alleged race and/or disability discrimination, you must find that the individual shared the intent or purpose of the principal actor and that the individual directly and purposefully participated in the alleged conduct.  There can be no partnership in an act where there is no community of purpose. An employee who actually made the decision to discriminate against the plaintiff, or who recommended, or who approved the decision to discriminate against the plaintiff, would be considered to have "actually participated" in the alleged discriminatory conduct against the plaintiff.</u>

[If you decide (1) that Plaintiff has established, by a preponderance of the evidence that Plaintiff was discriminated based on his disability; and (2) that Defendants Borodo and/or Mastropietro, "actually participated" and assisted in the alleged discriminatory conduct, you will find that Borodo and/or Mastropietro aided and abetted in the conduct giving rise to the alleged

race and/or disability discrimination and you will proceed to consider the amount of Plaintiff's damages.]

[On the other hand, if you decide (1) that Plaintiff has failed to establish, by a preponderance of the evidence, the existence that Plaintiff was discriminated against based on his disability; or (2) that Borodo and Mastropietro did not "actually participate" and assist in the alleged discriminatory conduct, you will find that Borodo and Mastropietro are not liable to Plaintiff and you will proceed no further.]

**SOURCE:**     Admin. Code § 8-107(6); N.Y. Exec. Law § 296 (Consol., Lexis Advance through 2022 released Chapters 1-657); *Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995); *Falchenberg v. New York State Dept. of Educ.*, 338 Fed. Appx. 11 (2d Cir. 2009) (affirming dismissal of aiding and abetting claims when the underlying discrimination claim "fails on its merits"); *Dillon v. Ned Mgmt., Inc.*, 85 F.Supp.3d 639 (E.D.N.Y. 2015); *Conde v. Sisley Cosmetics USA, Inc.*, 2012 WL 1883505 (S.D.N.Y. 2012); *Nodelman v. Gruner & Jahr USA Pub'lg*, 2000 WL 502858 (S.D.N.Y. 2000) (finding individual recommending plaintiff's discharge was liable as an aider and abettor); *Bascom v. Smith Barney, Inc.*, 1999 WL 20853 (S.D.N.Y. 1999) (finding individual liable as an aider and abettor for approving discriminatory job requirement).

**Joint Instruction 24:  Hostile Work Environment- City and State Human Rights Law**

**PLAINTIFF'S PROPOSED INSTRUCTION**[61]

*The plaintiff in this case alleges that the defendants subjected him to a hostile work environment under the SHRL and CHRL.  Defendants deny these allegations.*

*Under the State and City Law standard, Mr. Pitre must prove that Defendants subjected him to unwelcomed discriminatory conduct, that a reasonable person would find was more than "petty slights and trivial inconveniences." Thus, a single act or comment related to Mr. Pitre's disability or race may be sufficient for her to prove his case for hostile work environment under*

---

[61] Defendants object to plaintiff's proposed instruction.  This instruction contains unnecessary language, is unduly prejudicial, and is contrary to law as strict liability applies to employers and the individual defendants are not employers under the applicable statutes.  Additionally, Plaintiff has only asserted a hostile work environment claim under the CHRL. See Amended Complaint, Dkt. No. 37, at ¶¶100-129.  Plaintiff cannot at this late stage add additional claims.

the State and City law as long as the comment or comments are more than petty slights or trivial inconveniences.[62]

Under the New York State and City Human Rights Law the Defendants are strictly liable for the harassing and hostile acts of any of its supervisors. Strictly liable means that if you believe that Defendants Mastropietro or Borodo, or former and deceased defendant Fiorentino, as Mr. Pitre's supervisors, subjected him to conduct that is more than a petty slight or trivial inconvenience, then you must find in Plaintiff's favor against the corporate defendant City of New York.[63]

When applying the New York State Human Rights Law, you should note what the law does not require for liability. Section 296(1)(h) expressly states:

"The fact that such individual did not make a complaint about the harassment to such employer, […] shall not be determinative of whether such employer, licensing agency, employment agency or labor organization shall be liable."

Thus, the law makes it clear that Mr. Pitre complaining or not complaining about the alleged unlawful behavior shall not be determinative of whether such employer is liable. Additionally, under the New York State Human Rights Law, Plaintiff is not required to show comparative employees treated favorably or less favorably.[64]

---

[62] N.Y.C. Admin Code §8-107(1)(a); Farrugia v. North Shore Univ. Hosp., 13 Misc. 3d 740, 820 N.Y.S.2d 718 (Sup. Ct. N.Y. Cty. 2006); Williams v. New York City Housing Authority, 61 A.D.3d 62 (1st Dep't January 27, 2009); "It shall be an affirmative defense to liability under this subdivision that the harassing conduct does not rise above the level of what a reasonable victim of discrimination with the same protected characteristic or characteristics would consider petty slights or trivial inconveniences." N.Y. Exec. Law § 296.

[63] New York City Human Rights Law §8-107(13)(b)(1); Legislative Annual, at 187 (N.Y.S. Legislative Svc., Inc. 1991) ("[s]trict liability in employment context for acts of managers and supervisors…"). See also Zakrzewska v. The New School, 2009 U.S. Dist. LEXIS 5183, *21-*22 (S.D.N.Y. Jan. 26, 2009). 10 "Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared." Id., 296(1)(h)

[64] "Nothing in this section shall imply that an employee must demonstrate the existence of an individual to whom the employee's treatment must be compared." Id., 296(1)(h)

**DEFENDANTS' PROPOSED INSTRUCTION ON PLAINTIFF'S CHRL HOSTILE WORK ENVIRONMENT CLAIM**

In this case, the Plaintiff claims that he was subjected to a hostile work environment because he was believed by Defendants to disabled.

Specifically, Plaintiff claims that he was treated less well than other employees because he was believed by Defendants to be disabled in that he was denied medical leave, denied his grant application, denied a light duty assignment, and had his agency vehicle taken away.

Additionally, Plaintiff claims that Defendants Borodo and Mastropietro were exercising managerial or supervisory responsibilities at Plaintiff's workplace.

