UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
EDWARD PITRE,

                                      Plaintiff,

-against-

THE CITY OF NEW YORK,
JAN BORODO, individually, and
JOSEPH M. MASTROPIETRO, individually,

                                     Defendants.
------------------------------------------------------------------X

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION *IN LIMINE***

Civ No: 18-CV-5950 (DC)

       Plaintiff Edward Pitre ("Plaintiff" and/or "Pitre") respectfully submits this Memorandum of Law in opposition to Defendant's motions *in limine*.

       As a preliminary matter, Defendants' 'kitchen sink' motion *in limine* seeking a ruling excluding eleven different points, including whole claims and broad sources of evidence should not be taken seriously as it is clearly not tailored to the specifics of this case, and appears to have been in, large-part, copied and pasted from some other motion *in limine* from another case (or multiple other cases.) For example, on p. 15 of their motion, Defendants seek to limit testimony from "Garrity or Jackson." There are no witnesses or anyone else connected to this case with those names. Further to this point, indicating that this motion is recycled and not tailored to this case, Defendants refer to Mr. Pitre (a male) using the female pronoun ("her") on p. 26. Additionally, Defendants repeatedly seek to improperly dismiss whole claims and broad sources of evidence via their motions *in limine*, which is well beyond the recognized scope of motions *in limine*.

# ARGUMENT

POINT I
**PLAINTIFF HAS AGREED TO AMEND THE CAPTION TO REMOVE THE FDNY AS A DEFENDANT SO THIS POINT IS MOOT**

Plaintiff does not object to the Defendants' assertion that the "FDNY" is not a suable entity, and has therefore agreed to stipulate to amend the caption of this case to remove that entity.

POINT II
**PLAINTIFF'S FMLA CLAIMS ARE NOT BARRED BY THE STATUTE OF LIMITATIONS BECAUSE DEFENDANTS' VIOLATIONS WERE WILLFUL**

As a preliminary matter, it is well settled that a motion *in limine* is an improper procedural mechanism to dispose of entire claims, as discussed further below. As such, Point II of Defendants' motion *in limine* should be denied on that basis alone, because it seeks to dispose of Plaintiff's FMLA claims in their entirety.

The FMLA, 29 USC § 2617(c)(2) reads in pertinent part:

Willful Violation: In the case of such action brought for a willful violation of section 2615 of this title, such action may be brought within 3 years of the date of the last event constituting the alleged violation for which such action is brought.

The deposition transcripts of the individual Defendants in this case, Joseph Mastropietro, Jan Borodo, and late former Defendant John Fiorentino, have numerous references to their known obligations under the FMLA, and repeatedly refer to extensive EEO and Diversity and Inclusion trainings they have undertaken as executive officers in the Fire Department. Based on their own admissions, it cannot be disputed that these Defendants were and are well aware of an employer's obligations, and an employee's rights under the FMLA. There are facts in the record of this case that those Defendants willfully and *intentionally* violated Plaintiff's rights to medical leave under the FMLA by routinely denying medical leave without explanation and sending an email to

Plaintiff's supervisor that Plaintiff "is not to leave his Borough for any reason during work hours" and marking Plaintiff AWOL, docking him pay because he had to leave a training session early for medical treatment. Plaintiff will be able to show intentionality, not just willfulness or reckless disregard. Accordingly, the statute of limitations is extended from 2 to 3 years, and 2x liquidated damages are available to Mr. Pitre for the damages he suffered due to those intentional (and at least willful) violations.

Furthermore, it is well settled that motions *in limine* are an improper procedural vehicle to effectuate the dismissal of entire claims. Defendants had multiple opportunities to properly seek dismissal of Mr. Pitre's FMLA claims as untimely, however they failed to timely file a motion to dismiss these claims. After contemplating filing at least a partial motion to dismiss, and after several extensions of their time to file said motion which extended the deadline over a year from 11/19/2018 to 12/30/2019[1] they filed an Answer to the Amended Complaint rather than moving to dismiss any claims (see Dkt. ## 16-25, 38, 40, 44, 47).

More recently, Defendants failed to timely file a motion for summary judgement, and Judge Marrero even afforded them an opportunity to make their case for summary judgement via letter motion after the deadline to file a motion for summary judgement, which he ultimately denied.

