UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

EDWARD PITRE,                                    :

               Plaintiff,                   :

           - v -                              :          **MEMORANDUM DECISION**

THE CITY OF NEW YORK, FIRE              :
DEPARTMENT OF THE CITY OF NEW                     18 Civ. 5950 (DC)
YORK, JAN BORODO, JOHN FIORENTINO,      :
JOSEPH M. MASTROPIETRO,

                              :

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**APPEARANCES:**              DEREK SMITH LAW GROUP, PLLC
                              By:    Seamus Barrett, Esq.
                              One Penn Plaza, Suite 4905
                              New York, NY 10119
                              Attorneys for Plaintiff

                              SYLVIA O. HINDS-RADIX, Esq.
                              Corporation Counsel of the City of New York
                              By:    Lauren Fae Silver, Esq.
                                     Stephen Suhovsky, Esq.
                                     Assistant Corporation Counsels
                              100 Church Street, Room 2-176
                              New York, New York 10007-2601
                              Attorney for Defendants

**CHIN, Circuit Judge:**

        In this case, plaintiff Edward Pitre alleges that defendants City of New

York (the "City"), the Fire Department of the City of New York (the "FDNY"), and

certain individual FDNY employees violated his rights under the Family and Medical

Leave Act (the "FMLA") and state and city law by discriminating against him based on

race and disability and retaliating against him for having filed a prior lawsuit that was

settled in 2014.  Discovery closed on August 5, 2021, with the Court holding that "[n]o

further extensions will be considered."  Dkt. No. 61.  Trial was initially scheduled for

July 18, 2022, Dkt. No. 62, and after several adjournments, the case was reassigned to

the undersigned on August 29, 2023, *see* Dkt. No. 89.

On October 11, 2023, the parties appeared for oral argument on

defendants' motions *in limine*.  I ruled on eight points and reserved judgment on the

issues raised in three points -- Points VII, IX, and XI.[1]

For the reasons that follow, with respect to Points VII, IX, and XI,

defendants' motion *in limine* is GRANTED in part and DENIED in part.

## DISCUSSION

### A.      Points VII and IX (Witness Testimony)

Points VII and IX are related and hence I discuss the issues together.

Pitre identified sixteen witnesses in the joint pretrial order -- Gregory

Seabrook, Joseph Adams, Richard Keen, Ismael Ortiz, Madeline Cuevas, Dudley

Placide, Nick Varone, Ernie Morganstern, Brian Shelby, Kevin King, Chris Gerresy,

---

[1]      Defendants argued in Point I that the FDNY is a nonsuable entity.  Pitre agreed to dismiss the claims against the FDNY, and I will dismiss those claims and correct the caption at the appropriate time.

Sibeko Kwami, Ray Krawick, Greg Wilton, Mario Deangelis, and Tom Schwabacher. Dkt. 112 at 7-10.

Defendants argue that Pitre should be precluded from calling at trial ten of the witnesses -- Ortiz, Cuevas, Placide, Morganstern, Shelby, Gerresy, Wilton, Krawick, Deangelis, and Schwabacher -- on the grounds they were not properly identified in discovery.  Dkt. 96 at 11-13.  Defendants further argue that the testimony of Pitre's "proposed witnesses" should be excluded pursuant to Federal Rules of Evidence 402, 403, and 404.  Dkt. 96 at 11-14.  It appears that Pitre would call these witnesses to testify as to:  (1) acts of discrimination and retaliation against Pitre; (2) acts of discrimination and retaliation against themselves; and (3) their earnings (to support Pitre's claims for economic damages).  I address the first and second areas here and I will discuss the third area in my discussion of damages below.

In his supplemental Rule 26(a) disclosure, dated May 11, 2021, Pitre listed twenty witnesses -- including the ten in question.  He provided the same description of the subject matter of their expected testimony for each of the ten witnesses:

> Witnessed or has knowledge of the on-going violations of due process
> rights, violations of Equal Protection clause, race and disability
> discrimination, hostile work environment, retaliation, and unlawful
> termination, has information pertaining to the discrimination and/or
> retaliation that has occurred.

*See* Dkt. 109-2 (including Supplemental 26(a) Disclosures).

I hold that this disclosure is adequate with respect to acts of discrimination and retaliation against Pitre, but not as to acts of discrimination and retaliation against the witnesses themselves.