The Defendants deny that Plaintiff was treated less well than other employees because he was believed by his supervisors to be disabled and specifically deny that plaintiff: (1) was denied leave, (2) properly and timely submitted his grant application, and (3) properly submitted an application for a light duty assignment, and (4)properly followed workplace policies.

In order to recover, Plaintiff must prove, by a preponderance of the evidence, (1) that he was an employee of Defendants; (2) that Plaintiff was believed by his supervisors to be disabled; (3) that the denial of his medical leave, the denial of his grant application, the denial of a light duty assignment, and that his agency vehicle was taken away, actually occurred; (4) that the conduct was unwanted; (5) that Plaintiff was subjected to the conduct because he was believed by his supervisors to be and disabled; (6) that, as a result of the conduct, a reasonable disabled person would consider that he was being treated less well than other employees under all of the circumstances; (7) that Plaintiff actually considered that he was being treated less well than other employees because he was believed by his supervisors to be disabled; (8) that Defendants were exercising managerial or supervisory responsibilities at Plaintiff's workplace; and (9) that Plaintiff was harmed because of the conduct.

If you decide (1) that Plaintiff was an employee of Defendants; (2) that Plaintiff was believed by his supervisors to be disabled; (3) that the denial of his medical leave, the denial of his grant application, the denial of a light duty assignment, and that his agency vehicle was taken away, actually occurred; (4) that the conduct was unwanted; (5) that Plaintiff was subjected to the conduct because he was believed by his supervisors to be disabled; (6) that, as a result of the conduct, a reasonable disabled person would consider that he was being treated less well than other employees under all of the circumstances; (7) that Plaintiff actually considered that he was being treated less well than other employees because he was believed by his supervisors to be disabled; (8) that Defendants were exercising managerial or supervisory responsibilities at Plaintiff's workplace; and (9) that Plaintiff was harmed because of the conduct, you will find Defendants liable to Plaintiff and you will proceed to consider the amount of Plaintiff's damages.

On the other hand, you will find that Defendants are not liable to Plaintiff if you decide (1) that the denial of his medical leave, the denial of his grant application, the denial of a light duty assignment, and that his agency vehicle was taken away did not actually occur; or (2) that the conduct was not unwanted; or (3) that Plaintiff was not subjected to the conduct because he was believed by his supervisors to be disabled; or (4) that, as a result of the conduct, a reasonable disabled person would not have considered that he was being treated less well than other employees under all of the circumstances; or (5) that Plaintiff did not actually consider that he was being treated less well than other employees because he was believed by his supervisors to be disabled; or (6) that Plaintiff was not harmed because of the conduct, you will find that Defendants are not liable to Plaintiff and will proceed no further on this claim.

**SOURCE:**     NY PJI 9:5A.

The New York City Human Rights Law, however, is not a workplace civility code.  This means that the defendants will not have liability under the New York City Human Rights Law if

it is established that the conduct complained of was nothing more than what a reasonable employee would view as petty slights or trivial inconveniences.

If you decide that the conduct Plaintiff proved amounted to what a reasonable person would have considered to be nothing more than petty slights or trivial inconveniences, you will find that Defendants are not liable to Plaintiff and will proceed no further on this claim. On the other hand, if you decide that the conduct Plaintiff proved was what a reasonable person would have considered significant and not trivial or petty, you will find Defendants liable to Plaintiff and will proceed to consider the amount of Plaintiff's damages.

**SOURCE:**    *Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 79-80 (1st Dep't 2009); *Ellis v. City of New York*, No. 08 cv 7605, 2011 U.S. Dist. LEXIS 84104, 2011 WL 3279057, at *8 (S.D.N.Y. July 28, 2011); *Wilson v. N.Y.P. Holdings, Inc.*, No. 05 civ. 10355, 2009 U.S. Dist. LEXIS 28876, 2009 WL 873206, at *29 (S.D.N.Y. Mar. 31, 2009).

**Joint Instruction No. 25:  SHRL and CHRL Retaliation**

**PLAINTIFF'S PROPOSED INSTRUCTION[65]**

*Mr. Pitre claims that the defendants discriminated and retaliated against him because of his previous lawsuit against the City and FDNY, and the favorable outcome for him and his co-plaintiffs in that lawsuit, and because he was injured on the job and made numerous requests for accommodations for his resulting injuries.*

*To prevail on this claim under both the of the HRLs, Mr. Pitre must establish all of the following by a preponderance of the evidence:*

*First: That Mr. Pitre previously sued the City of New York and other FDNY defendants for racial discrimination, made complaints about discrimination, and that he requested*

---

[65] Defendants object to plaintiff's proposed instruction.  This instruction contains unnecessary language, is factually inaccurate, is unduly prejudicial, and is submitted to the Court without any supporting caselaw.

*accommodation for his disability.*

*Second: That Mr. Pitre was subjected to a materially adverse action at the time, or after, the protected conduct took place.*

*Third: There was a causal connection between (a) defendants' alleged excessive and unwarranted writeups and, inordinate and excessive scrutiny of his work performance, as well as their refusal to grant Plaintiff's light duty request and other requests for accommodation, resulting in his termination and Mr. Pitre's previous lawsuit against the City and FDNY or his on the job injuries or his requests for accommodation.*

*Concerning the first element, Mr. Pitre need not prove the merits of his previous lawsuit or other protected activities such as his requests for accommodation, but only that he was acting under a reasonable, good faith belief that Mr. Pitre's (and his former co-plaintiffs') right to be free from discrimination on the basis of race or disability was violated.*

*Concerning the second element, the term "materially adverse" means that Mr. Pitre must show defendants refusal to grant light duty, alleged excessive and baseless writeups, and denial of requested medicval leave and transfers were serious enough that it well might have discouraged a reasonable worker from suing the City and FDNY for race discrimination or requesting disability accommodations thereafter.*

*Concerning the third element, that of causal connection, that connection may be shown in many ways.  For example, you may or may not find that there is a sufficient connection through timing, that is the defendants' action followed shortly after the defendants became aware of Mr. Pitre's lawsuit, his injury-related disability or his requests for accommodation. Causation is,*