After numerous motions to stay and/or extend discovery deadlines, as well as the deadline to move for summary judgement, in granting Defendants' Third Motion to extend discovery as well as their deadline to move for summary judgement, Judge Marrero noted that "No further extensions will be considered." (Dkt. #61) Despite Judge Marrero's admonition that he would not

---

[1] During this period of time Plaintiff amended his Complaint to remove some claims in a good-faith attempt to obviate Defendants' purported grounds upon which they sought to file a partial motion to dismiss, to no avail as even after Plaintiff filed his Amended Complaint, Defendants persisted in their efforts to file a Rule 12 motion, then ended up simply answering the Amended Complaint on 12/30/19.

grant any further extensions, Defendants sought *yet another* extension for their time to file a motion for summary judgement, which the Court denied (see Dkt. #63).

POINTS III and IV
**PLAINTIFF'S RETALIATION CLAIMS BASED ON THE 2011 LAWSUIT SHOULD NOT BE DISMISSED and EVIDENCE REGARDING PLAINTIFF'S 2011 LAWSUIT SHOULD NOT BE PRECLUDED**

Defendants failed to timely move to dismiss this claim under Rule 12 and failed to timely move for summary judgment on this point under Rule 56. "In effect, this is a motion to dismiss the claims. *In limine* motions are generally not the appropriate vehicle for effecting dismissal." *See* Weiss v. La Suisse, Societe D'Assurances Sur La Vie, 293 F. Supp. 2d 397, 403 (S.D.N.Y. 2003) citing TVT Records, et al. v. Island Def Jam Music Group, et al.*,* 250 F.Supp.2d 341, 344–345 (S.D.N.Y.2003).

Additionally, motions *in limine* are an improper vehicle to dismiss whole sources of evidence, such as Mr. Pitre's previous lawsuit against the City. "The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." United States v. Prevezon Holdings, Ltd., 319 F.R.D. 459, 462 (S.D.N.Y. 2017) (citing Palmieri v. Defaria, 88 F.3d 136, 141 (2d Cir. 1996)). Motions *in limine* are meant for "disputes over the admissibility of discrete items of evidence," **not "whole topics and sources of prospective evidence."** Lugo v. City of New York, No. 14CV7185, 2018 WL 11466167, at *1 (S.D.N.Y. July 13, 2018) (emphasis added) citing MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP, 232 F. Supp. 3d 558, 566 (S.D.N.Y. 2017). "Further, an *in limine* motion is "not the appropriate vehicle for effecting dismissal of entire claims." New Am. Mktg. FSI LLC v. MGA Entm't, Inc., 187 F. Supp. 3d 476, 481 (S.D.N.Y. 2016).

4

Here, Mr. Pitre's previous lawsuit against the City was one of the first links in the chain of events leading to this trial and is the reason he was targeted and unlawfully denied rights he was entitled to under the FMLA, NYSHRL and NYCHRL, and it also provided the motive for Defendants' to abuse and disregard Plaintiff's statutory rights on the basis of his race and disability.

Mr. Pitre's participation in and prosecution and settlement of the lawsuit, [2]is the motive for their violations of Mr. Pitre's rights that have given rise to this lawsuit. This information is undoubtedly very relevant to this case, as it demonstrated why the Defendants' targeted Plaintiff for the violations of his rights for which he is now suing. "Exclusion of relevant information is "an extraordinary remedy that must be used sparingly." George v. Celotex Corp., 914 F.2d 26, 31 (2d Cir.1990)

The allegations of retaliation in this lawsuit begin in early December 2014, before the ink was dry on the 2011 lawsuit's settlement agreement, which was signed near the end of October 2014, and the retaliation started before or around the 30 days that elapsed to renew the action in the event the settlement fell through, on 12/5/14.