Rule 26 provides that a party must provide to the other party "the name and, if known, the address and telephone number of each individual likely to have discoverable information -- along with the subjects of that information -- that the disclosing party may use to support its claims or defenses, unless the use would solely be for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). It further provides that a party who made a disclosure under Rule 26(a) "must supplement or correct its disclosure" in a "timely manner" or "as ordered by the court." Fed. R. Civ. P. 26(e)(1). Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

In deciding whether to exclude evidence, a court shall consider: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (1997) (citing *Outley v. City of N.Y.*, 837 F.2d 587, 590–91 (2d Cir. 1988)); *accord*

*Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006) (holding that district court did not abuse its discretion in refusing to allow belatedly-identified witnesses to testify).

First, to the extent the witnesses have personal knowledge of discriminatory or retaliatory acts against Pitre, they may testify to those acts (subject to any further objections). *See Belvin v. Electchester Mgmt., LLC*, 635 F. Supp. 3d 190, 202 (E.D.N.Y. 2022) ("First-hand testimony of events involving Plaintiff[] is plainly relevant, and the court will not preclude this evidence."). The above description of the witnesses' proposed testimony put defendants on notice that these witnesses had knowledge of the treatment of Pitre. Hence, Pitre met his discovery obligations to this extent.

Second, however, the above description does not explicitly provide notice to defendants that the witnesses would be testifying to acts of discrimination or retaliation against themselves. In my view, defendants were not put on reasonable notice that they should be deposing the additional ten witnesses about conduct directed at them in a lawsuit brought by Pitre only on behalf of himself. Moreover, applying the factors set forth in *Softel*, Pitre has not provided an explanation for failing to provide a more complete description of the witnesses' testimony; the probative value of the testimony, as discussed below, is low; the prejudice to defendants of trying to defend ten additional claims of discrimination and retaliation is high; and while I have adjourned the trial until January, given counsel's schedules, the upcoming holidays, the age of the case (almost six years old), and the breadth of the additional discovery that

5

would be required, permitting additional extensive discovery between now and the new trial date is not feasible.

Furthermore, even assuming the disclosure provided some notice to defendants that the ten witnesses would be testifying about acts of discrimination and retaliation against themselves, this testimony is inadmissible under Rule 403 of the Federal Rules of Evidence. In the right circumstances, evidence of discrimination against others may be relevant to proving discrimination against the plaintiff. "There is no *per se* rule that evidence of discrete acts of discrimination or retaliation towards non-parties is irrelevant or unduly prejudicial; instead, the court must determine admissibility 'in the context of the facts and arguments in a particular case.'" *Belvin*, 635 F. Supp. 3d at 203 (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008)); *see also id.* ("When such evidence is sufficiently similar to the claims raised in the case -- for example, when the conduct was engaged in by the same actor, or the actions occurred close in time or space to the plaintiff's experience -- it is relevant.") (citation omitted).

Here, the probative value of the evidence is low and is substantially outweighed by the danger of unfair prejudice, confusion, undue delay, and waste of time. Fed. R. Evid. 403. While Pitre -- a communications electrician at the FDNY -- also claims that he was discriminated against because of his race, his principal claims are based on the unique circumstances arising from his disability. He alleges that he was

6

injured while on duty (he fell off an FDNY truck) and was discriminated and retaliated against because of his resultant disability.  Specifically, he alleges that defendants failed to provide him a reasonable accommodation, denied him medical leave, and ultimately forced him to take a disability retirement.  *See* Am. Compl. ¶¶ 31-65, 85.  The probative value of acts against other employees in undoubtedly different circumstances is low, and there is a high risk of prejudice, delay, and waste of time.  If ten other employees were permitted to testify about purported acts of discrimination and retaliation against them, defendants would be required to defend against those allegations and there would be a risk of ten mini-trials.  The prejudice to defendants would be particularly acute given the insufficient notice given to them that the witnesses would be testifying about their own claims of discrimination and retaliation.

Accordingly, as to Points VII and IX, defendants' motion *in limine* is granted in part and denied in part to the extent set forth above.