*however, not necessarily ruled out by a more extended passage of time. Causation may or may not be proven by antagonism shown toward Mr. Pitre or a change in demeanor toward Plaintiff.*

*Ultimately, you must decide whether Mr. Pitre's protected activities had a determinative effect on alleged retaliatory acts of administering excessive and unwarranted disciplinary actions, refusing medical leave and transfer requests and ultimately refusing light duty requests that resulted in Mr. Pitre's alleged forced early retirement.  "Determinative effect" means that if not for plaintiff's protected activity, the excessive and unwarranted disciplinary actions, refusal of medical leave and transfer requests and ultimately the refusal light duty requests that resulted in Mr. Pitre's alleged forced early retirement would not have occurred.*

### DEFENDANTS' PROPOSED INSTRUCTION ON PLAINTIFF'S CHRL RETALIATION CLAIM [66]

Plaintiff also asserts that he was unlawfully retaliated against under the CHRL.  Plaintiff claims that the Defendants retaliated against him because he filed a lawsuit in December 2011. Opposing discrimination in employment is also a protected activity under the CHRL, whether the protest is justified or not. Accordingly, to make out his claim of retaliation, Plaintiff must prove, by a preponderance of the evidence, each of the following essential elements:

1.   First, that he complained of discrimination in his employment, specifically that he complained that he was being discriminated again because of his race and/or disability;

2.   Second, that  Defendants Borodo, and Mastropietro were aware of his December 2011 lawsuit;

3.   Third, that Plaintiff was then subjected to an adverse action by one of the Defendants; and

---

[66] Plaintiff combined SHRL and CHRL Retaliation. Defendants have separated these into two different jury instructions.

4.    Fourth, that there was a causal connection between Plaintiff's December 2011 discrimination lawsuit and the adverse action of one of the Defendants.

With respect to the third element, to prove by a preponderance of the evidence an adverse action under the CHRL, Plaintiff need not show a "material" adverse action. Instead, Plaintiff must show that the Defendants' conduct was reasonably likely to deter a person from engaging in protected activity.

With respect to the fourth element, if Plaintiff cannot demonstrate that retaliation played some part in one of the Defendant's alleged adverse employment actions, then you will find that he has not established a causal connection between his December 2011 lawsuit and the adverse action of one of the Defendants.

**SOURCE**:    *N.Y.C. Admin. Code § 8-107(7); Pena-Barrero v. City of New York*, No. 14 Civ 9550 (VEC), 2017 U.S. Dist. LEXIS 47983 at *44 (S.D.N.Y. March 30, 2017); *Dodd v. City Univ. of N.Y.,* 17 Civ  9932 (PAE), 489 F. Supp. 3d 219, 246-48 (S.D.N.Y. September 25, 2020); *Univ. of Tex. SW Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013); *Taylor v. Seamen's Soc. for Children*, No. 12 Civ. 3713 (PAE), 2013 U.S. Dist. LEXIS 176914, at *64 (S.D.N.Y. Dec. 17, 2013); *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 79-80 (1st Dept. 2009).

In determining this question of defendants' motivation, you should consider all the evidence in the case, including the timing of the allegedly retaliatory act, the testimony of the witnesses, and the documents in evidence.  I caution you that your function is to determine only whether a motive to retaliate was the reason for the alleged retaliatory act.

Plaintiff cannot prevail merely by showing that she was treated in a way that she or others might think is unfair.  An employer has the right to assign a particular job to an employee, to discipline an employee, or even to discharge an employee for any reason or no reason at all so long as intentional discrimination is not the reason.  You are not to second-guess the wisdom or reasonableness of the Defendants' employment practices or decisions.  Defendants have the right to make personnel decisions for any reason, or no reason at all.

Plaintiff's own subjective belief that she was retaliated against is not enough to meet her burden of proving that defendant's stated reasons for their action were pretextual or a disguise for retaliation.

Source: *N.Y.C. Admin. Code § 8-107(7)*; *Williams v. Regus Management Group, LLC*, 836 F. Supp.2d 159 (S.D.N.Y. 2011); *Williams v. New York City Housing Auth. et al*, 61 A.D.3d 62, 70-71 (1st Dep't 2009); 5-88 Modern Federal Jury Instructions-Civil P 88.03; *See Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir. 1988) ("[I]t is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal."); *Taylor v. Polygram Records*, 94 Civ. 7689 (CSH), 1999 U.S. Dist. LEXIS 2583, at *46 (S.D.N.Y. Mar. 5, 1999) (holding that plaintiff's belief that he was discriminated against, "based on no evidence other than gut instinct," cannot support inference of discrimination).]

## DEFENDANTS' PROPOSED INSTRUCTION ON PLAINTIFF'S SHRL RETALIATION CLAIM [68]

Plaintiff also asserts that he was unlawfully retaliated against under the SHRL.  Plaintiff claims that the Defendants retaliated against him because he filed a lawsuit in December 2011. Opposing discrimination in employment is a protected activity under the SHRL, whether the protest is justified or not. Accordingly, to make out his claim of retaliation, Plaintiff must prove, by a preponderance of the evidence, each of the following essential elements:

1.      First, that he complained of discrimination in his employment, specifically that he complained that he was being discriminated again because of his race and/or disability;

2.      Second, that  Defendants Borodo, and Mastropietro were aware of Plaintiff's December 2011 discrimination lawsuit;

3.      Third, that Plaintiff was then subjected to an adverse action by one of the Defendants; and

4.      Fourth, that but for Plaintiff's December 2011 lawsuit, no adverse action would have been taken.

---

[68] Plaintiff combined SHRL and CHRL Retaliation. Defendants have separated these into two different jury instructions.

Regarding the third element, an adverse action under 42 U.S.C. § 1983 and SHRL is "material" in the context of a retaliation claim, if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'  The anti-retaliation provision protects a person from not all retaliation, but from retaliation that produces an injury or harm.  Generally, petty slights, minor annoyances, and simple lack of good manners will not normally constitute adverse employment actions for purposes of retaliation.  Moreover, a negative performance evaluation alone is insufficient to meet this standard.  Plaintiff must demonstrate that it was accompanied by evidence of negative consequences.