Mr. Pitre's participation in that 2011 Title VII lawsuit was the protected activity he engaged in under the NYSHRL and NYCHRL. The Second Circuit Court of Appeals has unequivocally stated that "[a plaintiff's] participation in a co-worker's Title VII lawsuit amounted to protected activity." Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 180 (2d Cir. 2005).  Here, Plaintiff participated in his co-workers' 2011 Title VII lawsuit as a co-plaintiff until at least 11/5/14 when the Court ordered that case closed, but the settlement was not consummated and finalized until close to 90-days after that, per the settlement agreement, which stated that "such [settlement]

---

[2] This 2001 lawsuit was settled and finalized between October 2014 (when the settlement agreement was signed) and February 2015 (the case was closed on 11/5/14, see EDNY docket for case no.: 11-cv-6174), when the settlement was consummated by the settlement payments being issued and delivered to the Plaintiff and his co-plaintiffs in that lawsuit.

payments shall occur within ninety (90) days following the full execution of this Agreement of Settlement and Dismissal." (a true and correct copy of that settlement agreement is attached as Exhibit 1 to the Decl. of Seamus P. Barrett in Opposition to Defendants' Motion *In Limine*.)

The retaliation in this case began occurring in December 2014 (see Am. Cmpl., Dkt #32 ¶¶ 22-26), around the 30-day period that the 2011 lawsuit could have been reopened after the Court closed it on 11/5/14.  Even under the misleadingly short temporal proximity window cited by Defendants in their motion *in limine* with respect to this point, Plaintiff will be able to show temporal proximity existed between *his participation* in the 2011 lawsuit and the beginning of the targeted acts of retaliation at issue in this case.  However, Plaintiff is also not relying on temporal proximity alone to establish the retaliatory motive present in this case.  Plaintiff has numerous witnesses, including his former co-plaintiffs in the 2011 lawsuit who will testify to their first-hand knowledge that Defendants had it out for Plaintiff because of his participation in the 2011 lawsuit.

Accordingly, Point IV of Defendants' Motion *In Limine* should be denied.

POINT V

**PLAINTIFF SHOULD NOT BE PRECLUDED FROM REFERRING TO DEFENSE COUNSEL AS "CITY ATTORNEYS" AND SHOULD NOT BE PRECLUDED FROM OFFERING EVIDENCE OF INDEMNIFICATION IN THE EVENT DEFENDANTS RAISE INABILITY TO PAY TO LIMIT PUNITIVE DAMAGES**

The City, according to statute, indemnifies the individually named Defendants in this case against any settlement or judgement against them in this case.  There is no question as to whether Defendants Borodo and Mastropietro are indemnified by the City in this case.

> N.Y. Pub. Off. Law § 18(4)(a) reads as follows:
> The public entity shall indemnify and save harmless its employees in the amount of any judgment obtained against such employees in a state or federal court, or in the amount of any settlement of a claim, provided that the act or omission from which such judgment or claim arose occurred while

6

> the employee was acting within the scope of his public employment or duties; provided further that in the case of a settlement the duty to indemnify and save harmless shall be conditioned upon the approval of the amount of settlement by the governing body of the public entity.

This statute is not evidence, it is a rule, *a law*, and it will not be raised unless the jury finds liability. In that case, then this statute should properly be the subject of jury instructions on the issue of damages, and ability of a liable party to pay, particularly if an individual defendant's ability to pay is raised as a means to limit an award of damages. Statutes are not evidence, and accordingly should not be the subject of a motion *in limine*. Defendants appear to take the position that a duly enacted statute can be unduly prejudicial if presented as evidence, however, this Court and the Second Circuit have addressed this issue, and the Court in <u>Scherer v. City of New York (SDNY, Sept. 2007)</u> gives an apt and succinct summary as to why and when this statutory rule of indemnification is appropriate as evidence or for a jury instruction on punitive damages:

> *In determining the propriety of instructing a jury on indemnification with respect to a punitive damages award, it is instructive to examine whether a jury may consider evidence of any such indemnification.*
>
> *The purpose of punitive damages is "to punish the defendant and to deter him and others from similar conduct in the future." <u>Vasbinder</u>, 976 F.2d at 121. "[B]ecause neither compensation nor enrichment is a valid purpose of punitive damages, an award should not be so large as to constitute 'a windfall to the individual litigant.' " Id. (quoting <u>Aldrich v. Thomson McKinnon Sec., Inc.</u>, 756 F.2d 243, 249 (2d Cir.1985)). As the Ninth Circuit has observed:*
>
> *Although it is true that one important function of punitive damage awards in the § 1983 context is to create a strong incentive for police officers and other officials to respect the Constitution and federal laws, the "sting" of any given award should reflect the jury's determination of what level of damages would deter the individual defendant, and others in his or her position, from future violations. See Restatement (Second) of Torts § 908(1) (1979) ("Punitive damages are damages ... awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future.").*