**B.      Point XI (Damages Calculation)**

Pitre seeks to recover damages based on lost wages and "annuities" as well as the purported impact on his pension and other benefits.  Dkt. 109 Ex. 2.  He contends that had he not been forced to retire, he would have continued to work for ten years with commensurate raises, overtime, and benefits, and that his higher salary would have resulted in an increase in his pension.  Pitre is not calling an expert witness to testify to damages; however, he seeks to call the witnesses identified above (or some of

them) to testify as to their earnings and benefits to establish what he would have earned had he not been subjected to discrimination and retaliation, and had he not been forced to retire.  Dkt. 112 at 3-4.

Defendants argue that Pitre "should be precluded from seeking any economic damages."  Dkt. 96 at 20.  Specifically, defendants argue that Pitre is not entitled to back pay because he has not provided updated information about "where [he] was working, updated W-2s, tax returns, and updated medical releases."  *Id*. Defendants further argue that Pitre is not entitled to front pay because he "has not provided any expert testimony or other admissible evidence upon which it could be determined that he has no reasonable prospect of obtaining comparable employment in the future."  *Id*. at 22.

Defendants' objections are sustained in part, in light of three considerations.  First, Pitre did not provide adequate Rule 26 disclosures with respect to economic damages.  Second, he may not rely on the earnings of other employees to support his damages calculations.  Third, the calculations of lost pension income are complex and would require testimony from an expert witness; Pitre did not identify a damages expert, and he is not qualified to make such calculations.

## 1.   The Rule 26 Disclosures

Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure provides:

Except as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the

other parties: a computation of each category of damages claims by the
disclosing party -- who must also make available for inspection and copying as
under Rule 34 the documents or other evidentiary materials, unless privileged or
protected from disclosure, on which each computation is based, including
materials bearing on the nature and extent of injuries suffered.

Fed. R. Civ. P. 26(a)(1)(A)(iii).

Furthermore, under Rule 26(e)(1)(A), a party who has made a Rule 26(a)

disclosure or responded to an interrogatory must "supplement or correct its disclosure

or response: in a timely manner if the party learns that in some material respect the

disclosure or response is incomplete or incorrect, and if the additional or corrective

information has not otherwise been made known to the others parties during the

discovery process." Fed. R. Civ. P. 26(e)(1)(A). If a party fails to do so, he may not use

the information at trial, unless his failure to disclose was substantially justified or is

harmless. Fed. R. Civ. P. 37(c)(1).

A party must also disclose to the other parties the identity of any expert

witness at the time the court orders. Fed. R. Civ. P. 26(a)(2)(A), 26(a)(2)(D). Generally, a

plaintiff must provide an expert where damages "are not the product of a simple

mathematical calculation." *U.S. Licensing Assocs., Inc. v. Rob Nelson Co.*, No. 11 CV 4517

HB, 2012 WL 1447165, at *5 n.8 (S.D.N.Y. Apr. 26, 2012) (citation omitted).

Before discovery commenced, Pitre gave defendants a release to access his

tax and pension records from the date of his retirement up to the present, from the New

York City Employees' Retirement System ("NYCERS").  Dkt. 112 at 2.  Defendants'

interrogatories 17 and 18 requested, in relevant part, that Pitre:

> 17)    State in detail each and every financial expense or loss allegedly
> incurred by plaintiff as a result of the acts or omissions of defendants:
>
>> (a)    type of damages;
>>
>> (b)    the amount;
>>
>> (c)    the date incurred; and
>>
>> (d)    the amount of similar estimated future expenses or losses, if
>> any.
>
> 18)    Itemize in specific detail the mathematical basis for the total
> amount of damages plaintiff claims, stating how plaintiff arrived at this
> figure . . . .

*Id.* at 23-24.  Pitre objected to both requests and referred defendants to his "FRCP 26(a)

disclosures." *Id.*  On May 11, 2021, Pitre provided Rule 26(a) disclosures:  he claimed $6

million in emotional distress damages and $9 million in punitive damages.  Dkt. 109-2

at 6.  He also provided the following:

> Plaintiff is claiming the annual salary at the time of the Plaintiff's date of
> termination times 10 years, plus bonuses, commissions, health insurance,
> pension, profit sharing and all other expected raises and benefits, reduced
> by earned income.

*Id.*  He did not provide, however, as required by Rule 26(a), a computation of each

category of economic damages.