Regarding the fourth element, the plaintiff must prove a causal connection between the protected activity and the alleged retaliatory act.  Plaintiff must show by a preponderance of the evidence that the alleged retaliatory acts would not have been taken but-for the plaintiff's complaints of discrimination.  Here, the plaintiff must prove by a preponderance of the evidence that retaliation was the sole motivating factor in defendant's employment decisions.

The defendants contend that there were legitimate, non-retaliatory reasons for its employment decisions, and that they would have taken the same action even in the absence of plaintiff's complaints.

**SOURCE:**    *Whidbee v.Garzarelli Food Specialities Inc.*, 223 F.3d 62, 69 (2d Cir. 2000); *Schjano v. Quality Payroll Sys. Inc.*, 445 F.3d 597, 609 (2d Cir. 2006); *Butts v. N.Y. City Dep't of Hous. Pres. & Dev.*, 307 Fed. Appx. 596, 599 (2d Cir. 2009); *Warren v. Goord*, No. 06-3349- pr, 2008 U.S. App. LEXIS 24272, at *5 (2d Cir. Nov. 26, 2008) (*citing Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). *Dauer v. Verizon Commc'ns Inc.*, 2009 U.S. Dist. LEXIS 21506 (S.D.N.Y. Mar. 17, 2009); Mauskopf v. Dist. 20 of the NY City Dep't of Educ., 229 Fed. Appx. 100, 101 (2d Cir. NY 2008). *Univ. of Tex. SW Med. Ctr. V. Nassar*, 133 S.Ct 2517, 2533 (2013). *Mount Healthy City School dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

**Joint Instruction 26:  Retaliation Evidence to be Considered in Causal Connection[70]**

---

[70] Plaintiff does not agree that this charge should be submitted.

In deliberating about causation, you may consider the "temporal proximity" between plaintiff's protected activity and the employment actions that plaintiff asserts are both adverse and in response to the protected activity.  See Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001).  Temporal proximity is considered circumstantial evidence.  See Peres v. Oceanside Union Free School Dist., 2008 U.S. Dist. LEXIS 7403, at *39 (E.D.N.Y. 2008).  The longer the time between these events, the less likely the complained of conduct was in retaliation for the protected activity.  Indeed, a period of three to four months between these events, without some additional evidence indicating some connection, would suggest that the employment action was not in response to the protected activity.  See id.; see also Woods v. Enlarged City Sch. Dist., 473 F. Supp. 2d 498, 528-29 (S.D.N.Y. 2007); Cunningham v. Consol. Edison, Inc., 2006 U.S. Dist. LEXIS 22482, at *54-*59 (E.D.N.Y. 2006).

In determining this question of Defendants' motivation, you should consider all the evidence in the case, including the timing of the allegedly retaliatory acts, the testimony of the witnesses, and the documents in evidence.  I caution you that your function is to determine only whether a motive to retaliate was the reason for the alleged retaliatory act.

Plaintiff cannot prevail merely by showing that he was treated in a way that he or others might think is unfair. An employer has the right to assign a particular job to an employee, to discipline an employee, or even to discharge an employee for any reason or no reason at all so long as intentional discrimination is not the reason. You are not to second-guess the wisdom or reasonableness of the Defendants' employment practices or decisions.  Defendants have the right to make personnel decisions for any reason, or no reason at all.

Plaintiff's own subjective belief that he was retaliated against is not enough to meet his burden of proving that Defendant's stated reasons for their action were pretextual or a disguise for retaliation.

**SOURCE:**    *See Rasco v. BT Radianz,* 05 Civ. 7147, 2009 U.S. Dist. LEXIS 21540, at *25 (S.D.N.Y. Mar. 17, 2009)(quoting *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1116 (2d Cir. 1988) ("[I]t is not the function of a fact-finder to second-guess business decisions or to question a corporation's means to achieve a legitimate goal.")); *Williams v. J.P. Morgan Chase Bank*, 02 Civ. 4250 (GBD)(MHD), 2005 U.S. Dist. LEXIS 52055, at *51-58 (S.D.N.Y. Aug. 19, 2005) (citing *Taylor v. Polygram Records*, 94 Civ. 7689 (CSH), 1999 U.S. Dist. LEXIS 2583, at *46 (S.D.N.Y. Mar. 5, 1999) (holding that plaintiff's belief that he was discriminated against, "based on no evidence other than gut instinct," cannot support inference of discrimination).

**Joint Instruction 27:  Pretext for All Retaliation[71]**

The Defendants have offered evidence that their actions were done for non-retaliatory reasons.  Remember that it is Plaintiff's burden to prove that his December 2011 discrimination lawsuit was the reason for the Defendants' decisions and that an employer may take adverse decisions against an employee for any reason, good or bad, fair or unfair, as long as it is not discriminatory or retaliatory.

In this regard, I instruct you that it is not your role to second guess the decisions of Defendants that are not based on discrimination or retaliation.  Absent discrimination or retaliation, employers such as Defendants may subject an employee such as Plaintiff to an adverse employment action for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all.  The sole inquiry here is whether Plaintiff has sustained his burden of proving by a preponderance of the evidence that Defendants were motivated to subject Plaintiff to an adverse employment action by the impermissible reason of retaliating against him for having filed his December 2011 discrimination lawsuit.  Plaintiff's own subjective belief that he was retaliated

---

[71] Plaintiff does not agree that this charge should be submitted.

against is not enough to meet his burden of proving that Defendants' stated reasons for their action

were pretextual or a disguise for retaliation.

**SOURCE:**     *Pena-Barrero v. City of New York*, No. 14 Civ 9550 (VEC), 2017 U.S. Dist. LEXIS
47983 at *45 (S.D.N.Y. March 30, 2017); *Godbolt v. Verizon N.Y., Inc.*, 115 A.D.3d 493, 494 (1st
Dep't 2014), <u>lv. To app. den.</u>, 24 N.Y.3d 901 (2014); *Melman v. Montefiore Med. Ctr.*, 98 A.D.3d
107, 112 (1st Dep't 2012); 5-88 Modern Fed. Jury Instructions-Civil P 88.03 (Instruction 88-44).