7

> ***\*9*** *Larez v. Holcomb, 16 F.3d 1513, 1521 (9th Cir.1994).*
>
> *It follows that in the context of a Section 1983 claim, juries and courts may assess punitive damages against an offending official based on his or her personal financial resources. See Provost v. City of Newburgh, 262 F.3d 146, 163 (2d Cir.2001) (quoting City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 269 (1981)). "Accordingly, an award should not be so high as to result in the financial ruin of the defendant." Vasbinder, 976 F.2d at 121 (citing Smith v. Lightening Bolt Prods., Inc., 861 F.2d 363, 373 (2d Cir.1988)). Pursuant to Second Circuit precedent, " 'it is the defendant's burden to show that his financial circumstances warrant a limitation of the award.' " Mathie v. Fries, 121 F.3d 808, 816 (2d Cir.1997) (quoting Smith v. Lightning Bolt Prods, Inc., 861 F.2d 363, 373 (2d Cir.1988)).*
>
> *The Second Circuit has further held that the presentation of trial evidence regarding a defendant's financial resources renders relevant the presentation of similar evidence on the existence of an indemnity agreement:*
>
> *[W]e rule that a fact-finder can properly consider the existence of such an agreement as obviating the need to determine whether a defendant's limited financial resources justifies some reduction in the amount that would otherwise be awarded. It would be entirely inappropriate for a defendant to raise the issue of his limited financial resources if there existed an indemnity agreement placing the burden of paying the award on someone else's shoulders. See Kemezy v. Peters, 79 F.3d 33, 37 (7th Cir.1996) ("The defendant should not be allowed to plead poverty if his employer or an insurance company is going to pick up the tab.").*
>
> *Mathie, 121 F.3d at 816. [footnote citing Mathie omitted]*
>
> *Based on the Second Circuit's holding in Mathie and similar conclusions by other courts, the Honorable Laura Taylor Swain concluded in Dallas v. Goldberg, No. 95 Civ. 9076(LTS)(RL), 2002 WL 1013291 (S.D.N.Y. May 20, 2002), that evidence of a state's statutory indemnification obligation would also be admissible to counter any evidence of the defendant's ability to pay any punitive damage award. See id. at \*4-5 (citing Lawson v. Trowbridge, 153 F.3d 368, 380 (7th Cir.1998); Kemezy v. Peters, 79 F.3d*

Scherer v. City of New York, No. 03 CIV. 8445 (RWS), 2007 WL 2710100, at *8–9 (S.D.N.Y. Sept. 7, 2007) (emphasis added)

8

Based on the foregoing authority, Plaintiff has no intention to raise the issue or evidence of statutory indemnification of the individually named defendants, unless they raise the issue of inability to pay in an effort to limit the imposition of punitive damages. Accordingly, the Court should decline to make a ruling on this issue at this time, reserving its right to rule on this issue if and when the matter is ripe. This portion of the motion should be denied as moot and/or unripe, because Plaintiff hereby agrees not to proffer any evidence (in the absence of any attempt to limit punitive damages due to the individual Defendants' inability to pay) at trial regarding the individual defendants' statutory indemnification by the City, and will not seek any similar jury instruction (in the presence of the jury) unless and until the Defendants raise the issue of inability to pay in order to limit an award of punitive damages.

With respect to Defendants' point that this Court should not allow any reference to defense counsel "as being employed by the City of New York" this unnecessary and misleading limitation would cause more confusion than it seeks to eliminate. Several Courts in this Circuit have flatly refused such motions *in limine* when the City of New York is named in the caption of the case and is a named defendant in trial documents that will be submitted to the jury. See Adams v. City of New York, 993 F. Supp. 2d 306, 329 (E.D.N.Y. 2014) ("Defendants' argument is flatly rejected. Where, as here, the City of New York is a Defendant in the case, the City of New York will be listed on all documents and will be identified to the jury. The Court also rejects Defendants' request that the Court not refer to the City attorneys as "City attorneys."") See also Joseph v. Deluna, No. 15-CV-5602 (KMW), 2018 WL 5095668, at *3 (S.D.N.Y. Oct. 19, 2018) ("Because the City is a defendant in this action, the motion to preclude Plaintiff from referring to Defendants' attorneys as "City Attorneys" is DENIED")

Accordingly, this recycled and oft-rejected motion that Defendant City not be referred to as "the City" and precluding reference to its attorneys as "attorneys for the City", should be denied.