Only recently (in the context of settlement discussions), Pitre produced a

one-and-a-half page chart, which set forth a purported calculation of damages based on

four categories labeled as follows: (A) "loss of wages from last day of work through

retirement"; (B) "loss of annuities from last day of work through retirement"; (C) "loss of higher bracket of pension"; and (D) "loss of higher bracket of continued pension after retirement." Doc. Stamped P000113, P000114. The document provides specific dollar amounts and calculations and calculates Pitre's "total loss of income" as $11,249,423.24. *Id*. at P000114. Apparently, Pitre intends to seek these damages at trial.

These calculations, however, were not provided in discovery, and discovery closed long ago. Moreover, as discussed below, the computations are complex, and they are not clearly explained in the document. Defendants would be prejudiced if Pitre were to be allowed to present the calculations to the jury. While the trial has now been adjourned until January, as discussed above, defendants would be prejudiced if I were to permit now the extensive discovery that would be required to explore these calculations.

Pitre did provide a release for NYCERS information before discovery began, and defendants have obtained his salary information and at least some tax returns. Accordingly, Pitre may rely on this evidence to seek damages for lost wages.

2.    **The Witnesses**

Pitre will not be permitted to elicit from the ten witnesses discussed above information about their earnings. Pitre's disclosures provided no notice that these individuals would be called for this purpose. Moreover, the probative value of what they earned is slight; even assuming there were general salary levels for different

11

positions, the actual income earned by each employee undoubtedly varied depending on length of service, quality of performance, amount of overtime, etc.

**3.    Pitre's Qualifications**

Assuming the damages document recently produced by Pitre sets forth his damages calculations, I am not persuaded that Pitre is qualified to testify as to lost income beyond a simple calculation of lost wages.

The damages document raises a host of questions.  The first category of damages theorizes that Pitre would be earning annual income of $268,783.28 in 2032, apparently when he would have retired at age 62 had he not been forced to take a disability retirement earlier.  What does he base that projection on?  Is he making assumptions about pay increases?  Are those assumptions reasonable?  Does the loss of wages calculations include lost overtime?  Would he have been able to earn that much overtime with his disability?  Are the claimed future losses discounted to present value? If so, how was the calculation made?  What discount rate was used?  Are there tax consequences and, if so, were they factored in?  Is Pitre qualified to make these calculations?

The fourth category claims more than $7 million in damages due to lost pension income, based on an expectation that Pitre would live until he was 95 years old. What assumptions has Pitre made?  Are they reasonable?  Or are they speculative?  Is Pitre qualified to make this calculation and explain it to the jury?  Has a deduction been

made for the disability payments or other income Pitre will receive?  Are these damages discounted to present value?

What are the differences between the third category ("loss of higher bracket of pension") and the fourth category ("loss of higher bracket of continued pension after retirement")?

There are other questions as well.  I am not persuaded that Pitre is qualified to testify to these damages calculations, and he does not have an expert witness to make and explain the future loss calculations.  Accordingly, Pitre will not be permitted to seek damages beyond a simple mathematical calculation of lost wages.  *See US Bank Nat'l Ass'n v. PHL Variable Ins*. Co., No. 12 CIV. 6811 CM JCF, 2013 WL 5495542, at *1 (S.D.N.Y. Oct. 3, 2013) (finding that an expert was necessary to determine damages where they "consist[ed] of the increased cost of insurance that the plaintiff has paid and continues to pay, the diminution in value of the policies as a result of the increase, and attorneys' fees and costs"); *Phila. Indemnification Ins. Co. v. Barker*, No. 1:19-CV-1456, 2021 WL 1840592, at *5 (N.D.N.Y. May 7, 2021) (concluding that there was no need for an expert where "[p]resenting evidence of the actual cost to rebuild [a building] . . . would require no scientific, technical, or other specialized knowledge").

Accordingly, the only economic damages that Pitre may seek is lost wages based on a simple mathematical calculation.  He will not be permitted to present to the jury his claims for lost pension and other benefits going into the future.

13

## CONCLUSION

Accordingly, as to Points VII, IX, and XI, defendants' motion in *limine* is

GRANTED in part and DENIED in part.

SO ORDERED.

Dated:      New York, New York
            November 6, 2023

                                        DENNY CHIN
                                        United States Circuit Judge
                                        Sitting By Designation