## IV - AS TO DAMAGES

**Joint Instruction No. 28:  Damages Generally**

### PLAINTIFF'S PROPOSED INSTRUCTION[72]

*If you find that plaintiff has met her burden of proof with respect to her discrimination*

*claims under the federal, state, or city law, that is, that she has proven her claims by a*

*preponderance of the evidence, then you must consider the issue of damages.*

*You should not reach the issue of damages unless you find that Plaintiff has established*

*liability on at least one of his claims. You should note that for liability purposes, Plaintiff does*

*not need to establish any specific loss of salary, wages or other benefits in order to establish a*

*claim for discrimination.[73]*

*If you do find that Plaintiff is entitled to recover from the Defendants, you must render a*

*verdict in a sum of money that will justly and fairly compensate, or make whole, Plaintiff for all*

*the losses resulting from the injuries he sustained.*

### *COMPENSATORY DAMAGES*

*The purpose of the law of damages is to award, as far as possible, just and fair*

*compensation for any loss that resulted from the Defendants' violation of Plaintiff's rights. If you*

---

[72] Defendants object to Plaintiff's proposed damages instruction.  Defendants submit that plaintiff is not entitled to
economic damages for lost wages, including front pay or back pay.
[73] <u>Burlington Industries v. Ellerth</u>, 524 U.S. 742, 118 S.Ct. 2257 (1998).

find that the Defendants are liable on any of Plaintiff's claims, as I have explained them, then you must award him sufficient damages to compensate for any injury she suffered as a result of the Defendants' wrongdoing.

Compensatory damages can be inferred from the circumstances presented to you by the evidence, or they can be proven by testimony going solely to the issue of damages. They are not limited merely to expenses that Plaintiff may have incurred, although if you find that such expenses have been incurred, your award of compensatory damages should include them. For example, if you find that Plaintiff incurred any costs and expenses for healthcare providers or medication, or is more likely than not to incur expenses for them in the future, you may include such amounts in your award, so long as you find those expenses were, or will have been, proximately caused by the Defendant's unlawful acts.[74] An award of compensatory damages for mental anguish may be based solely on the complainant's testimony[75].

Compensatory damages include damages for emotional pain and suffering, mental anguish, humiliation, indignity, embarrassment, emotional distress, shock, discomfort, inconvenience and loss of enjoyment of life that you may find he has suffered as a result of the Defendants' unlawful conduct. The words "embarrassment" and "humiliation" are used in their everyday meaning. Not every embarrassment and humiliation, however, is compensable. Embarrassment and humiliation are compensable only when a reasonable person with

---

[74] Devitt, Blackmar and Wolff, *Federal Jury Practice and Instructions*, §§ 104.05, 104.06, 104A.11 (1987 & Supp. 1993)

[75] <u>Argyle Realty Associates v State Div. of Human Rights</u>, 65 AD3d 273, 882 NYS2d 458; <u>State v State Div. of Human Rights</u>, 284 AD2d 882, 727 NYS2d 499; <u>Father Belle Community Center v State Div. of Human Rights on Complaint of King</u>, 221 AD2d 44, 642 NYS2d 739; <u>Marcus Garvey Nursing Home, Inc. v State Div. of Human Rights</u>, 209 AD2d 619, 619 NYS2d 106; <u>Gleason v Callanan Industries Inc.</u>, 203 AD2d 750, 610 NYS2d 671

*ordinary sensibilities under the same or similar circumstances would be embarrassed or humiliated.*

*You decide to award compensatory damages, you must be guided by dispassionate common sense. Computing damages may be difficult, but you must not let that difficulty lead you to engage in arbitrary guesswork. On the other hand, the law does not require Plaintiff to prove any expense, lost earnings or other measurable damages in order for her to receive compensation for mental suffering, although you may find that she has in fact done so. The law also does not require her to prove the amount of any such losses with mathematical precision. She only needs to do so with as much definiteness and accuracy as the circumstances permit.*

*There is also no requirement that a claim of emotional distress be supported by evidence from a medical or mental health professional who treated Plaintiff, or indeed, by the testimony of any witness. The damages that you award must simply be fair and reasonable, neither inadequate nor excessive.*[76]

*Even if you believe that Plaintiff is unusually emotionally sensitive and incurred greater emotional harm from the Defendant's discriminatory conduct than the harm that would have been suffered by an average person, the Defendants are responsible for this additional harm.*[77]

---

[76] Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); *Black's Law Dictionary* 1103 (5th ed. 1979); New York City Transit Auth. v. State Div. of Human Rights, 78 N.Y.2d 207, 216, 577 N.E.2d 40, 573 N.Y.S.2d 49, 54 (1991), *on remand*, 181 A.D.2d 891, 581 N.Y.S.2d 426 (2d Dep't 1992); Schulman v. Group Health Inc., 39 A.D.3d 223, 225, 833 N.Y.S.2d 62, 64 (1st Dep't 2007); Sogg v. American Airlines, Inc., 193 A.D.2d 153, 163, 603 N.Y.S.2d 21, 27 (1st Dep't 1993), *app. denied,* 83 N.Y.2d 754, 612 N.Y.S.2d 109 (1994); McIntyre v. Manhattan Ford, 256 A.D.2d 269, 682 N.Y.S.2d 167 (1st Dep't 1998); Walsh v. Covenant Hse., 244 A.D.2d 214, 664 N.Y.S.2d 282 (1st Dep't 1997); Bracker v. Cohen, 204 A.D.2d 115, 612 N.Y.S.2d 113 (1st Dep't 1994); Boodram v. Brooklyn Dev. Ctr., 2003 N.Y. Misc. LEXIS 1582 (Civ. Ct. N.Y. Cty. 2003) (collecting cases and recognizing award for future lost earnings and future emotional distress); T.P.I. - Civil 11.75, *Embarrassment and Humiliation*; Harman v. Moore's Quality Snack Foods, 815 S.W.2d 519 (Tenn. App. 1991

[77] Williamson v. Handy Button Mach. Co., 817 F.2d 1290, 1294 (7th Cir. 1987).