POINT VI

**PLAINTIFF DOES NOT INTEND TO RAISE ISSUES RELATED TO HIS 9-11-01 SERVICE AND HAS NOT PROFFERED ANY EVIDENCE RELATED TO ANY ASSOCIATED MEDICAL TREATMENT, SO DEFENDANTS' MOTION TO PRECLUDE TESTIMONY REGARDING PLAINTIFF'S SEPTEMBER 11, 2001 SERVICE AND TREATMENT, IS MOOT, UNNECESSARY AND SHOULD BE DENIED**

Plaintiff does not seek to introduce any evidence of his 9/11/2001 service for the FDNY. Indeed, Plaintiff, the Defendants and almost all the witnesses to this case were 9-11 first-responders. That fact cannot be disputed and will be obvious when the parties and witnesses give testimony about how long they have worked for the FDNY, but this case is not about 9/11/2001. Plaintiff has not proffered any evidence for treatment of any 9-11 related medical treatment, and has never expressed any intention to introduce any evidence of Plaintiff's 9-11-2001 service for the FDNY or any 9-11 related medical treatment. This particular point represents a cumbersome and unnecessary restriction, unrelated to any evidence Plaintiff intends to introduce in this trial. Therefore, this portion of Defendants' Motion *In Limine* should be dismissed as moot.

POINT VII

**PLAINTIFF DISCLOSED WITNESSES HE INTENDS TO CALL AT TRIAL IN HIS SUPPLEMENTAL RULE 26 DISCLOSURES ON 5/11/21 WELL BEFORE THE CLOSE OF DISCOVERY, AND PLAINTIFF'S PROPOSED WITNESSES ARE NOT IMPROPER UNDER ANY RULES**

Defendants erroneously assert that Plaintiff only disclosed witnesses Ismael Ortiz, Madeline Cuevas[3], Dudley Placide, Ernie Morganstern, Brian Shelby, Chris Gerresy, Greg Wilton, Ray Krawick, Mario Deangelis, and Tom Schwabacher at the end of last month "during the drafting of the instant Joint Pretrial Order." That assertion is demonstrably false, as Plaintiff disclosed these witnesses on May 11, 2021 *nearly two and a half years* ago, by supplementing his initial 26(a) disclosures to include these witnesses, *and* in the body of that email, Plaintiff's counsel describes the specific reason each witness was granted light duty (see Exhibit '2' attached to the Declaration of Seamus P. Barrett in Opposition to Defendants' Motions *In Limine*, for a true and correct copy of this 5/11/21 email sent to Nicholas Green, current counsel of record for Defendants, as well as a copy of the attachment to that email, Plaintiff's Supplemental 26(a) Disclosures, also dated 5/11/21 ). This disclosure in May 2021 was made well before the close of fact discovery.

In opposition to this point, Plaintiff submits email correspondence with the attachment, showing that this point of Defendants' Motion *In Limine*, should be disregarded as irresponsibly baseless as it is predicated on recklessly false factual submissions to this Court.

This Point of Defendants' Motion *In Limine* should be denied as meritless.

---

[3] Madeline Cuevas was disclosed in a 2nd Supplemental 26(a) disclosure sent to Defense Counsel as an email attachment dated 6/15/22, nearly a year and a half ago. Defendants cannot claim that this disclosure is a "surprise", since they have been aware of Plaintiff's intention to call Ms. Cuevas for approximately 14 months.

POINT VIII

**THIS MOTION SHOULD BE DENIED AS MOOT BECAUSE PLAINTIFF DOES NOT INTEND TO CALL DR. CHARLES DEMARCO AS AN EXPERT**

Plaintiff has never disclosed Dr. Charles DeMarco as an expert witness, instead we have disclosed him as a fact witness, with relevant information and medical opinions specific to his treatment of Mr. Pitre.

In Plaintiff's 26(a) disclosures, we proffer the following basis for calling Dr. DeMarco:

"[Dr. Demarco] Provided treatment to Plaintiff for injuries caused by Defendants, has knowledge of the extent and severity of the injuries suffered by Plaintiff."