*The fact that Plaintiff may have a physical or mental condition that make him more susceptible to injury than a normal healthy person does not relieve the Defendants of liability for all injuries sustained as a result of its harassment and/or negligence. The Defendants are liable even though those injuries are greater than those that would have been sustained by a normal healthy person under the same circumstances.*

### LOST WAGES AND PENSION EARNINGS

*In addition, the non-pecuniary damages, you can award Mr. Pitre monetary damages in the form of back-pay, front-pay, lost pension, out of pocket expenses, and other economic loss that came about as a result of Defendants' alleged violations of law.*

*If you find that Defendants subjected Mr. Pitre to a hostile work environment because of his disability, race or protected activities he engaged in, then you must award as actual damages an amount that reasonably compensates Mr. Pitre for any lost wages and pension benefits, taking into consideration any increases in salary and benefits, including pension increases, that he would have received from Defendants had Plaintiff not been the subject of Defendants' discrimination.*

*Back pay damages, if any, apply from the time Plaintiff was terminated until the date of your verdict. If you award back pay, you are instructed to deduct from the back pay figure whatever wages Plaintiff has obtained from other employment during this period[78].[17] Front pay damages, if any, represent a plaintiff's lost salary and benefits, caused by an unlawful discharge or other adverse action, accruing from the time of trial through some point in the future. Factors to be*

---

[78] Model Civ. Jury Instr. 3rd Cir. § 8.4.2 (2019)(modified)

*considered in determining front pay include the age of the plaintiff and her reasonable prospects of obtaining comparable employment.*[79]


### PROXIMATE CAUSE

*You may award compensatory damages for all of the injuries that Plaintiff proves were proximately caused by the Defendants' unlawful conduct. Injuries are proximately caused by an act, or a failure to act, whenever it appears from a preponderance of the evidence in the case that the act or omission played a substantial part in bringing about or actually causing the injury or damage; and that the injury or damage was either a direct result or a reasonably probable consequence to the act or omission.*


### PUNITIVE DAMAGES[80][81]

*If you find in favor of Plaintiff under the Federal, City and State laws, those laws also allow you to award punitive damages to him, but only against the individually named Defendants Mastropietro and Borodo. By law punitive damages cannot be awarded against a municipality such as Defendant City of New York.  Since Defendants Mastropietro and*

---

[79] "Any form of money damages is a legal remedy to be decided by the jury under the New York State Human Rights Law." *Chisholm v. Mem'l Sloan-Kettering Cancer Ctr.,* 824 F. Supp. 2d 573 (S.D.N.Y. 2011); *Thomas v. iStar Fin., Inc.,* 508 F. Supp. 2d 252, 261 (S.D.N.Y. 2007)

[80] *Levitant v. New York Human Res. Admin.,* Index No. 1:05-cv-00230-KAM-JO, Dkt. No. 141 (E.D.N.Y Apr. 24, 2012) (Matsumoto, J.); Sand, Modern Federal Jury Instructions Civil 77.03 (2017); 42 U.S.C. §1981a(a)(1), (b)(2) and (b)(3); *Bigelow v. RKO Radio Pictures,* 327 U.S. 251, 264-65 (1946); *Patrolmen's Benevolent Ass'n of New York, Inc. v. City of New York,* 310 F.3d 43, 56 (2d Cir. 2002); *Walz v. Town of Smithtown,* 46 F.3d 162, 170 (2d Cir. 1995); *Miner v. City of Glens Falls,* 999 F.2d 655, 663 (2d Cir. 1993); *Sir Speedy, Inc. v. L & P Graphics, Inc.,* 957 F.2d 1033, 1038 (2d Cir. 1992

[81] It is Defendants' position that the facts here would not support an award of punitive damages against the individually named Defendants.

*Borodo have been sued in this case in their individual capacity, punitive damages can be awarded against them if the following standards are met[82].*

*The purpose of an award of punitive damages is to punish a wrongdoer for misconduct and to warn others against doing the same. You may, but do not have to award these damages, if you find that the Defendants willfully violated Plaintiff' rights, or acted wantonly, recklessly or maliciously in doing so.*

*To willfully violate the law is nothing more, nor less, than to do so intentionally. To act maliciously is to act deliberately, with knowledge of Plaintiff' rights, and the intention of interfering with those rights. To act wantonly and recklessly is to act in such a way and under such circumstances as to show conscious indifference and utter disregard for the effect of your acts upon the rights of others. You may consider outrageous or egregious conduct as evidence of a motive warranting the award of punitive damages. You may award punitive damages if you find either that Defendants actually derived satisfaction from hurting Plaintiff or, if Defendant's management, while not having any particular desire to hurt Plaintiff, nevertheless trampled on Plaintiff' rights in a fashion that fairly can be called reckless.[20]*

---

[82] <u>Rodriguez v City of Rochester</u>, 624 Fed Appx 16, 18-19 [2d Cir 2015] "Second, the plaintiffs requested punitive damages, which are available only in an individual-capacity suit, for their hostile-work-environment *19 claim. *See Phillips,* 66 F.3d at 482 (noting, *inter alia,* that "the complaint seeks punitive damages, which are not available against the state," and concluding that defendant was sued in his individual capacity)"

*If you decide to award punitive damages, it is up to you to determine a fair, just and reasonable amount which would be sufficient to deter the Defendants, and others like them, from engaging in similar wrongful conduct in the future.[83]*

*Plaintiff does not need to demonstrate that the Defendants' conduct was egregious or outrageous in order to be entitled to punitive damages; instead, he needs only to have shown that the Defendants either knew or perceived that there might be a risk that they were violating his rights, or that the Defendants acted maliciously toward Plaintiff.[22]*

*It is also not necessary for Plaintiff to present direct evidence of malicious intent, or reckless indifference, on the part of a Defendant in order to justify an award of punitive damages against Defendants. Such intent may be inferred by you from the nature of the acts committed by the Defendants, and from the facts and circumstances surrounding such acts.[23]*