Once again, Defendants have sought an inapplicable and unnecessary motion *in limine* seeking to preclude evidence that Plaintiff had no intention to proffer, and for which there exists no proper basis in the record of this case to exclude. Since Plaintiff has never expressed any intention to introduce evidence from Dr. Demarco that Defendants now seek to exclude, this portion of their motion *in limine* should be denied as moot.

POINT IX

**CHARACTER EVIDENCE PERTAINING TO THE DEFENDANTS SHOULD NOT BE PRECLUDED AS IT IS HIGHY RELEVANT TO DEFENDANTS' PATTERN AND PRACTICE OF WILLFULLY VIOLATING PROTECTED RIGHTS AND ENGAGING IN UNLAWFUL RETALIATION WITH IMPUNITY**

Point IX of Defendants' motion *in limine* appears to be yet another recycled or copy/pasted motion *in limine* from a different case, as it is entirely devoid of any specifics relating to this case whatsoever. Instead, it seeks to exclude an impermissibly broad and vague range of potential evidence with no specificity.

This Court has noted, with respect to similarly vague motions *in limine*: "In the case at bar, the motions *in limine* made by the … defendants … are vague in that they do not specify the

writings or potential testimony that the movants believe should be excluded from the trial of this action. As a result, the Court is unable to determine, with any degree of certainty, whether the writings and testimony sought to be excluded from the trial would be inadmissible under any of the provisions of the Federal Rules of Evidence. Therefore, the respective motions *in limine* are denied." Viada v. Osaka Health Spa, Inc., No. 04 CIV. 2744 VMKNF, 2005 WL 3435111, at *1 (S.D.N.Y. Dec. 12, 2005)

As Defendants correctly note, evidence of prior bad acts is only admissible to show: "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident". However, since Defendants' motion fails to identify any specific piece of testimony or evidence from this case that they seek to exclude, we can't possibly tell if any of those exceptions apply. This portion of Defendants' motion *in limine* should be denied as too vague and too overbroad.

POINT X

**PLAINTIFF DOES NOT OPPOSE DEFENDANTS' MOTION THAT HE BE PRECLUDED FROM REQUESTING A SPECIFIC DOLLAR AMOUNT FROM THE JURY IN CONNECTION ONLY TO EMOTIONAL DISTRESS DAMAGES, AND HAS NO INTENTION OF REQUESTING A SPECIFIC DOLLAR AMOUNT FOR EMOTIONAL DISTRESS DAMAGES**

Plaintiff agrees that he shall refrain from seeking any specific dollar amount with respect to only *emotional distress damages*. However, with respect to economic damages, those are concrete, easy to prove and are based entirely on non-speculative numbers that come from Plaintiff's past income, his pension data, as well as the income and pension figures of several comparator witnesses who also worked as communications electricians for FDNY during the same or comparable time frames as Plaintiff.

This point of Defendants' motion *in limine* with respect to only emotional distress damages is unopposed, however, as discussed below, Defendants' motion *in limine* with respect to Plaintiff's economic damages and liquidated damages (under the FMLA) should *not* be precluded.

POINT XI

**EVIDENCE RELATING TO PLAINTIFF'S ECONOMIC DAMAGES SHOULD NOT BE EXCLUDED BECAUSE DEFENDANTS HAVE HAD ACCESS TO PLAINTIFF'S TAX RETURNS AND PENSION DATA THROUGH N.Y.C.E.R.S. SINCE JULY 2020, AND THOSE DOCUMENTS HAVE ALSO BEEN FURNISHED TO DEFENDANTS SINCE THEN AND EVIDENCE OF FRONT PAY DAMAGES IS PERMISSIBLE**

Defendants have been in possession of a signed release for Plaintiff's tax and pension records from the New York City Employees' Retirement System (NYCERS) since July 2020, before discovery in this lawsuit began[4]. NYCERS has copies of every tax return filed by Plaintiff from his forced retirement in 2015 to the present, and accordingly Defendants had access to all of those records since July 2020.