*There is also no requirement that Plaintiff show a pattern of wrongdoing for punitive damages to be awarded; a single act, which is either malicious or recklessly indifferent to his statutorily protected rights will suffice.[84]*

*If you decide to award punitive damages to Plaintiff, you should consider the following factors in assessing the amount of such damages:*

---

[83] 3 Sand 77-5; *Franklin v. Gwinnett Country Pub. Sch.*, 503 U.S. 60, 112 S.Ct. 1028 (1992); *Luciano v. Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997); *Benjamin v. United Merchants and Manufacturers, Inc.*, 873 F.2d 41 (2d Cir. 1989); *Stanojev v. Ebasco Services, Inc.*, 643 F.2d 914, 924 n.7 (2d Cir. 1981); *Manual of Model Civil Jury Instructions for the District Courts of the 8th Cir.*, §§ 5.04, 5.24 (1995); Devitt §§ 7104.07, 104A.12 (1994 Supp.); Kolstad v. American Dental Ass'n, 527 U.S. 526, 534, 119 S.Ct. 2118, 2124 (1999); Smith v. Wade, 461 U.S. 30, 103 S.Ct. 1625 (1983); Adickes v. S.H. Kress & Co., 398 U. S. 144, 233-34, 90 S.Ct. 1598, 1642-43 (1970); Cochetti v. Desmond, 572 F.2d 102, 105-06 (3d Cir. 1978); Guzman v. Western State Bk., 540 F.2d 948 (8th Cir. 1976
[84] Kolstad v. American Dental Ass'n, 527 U.S. 526, 536-39, 119 S.Ct. 2118, 2125-26(1999); Rowlett v. Anheuser-Busch, 832 F.2d 194, 206 (1st Cir. 1987)

(1) *The nature and reprehensibility of what the Defendants did, including the character of the wrongdoing; whether the Defendants' conduct demonstrated an indifference to, or reckless disregard of, the rights of others; the vulnerability of Plaintiff; how long the conduct went on; the Defendants' awareness of the harm caused by their conduct; and any concealment of the conduct;*

(2) *The actual and potential harm created by the Defendants' conduct (including Plaintiff's trouble and expense in seeking to protect his interests in this lawsuit, and any prior legal proceedings); and*

(3) *The Defendants' financial condition and resources, and the impact that your award will have on them.*

*The amount of punitive damages you award must be reasonable and proportionate to the actual and potential harm suffered by Plaintiff, and to any compensatory damages which you award.*[85]

*The amount you assess as punitive damages need not bear any relationship to the amount you choose to award as compensatory damages and it is not necessary that you award*

---

[85] PJI § 2:278; N.Y.C. Admin. Code §§ 8-126, 8-502; Umansky v. Masterpiece Int'l Ltd., 276 A.D.2d 692, 715 N.Y.S.2d 638 (2d Dep't 2000) (relying on federal standards for punitive damages and citing Kolstad v. American Dental Ass'n, 527 U.S. 526, 119 S.Ct. 2118 (1999)) (damages in civil rights context); McIntyre v. Manhattan Ford, 256 A.D.2d 269, 682 N.Y.S.2d 167 (1st Dep't 1998) (damages of civil rights context); Walsh v. Covenant Hse., 244 A.D.2d 214, 664 N.Y.S.2d 282 (1st Dep't 1997) (same); Bracker v. Cohen, 204 A.D.2d 115, 612 N.Y.S.2d 113 (1st Dep't 1994) (same); Boodram v. Brooklyn Dev. Ctr., 2003 N.Y. Misc. LEXIS 1582 (Civ. Ct. N.Y. Cty. 2003); Alexander v. Riga, 208 F.3d 419, 430-432 (3d Cir. 2000). Hennessy v. Penril DataComm. Networks, 69 F.3d 1344 (7th Cir. 1995); Edwards v. Jewish Hosp., 855 F.2d 1345, 1352 (8th Cir. 1988); Hicks v. Brown Group Inc., 902 F.2d 630, 653 (8th Cir. 1990); Goodwin v. Circuit Court, 729 F.2d 541, 542-43 (8th Cir.), *cert denied*, 469 U.S. 828, 105 S.Ct. 112 (1984)

*compensatory damages to Plaintiff in order to assess punitive damages against Defendant, so long as you find in favor of Plaintiff and against Defendant on the question of liability.*[86]

*Punitive damages under the Plaintiff's New York City claims, shall be assessed differently and separately from the related Federal and State claims.*

*Under the New York City claim, Mr. Pitre is entitled to punitive damages if you find the Defendants' actions amount to willful or wanton negligence, or recklessness, or where there is a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.*[87] *Therefore, the "intent" requirement, as is required to award punitive damages under the Federal and State law, is not required under the New York City law. "Negligence" in this case is defined as a "failure to use such care as a reasonably prudent and careful person would use under similar circumstances."*

### DEFENDANTS' PROPOSED DAMAGES INSTRUCTION

I will now instruct you on how to award damages.  The fact that I am giving you instructions on the subject of damages should not be construed by you as indicating that I believe you should find for Plaintiff.  That is entirely up to you.  As a judge, I am required to instruct all juries on damages in all cases whether or not there is merit to a plaintiff's claims.

Compensatory damages are designed to restore the Plaintiff to the same position she was in prior to the injury; that is, to compensate for the damage suffered as a direct result of the Defendants' conduct.  You may not presume that Plaintiff has been damaged.  The burden is on

---

[86] Hennessy v. Penril DataComm Networks, 69 F.3d 1344, 1351-52 (7th Cir. 1995); Edwards v. Jewish Hosp., 855 F.2d 1345, 1352 (8th Cir. 1988); Hicks v. Brown Group Inc., 902 F.2d 630, 653 (8th Cir. 1990); Goodwin v. Circuit Court, 729 F.2d 541, 542-43 (8th Cir.), *cert denied*, 469 U.S. 828, 105 S.Ct. 112 (1984); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 270, 101 S.Ct. 2748, 2761 (1981)
[87] Chauca v. Abraham, 30 N.Y.3d 325, 329, 89 N.E.3d 475, 477 (2017).