In an email exchange from over a year ago, in May 2022, Defense counsel, Mr. Green once again requested the NYCERS release, and the undersigned forwarded him the email with the release that had been executed and sent over 2 years prior in July 2020. Plaintiff's counsel asked Mr. Green if he would like a newly signed NYCERS release, to which Mr. Green responded: "I think that release will work, thank you!" (this email exchange is submitted as Exhibit 3 to the Decl. of Seamus P. Barrett in Opp. To Defendants' Motion *In Limine*).

---

[4] This original NYCERS release was originally provided to Defense counsel, Mr. Green, in compliance with the SDNY Pilot Mediation Program Protocols for Counseled Employment Discrimination Cases. Since then, Defendants never provided any notice that they had never actually sought or were denied Plaintiff's tax and pension documents NYCERS, which have presumably been accessible to Defendants for the past three years, but they appear to have never even requested them from NYCERS.

14

At the end of last month, and when Defendants filed their Motion *In Limine*, and it became apparent that Defendants never actually sought Plaintiff's tax and pension documents with the signed release from NYCERS, Plaintiff began to expeditiously gather and turn over all of the tax and pension information and documents, a newly executed NYCERS release as well as a detailed calculation of Plaintiff's back pay and front pay damages. As of the date of this filing, in addition to the new NYCERS release, Plaintiff has now turned over all of Mr. Pitre's tax returns since 2015, all available pension payment statements, 1099s as well as all available documents relating to economic damages in his possession.

Defendants never gave any indication that they failed to obtain the tax and pension data available to them for three for years from NYCERS, and never sought or threatened to seek any Court orders to obtain this information. Now that Plaintiff has become aware of Defendants' apparent failure to access these documents pursuant to the NYCERS release they have had in their possession for over three years, Plaintiff has promptly cured any alleged failure to disclose, by providing all of the economic documents in his possession. Therefore, Defendants have suffered no prejudice since they are now in possession of the documents they could have obtained, but failed to do so from NYCERS, and any purported Rule 26 violation is now cured, and should be deemed harmless, as Defendants are now in possession of those Documents well in advance of trial.

**Plaintiff's Claim For Front Pay Is Regularly Awarded, and Is Not Unduly Speculative**

Courts in this and Circuit and District regularly award front pay, particularly in cases such as this, where Plaintiff worked in a regular unionized City role, with regular rates of raises, which were required by law to remain equal with his fellow Communications Electricians (on average

15

about 3% per year according to Plaintiff's annual salaries, and those of his comparator witnesses), and where his career was destroyed due to the unlawful acts of his supervisors such that he had no reasonable prospects of similar employment, and the plaintiff was denied his salary up to a reasonable retirement age . See e.g. Shannon v. Fireman's Fund Ins. Co., 136 F. Supp. 2d 225, 234 (S.D.N.Y. 2001) (awarding front pay upto the age of sixty-five); Buckley v. Reynolds Metals Co., 690 F.Supp. 211, 216 (S.D.N.Y.1988) (awarding front pay until plaintiff "reached the regular retirement age of sixty-five")

In Padilla v. Metro North, the Second Circuit has noted: "This Court has encouraged district judges "to fashion remedies designed to ensure that victims of age discrimination are made whole." Whittlesey v. Union Carbide Corp., 742 F.2d 724, 728 (2d Cir.1984). We have stated that, in cases where "the employer-employee relationship may have been irreparably damaged by animosity associated with the litigation," id., reinstatement may not be possible, and "a reasonable monetary award of front pay is necessary as equitable relief ... appropriate to effectuate the purposes of [the act]," id. (quotation omitted and alterations in original). A front pay award "serves a necessary role in making victims of discrimination *126 whole in cases where the factfinder can reasonably predict that the plaintiff has no reasonable prospect of obtaining comparable alternative employment." Id. at 729. Padilla v. Metro-N. Commuter R.R., 92 F.3d 117, 125–26 (2d Cir. 1996) (awarding front pay of well over 20 years until the Plaintiff was 67 years old.)

Based on the foregoing it is clear that front pay is reasonable and not unduly speculative in this case.

Dated:         September 19, 2023
               New York, NY

Respectfully submitted,

DEREK SMITH LAW GROUP, PLLC
*Attorneys for Plaintiff*


/s/Seamus Barrett_____
Seamus Barrett, Esq.
One Penn Plaza, Suite 4905
New York, NY 10119