Plaintiff to prove each item of his damages by a preponderance of the credible evidence. The damages you award must be based on the evidence presented at trial, not on speculation or guesswork.  The Plaintiff has an obligation to show sufficient facts and circumstances to permit you to make a reasonable estimate of each item of damages.  If Plaintiff fails to do that, then Plaintiff cannot recover for that item of damages.

The Plaintiff has a duty under the law to "mitigate" his damages—to take advantage of any reasonable opportunity that may have existed under the circumstances to reduce or minimize the loss or damage caused by the Defendants' actions or omissions.  The Defendants have the burden of proving that the Plaintiff failed to mitigate.  If the Defendants persuade you, by a preponderance of the evidence, that the Plaintiff has failed to take advantage of an opportunity that was reasonably available to him, then you must reduce the amount of the plaintiff's damages by the amount that could have been reasonably obtained if he had taken advantage of such an opportunity.

In determining the amount of damages, you must exercise good judgment and common sense.  The purpose of a damage award is to make a Plaintiff whole, that is, to compensate for the injuries, if any, that resulted from the Defendants' violation of his legal rights.  The damages that you award should be fair and reasonable, neither inadequate nor excessive.

**SOURCE:**   29 U.S.C. § 2617(a)(1)(A); O'Malley, Grenig & Lee, Federal Jury Practice and Instructions, §§ 171:90, 171:91, 171:92 (5th ed. 2000).

**Joint Instruction No. 29:  Nominal Damages[88]**

If you return a verdict for plaintiff, but she has failed to prove actual injury and therefore is not entitled to compensatory damages, then you must award nominal damages of $1.00.

---

[88] Plaintiff does not believe this instruction should be submitted to the jury.

A person whose federal rights were violated is entitled to a recognition of that violation, even if she suffered no actual injury. Nominal damages are designed to acknowledge the deprivation of a federal right, even where no actual injury occurred.

**SOURCE:**     Federal Jury Practice & Instructions § 172:73 (6th ed.)

**Instruction No. 30:  Attorneys' Fees**

Federal law provides for an award of attorneys' fees to a plaintiff if she prevails in a civil rights action.[89] The award of attorneys' fees is a matter to be determined by the Court. Accordingly, if you award any damages to plaintiff, including nominal damages, you should not take into consideration the fees that she may have to pay her attorney.

## V.     PROPOSED GENERAL DELIBERATION INSTRUCTIONS

I will now provide you with general instructions concerning how you should go about arriving at your verdict.  Your verdict is essentially your decision regarding the facts in this case, and more specifically, whether or not they demonstrate by a preponderance of the evidence that defendant has broken the law.

**Joint Instruction No. 30:  Right to See Exhibits and Hear Testimony;  Communications with Court**

You are about to go into the jury room and begin your deliberations.  If during those deliberations you want to see any of the exhibits, you may request that they be brought into the  jury room.  If you want any of the testimony read back to you, you may also request that.  Please remember that it is not always easy to locate what you might want, so be as specific as you  possibly can in requesting exhibits or portions of the testimony.

---

[89] 42 U.S.C. § 1988(b).

Your requests for exhibits or testimony -- in fact any communication with the Court -- should be made to me in writing, signed by your foreperson, and given to one of the marshals.    In any event, do not tell me or anyone else how the jury stands on any issue until after a unanimous verdict is reached.

**SOURCE:**  4 Modern Fed. Jury Instr.-Civil 78.01, 78-1.

### Joint Instruction No. 31:  Duty to Deliberate/Unanimous Verdict

The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.

It is your duty, as jurors to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

Remember at all times that you are not partisans.  You are judges – judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

**SOURCE:**       O'Malley, Grenig & Lee, <u>Federal Jury Practice and Instructions</u>, §106.01, 106:16 (5th ed. 2000).

### Joint Instruction No. 32:  Election of Foreperson/Special Verdict Form

Upon retiring to the jury room, you will select one of you to act as your foreperson.  The foreperson will preside over your deliberations and will be your spokesperson here in court. Verdict forms have been prepared for your convenience.

*[Read forms of verdict]*.

You will take these forms to the jury room and, when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in, date and sign the form that sets forth the verdict upon which you unanimously agree.  You will then return with your verdict to the courtroom.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 106:04 (6th ed.).

**Joint Instruction No. 33:     Verdict Forms -- Jury's Responsibility**

Nothing said in these instructions and nothing in any verdict form prepared for your convenience is meant to suggest or convey in any way or manner any suggestion or hint as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 106:07 (6th ed.).

**Joint Instruction No. 34:     Return of Verdict**

After you have reached a verdict, your foreperson will fill in the form that has been given to you, sign and date it and advise the marshal outside your door that you are ready to return to the courtroom.

I will stress that each of you should be in agreement with the verdict which is announced in Court.  Once your verdict is announced by your foreperson in open Court and officially recorded, it cannot ordinarily be revoked.

**SOURCE:** 4 Modern Fed. Jury Instr.-Civil 78.01, 78-6.

**Joint Instruction No. 35:  Juror's Electronic Communications**

During your deliberations, I remind you that you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device

or media, such as cell phones, iPhones, Blackberries, the Internet, e-mail, text messaging, Twitter, any blog or website, including Facebook, Google+, My Space, LinkedIn, or YouTube, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict. You may not use any similar technology or social media, even if I have not specifically mentioned it here.

In other words, you cannot talk to anyone on the phone, correspond with anyone, or electronically communicate with anyone about this case. You can only discuss the case in the jury room with your fellow jurors during deliberations. I expect you will inform me immediately if you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the Internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties in the case. This would unfairly and adversely impact the judicial process.

**SOURCE:** 3 Fed. Jury Prac. & Instr. § 103:04 (6th ed.).

**Joint Instruction No. 36:   Juror Oath**

In determining the facts, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice and without fear, solely upon the evidence in the case and the applicable law.  I know that you will do this and reach a just and true verdict.

**SOURCE:**  Adapted from Instruction 71-4, <u>Modern Federal Jury Instructions—Civil</u> (LexisNexis 2009 ed.).