NABsPITc

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   EDWARD PITRE,

4                    Plaintiff,

5            v.                              18 Civ. 5950 (DC)

6   THE CITY OF NEW YORK, et al.,

7                    Defendants.

8   ------------------------------x
                                            New York, N.Y.
9                                           October 11, 2023
                                            10:00 a.m.
10
    Before:
11
                          HON. DENNY CHIN,
12
                                            U.S. Circuit Judge
13
                              APPEARANCES
14
    DEREK SMITH LAW GROUP, PLLC
15       Attorneys for Plaintiff
    BY:  SEAMUS BARRETT
16
    NEW YORK CITY LAW DEPARTMENT
17       Attorneys for Defendants
    BY:  LAUREN F. SILVER
18       STEPHEN M. SUHOVSKY

19

20

21

22

23

24

25

NABsPITc

```
 1            (Case called)

 2            THE COURT:  Please state your appearances for the

 3    record.

 4            MR. BARRETT:  Good morning, your Honor.

 5            Seamus Barrett for the plaintiff, Edward Pitre.

 6            MS. SILVER:  Lauren Silver for the New York City Law

 7    Department on behalf of the defendants.

 8            MR. SUHOVSKY:  Stephen Suhovsky, New York City Law

 9    Department.

10            THE COURT:  Good morning.

11            First of all, let's be on time.  We were only a few

12    minutes late, but when we are on trial, you know, we have to

13    set the right tone for the jurors.  So you have to be on time.

14            Next, we're here to argue the motions in limine.

15            Let me ask, in my order of a few weeks ago, I had

16    directed the parties to submit a list of undisputed facts and

17    exhibits.

18            Is that going to happen today?

19            MR. BARRETT:  Plaintiff's side is prepared to move

20    forward and submit those.

21            THE COURT:  It's supposed to be undisputed.  It

22    doesn't help me if one side is ready to move forward.

23            What's the status?

24            MS. SILVER:  Your Honor, I sent Mr. Barrett, on

25    Wednesday last week, a chart to discuss the exhibits and
```

NABsPITc

| | |
|---|---|
| 1 | Mr. Barrett did not get back to me.  I e-mailed him again on |
| 2 | Thursday.  We also sent a stipulation, and Mr. Barrett did not |
| 3 | agree to the stipulation. |
| 4 | THE COURT:  The stipulation amending the caption or |
| 5 | something else? |
| 6 | MS. SILVER:  Yes. |
| 7 | THE COURT:  Is that true? |
| 8 | MR. BARRETT:  Yes, your Honor.  We could not agree. |
| 9 | They were demanding that we stipulate to withdraw the claims |
| 10 | against Defendant Fiorentino with prejudice, and in order to |
| 11 | protect plaintiff's rights to potentially pursue his estate, we |
| 12 | can't agree to that. |
| 13 | I asked why they are demanding that it has to be with |
| 14 | prejudice and I explained our position, and I didn't get a |
| 15 | response in terms of why is that a sticking point. |
| 16 | THE COURT:  Is there an executor for the estate or |
| 17 | administrator for the estate? |
| 18 | MS. SILVER:  Your Honor, plaintiff had an opportunity |
| 19 | to -- this is what we discussed before we started trial, that |
| 20 | plaintiff, under the statute, once we serve a notice of death, |
| 21 | that he has to substitute the estate within 90 days. |
| 22 | We agreed to move forward with the trial based on |
| 23 | Mr. Barrett's representation to both us and the court that he |
| 24 | was not seeking to represent to substitute a party, so we're |
| 25 | not going to put ourselves in a position where we're going to |

NABsPITc

1    have to do this trial again.

2            THE COURT:  I asked a question.  It would be useful if

3    you would answer.

4            My question is:  Do you know if there is an

5    administrator for the estate, or an executor, if there is a

6    will, or if there isn't a proper, we may not have a proper

7    party in the case, which I think is where you're going.

8            But do we know if any person has been appointed to

9    administer the estate?

10            MS. SILVER:  We don't know.

11            THE COURT:  Do you know?

12            MR. BARRETT:  The only way we would know would be

13    through defense counsel, so we don't know.

14            THE COURT:  I think there are probably other ways to

15    find out.  I don't have the rule in front of me.  I know that a

16    party makes a suggestion of death, I mean, another option is to

17    delay the case for months and months and months until someone

18    is appointed, if you want the estate in the case.

19            If you want to proceed, I don't see how we can proceed

20    with him in the case if there isn't a representative.  It seems

21    to me we could do this:  The claim will be dismissed, the

22    claims will be dismissed against him, and then you can brief

23    whether it should be with or without prejudice.  I mean,

24    otherwise it seems to me we can't go forward unless someone has

25    a better suggestion.

NABsPITc

1              MR. BARRETT:  My suggestion is we agree to dismiss

2     without prejudice.

3              THE COURT:  I know that's their suggestion.  Their

4     suggestion is disagree with prejudice, I assume.

5              Is there an agreement to that?

6              MS. SILVER:  There is not an agreement to that.

7              THE COURT:  OK.  We don't agree on that.  Now what?

8              If you want to keep the estate in the case, we can't

9     go forward unless there is a proper representative.  I think

10    the option is to toll the case until that's done.

11             What I'm saying is, we dismiss.  I could probably

12    decide this now.

13             Let's do this.  The claims against Mr. Fiorentino will

14    be dismissed.  Each side can submit a three-page letter within

15    two days on whether it should be with or without prejudice, and

16    I will rule.  I mean, otherwise we can't go forward.

17             Is that acceptable?

18             MR. BARRETT:  That works from plaintiff's side.

19             (Counsel confer).

20             MS. SILVER:  Your Honor, our only concern is that if

21    Defendant Fiorentino is dismissed without prejudice, then we're

22    in a situation where we would have to potentially litigate the

23    case twice.  And that's why when --

24             THE COURT:  I understand.  But the only option, it

25    seems to me, if there isn't a representative, we can't go

NABsPITc

1    forward then.

2            MS. SILVER:  Well, that was our suggestion to

3    Mr. Barrett, until he made a decision as to whether he wanted

4    to you substitute a party.  We consented to adjournment and

5    Mr. Barrett --

6            THE COURT:  When did you make your suggestion of

7    death?

8            Months ago?

9            MS. SILVER:  I think it was about two months ago.

10           MR. BARRETT:  I remember when it was.  It was, I

11   think, August 17.  Right around there.

12           THE COURT:  OK.  So --

13           MR. BARRETT:  Excuse me.

14           THE COURT:  Almost two months ago.

15           MR. BARRETT:  11th, actually.

16           THE COURT:  About two months ago.

17           Well, I don't want to put off the trial.  It seems to

18   me to do this.  I'm not going to do anything with respect --

19   for now, we're going to proceed.  Submit three page letters --

20   today is Wednesday -- no later than five p.m. on Friday on

21   whether it should be with or without prejudice.  Each side can

22   argue it.  I'll see what the letters say, and then we'll see

23   how to proceed.

24           But you need to do some research.  I don't know if

25   there is a way to find out whether there is a representative of

NABsPITc

1    the estate.  If so, perhaps they would participate then and

2    they could participate.  I don't know.

3          But it seems to me that that's what we ought to do.

4    Submit your letters by, just simultaneously, five o'clock on

5    Friday.  No replies.  If I want any replies, I'll ask.

6          What about the stipulated facts and exhibit list?

7          You didn't respond?

8          Mr. Barrett.

9          MR. BARRETT:  So I got the chart of the exhibit list

10   and I didn't have an opportunity to call Ms. Silver, but it's

11   not clear exactly -- I couldn't make heads or tails.

12         THE COURT:  Why couldn't you call her?

13         You had a deadline today, and if you're not clear on

14   something, that's why you call her.

15         MR. BARRETT:  We had discussed via e-mail having a

16   conversation about that today to clarify it and get it filed

17   today.

18         Now, as far as stipulated facts, there hasn't been any

19   movement on that.  I have --

20         THE COURT:  Did you send over a set of proposed

21   stipulated facts?

22         MR. BARRETT:  Those were in the original joint

23   pretrial order that I sent to her.  There was a list of

24   noncontroversial facts that I submitted, and I couldn't get any

25   agreement on those.

NABsPITc

1            THE COURT:  Ms. Silver.

2            MS. SILVER:  Your Honor, I sent over a chart to

3    Mr. Barrett on Wednesday.  I said I was happy to discuss on

4    Thursday.

5            THE COURT:  Did the chart include facts, or was it

6    just exhibits?

7            MS. SILVER:  It just included exhibits.  Mr. Barrett

8    has not sent me any e-mails about stipulated facts.

9            THE COURT:  What about what he's saying now, there

10   were some proposed facts in the original pretrial order or the

11   original proposed pretrial order.

12           MS. SILVER:  We did not agree to those, and I've --

13           THE COURT:  Did you review them recently?

14           I mean, dates of employment, how can that be disputed?

15           MS. SILVER:  I understand, your Honor.

16           But I attempted to discuss this with Mr. Barrett

17   before today.  I said I was available last week.

18           THE COURT:  In your e-mail, did you specifically ask

19   about stipulated facts, or was it just with the exhibits?

20           MS. SILVER:  It was just about the exhibits.

21           THE COURT:  I mean, this is ridiculous, frankly.  Both

22   sides.

23           How are we going to go to trial if I don't know

24   whether you're just refusing to cooperate or what?

25           You had a deadline of today, and it hasn't been done.

NABsPITc

```
 1    I'm not seeing, really, a good faith effort to get it done.

 2    I don't know how we expect to try the case under these

 3    circumstances.  I cannot fathom that there are zero undisputed

 4    facts.  I cannot accept that there are zero undisputed

 5    exhibits.

 6           One more try.  By Monday, I want a list of basic

 7    stipulated facts, I want a list of basic exhibits as to which

 8    there is no objection, and if it is not done, documented,

 9    e-mail each other, I'm ordering you to get together.  You're

10    not to do it in person.  I'm ordering you to have a

11    conversation by telephone, by zoom, or in person, and to get

12    this done.  If it's not done, then I'm going to impose

13    sanctions.  I'm giving you fair warning now.

14           I mean, there has to be some agreement on some basic

15    things.  But what worries me is it's going to be a difficult

16    trial if this is the kind of cooperation I'm going to get.

17           There is an agreement that the fire department, the

18    claims against the fire department are dismissed with

19    prejudice?

20           MR. BARRETT:  Yes.

21           We agree that the Fire Department of New York is not a

22    suable entity, and we've made clear that we're willing to --

23           THE COURT:  Without prejudice to your other claims,

24    but they are not a proper defendant.  I will remove them from

25    the caption.  I don't need a stipulation.
```

NABsPITc

1          MR. BARRETT:  OK.

2          THE COURT:  I'm just going to rule.

3          I'll issue an order that on consent, the claims

4     against the department, the Fire Department of the City of

5     New York, are dismissed with prejudice, without prejudice to

6     the remaining claims against the other defendants, and the

7     caption will be so amended.

8          The City of New York remains a defendant in the case,

9     is that correct?

10          MR. BARRETT:  Yes, your Honor.

11          MS. SILVER:  Yes.

12          THE COURT:  OK.  Let me do the motions in limine.  I'm

13     just going to go through them one by one.  If you want to add

14     anything, let me know.  Some of them I'm just going to rule.

15     On some of them I may have questions.

16          Point one.  The FDNY is a non-suable entity.  We've

17     already dealt with that.  That motion is granted on consent.

18          Point two.  Plaintiff's FMLA claims are barred by the

19     statute of limitations.  First of all, that's a motion to

20     dismiss.  But second of all, the motion is denied without

21     prejudice to a Rule 50 motion, judgment as a matter of law,

22     upon the presentation of the evidence at the close of the

23     plaintiff's case or at the close of the trial, if there isn't

24     sufficient evidence to show that the claims are timely.

25          As I understand it, the plaintiff agrees that we're

NABsPITc

1    beyond two years, so the plaintiff has to show willfulness,

2    agreed?

3              MR. BARRETT:  Agreed.

4              THE COURT:  All right.  So I will charge the jury that

5    it has to find willfulness, and if willfulness isn't shown,

6    then the defendants are free to move for judgment as a matter

7    of law.

8              Anybody want to add anything to any of that?

9              MS. SILVER:  No, your Honor.  Thank you.

10             THE COURT:  All right.  Point three.  Plaintiff's

11   retaliation claims based on the 2011 lawsuit should be

12   dismissed.

13             Point four is also similar.  Evidence regarding the

14   2011 lawsuit should be precluded.  The two motions, the two

15   points are denied.  But let me be clear, I think obviously

16   there has to be some evidence that there was a 2011 lawsuit.

17   That's the basis of the retaliation claim.  But I will not

18   permit the 2011 lawsuit to be litigated.  Plaintiff can't try

19   to prove it.  The defendant can't try to disprove it.

20             There was a lawsuit.  The jury can be told that there

21   was a lawsuit in general, what it was, and that the plaintiff

22   was a party, who the parties were, and that the case was

23   settled.  That's it.  You can't litigate the merits of the 2011

24   lawsuit.

25             Any question or disagreement on that?

NABsPITc

1          Hearing none, let me move on then.

2          Point Five.  I don't see how I can preclude counsel

3     for the plaintiff's from calling the lawyers, city lawyers, if

4     they are indeed representing the city.  So, I mean, I don't see

5     it as being particularly prejudicial in the context of this

6     case where the city is indeed a named defendant.  I think to

7     say defense counsel is more accurate, because if you just say

8     city lawyers, that leaves out the individual defendants.  And

9     my preference would be that the defense lawyers be referred to

10    as defense counsel, counsel for the defendants.  If it slips

11    out that they are defendants for the City, then I'm not going

12    to be troubled by it, as long as it's not being done

13    purposefully.

14          I think a more important issue is the question of

15    suggestion that there will be indemnification.  I think if the

16    defendants make issue of their limited resources, if they argue

17    resources, then I think that does open the door to evidence of

18    indemnification.  Otherwise, the plaintiff cannot bring out

19    that there is any indemnification policy.

20          Any question, disagreement for the argument?

21          MR. BARRETT:  Plaintiff's side agrees.

22          THE COURT:  All right.  I'm not hearing anything from

23    defense.

24          Point Six.  To preclude evidence regarding the

25    plaintiff's services on 9/11.  The plaintiff does not intend to

NABsPITc

```
 1    offer any such evidence, accordingly that prong of the motion
 2    is granted as unopposed.  The plaintiff may not offer evidence
 3    of his service on 9/11 or his treatment resulting from 9/11.
 4              Any comment on that?
 5              MR. BARRETT:  Not from plaintiff.
 6              THE COURT:  Point Six.  It's a request to preclude
 7    certain witnesses, and defendant objects because they
 8    purportedly were not disclosed.  I think they were disclosed in
 9    subsequent disclosures.  I'll hear from defense counsel.
10              MR. SUHOVSKY:  Thank you, Judge.
11              I think if your Honor would allow it, we kind of think
12    that this point and point 11 go hand in hand at this point,
13    given the eve of trial disclosures pertaining to damages.
14              THE COURT:  All right.  Let's come back to point seven
15    when we get to point 11.
16              Let's see what else we have here.
17              Point eight.  Dr. Charles DeMarco as an expert.
18    Plaintiff does not intend to call him, correct?
19              MR. BARRETT:  That's correct.
20              THE COURT:  OK.  So that prong of the motion is
21    granted as unopposed.  The plaintiff will not call Dr. Charles
22    DeMarco.
23              MR. BARRETT:  Excuse me.  A fact -- I mean as an
24    expert.  He will be a fact witness as to the specific injuries
25    that plaintiff suffered as a fact witness.
```

NABsPITc

```
1              THE COURT:  Is there an objection to him testifying as

2      a fact witness?

3              MS. SILVER:  No, your Honor.

4              THE COURT:  OK.  I have this very issue in my other

5      cases that going to trial in the Eastern District.  It's a

6      thorny subject, the difference between fact testimony and

7      expert testimony, when we are talking about a treating

8      physician.  But it doesn't sound like there's any real issue

9      here.  But if there is, I've got law.  Judge Vitaliano wrote a

10     good opinion on the subject, if you need it for some reason.

11             So just to clarify, point eight, that prong of the

12     motion is granted to the extent that Charles DeMarco would be

13     called as an expert.  He may not testify as an expert.  He may

14     testify as a fact witness as a treating physician.

15             Point nine.  Character evidence pertaining to the

16     defendants including things like disciplinary histories, prior

17     complaints, employment discrimination actions filed against

18     them.  We're talking about the individual defendants,

19     obviously.

20             Is the plaintiff intending on offering any such

21     evidence?

22             MR. BARRETT:  I'm not sure exactly what that question

23     means.  What such evidence?

24             Does that mean that character evidence that they had,

25     that these particular individual defendants had a grudge
```

NABsPITc

1      against plaintiff, then yes, of course we need to be allowed.

2                  THE COURT:  Hold on one second.

3                  (Discussion off the record)

4                  In other words, if one of the individuals had a

5      disciplinary complaint filed against him, if someone else sued

6      him for discrimination, do you have any such evidence?

7                  And if so, are you intending to offer any of it?

8                  MR. BARRETT:  So with respect to the 2011 lawsuit,

9      yes.  There were several other plaintiffs in that lawsuit and

10     it was against these defendants.  So yes.

11                 THE COURT:  Well, all right.  As I've said, the basic

12     facts of the 2011 lawsuit, that it existed, what it was, who

13     the defendants were, that is admissible, as I've said.  I'm

14     talking about other things.

15                 Is there anything else?

16                 In other words, are you going to try to attack them

17     with a history of other complaints by other employees at work

18     or anything like that?

19                 MR. BARRETT:  So yes, through witness testimony

20     related to those other plaintiffs and their experiences with

21     respect to these defendants, you know, for the purposes of

22     showing motivation, pattern and practice, things other than

23     their propensity.

24                 Anything other than that?

25                 In other words, you would like to elicit from the

NABsPITc

```
 1    other plaintiffs that they were also subjected to retaliation

 2    by these individual defendants?

 3              MR. BARRETT:  Yes.

 4              THE COURT:  OK.  Let me hear from the defendants.

 5              MS. SILVER:  Yes, your Honor.

 6              This is exactly the point of our motion in limine

 7    point 11.

 8              THE COURT:  Point 11.

 9              MS. SILVER:  I'm sorry, nine.

10              THE COURT:  Point nine.

11              MS. SILVER:  It's in direct conflict with rules of

12    evidence, 404(b) and it would only confuse the jury.  It's

13    creating a trial within a trial.  These are not plaintiffs in

14    this case.

15              THE COURT:  OK.  Let me just clarify one thing.

16    Anything other than that, Mr. Barrett?

17              Was there any effort to show that they were

18    disciplined for misbehavior on the job or anything along those

19    lines?

20              MR. BARRETT:  No.  Like write-ups and things of that

21    nature, no.

22              THE COURT:  Write-ups and things like that.

23              OK.  So the only issue you would like to argue to the

24    jury that the defendants retaliated against other plaintiffs as

25    well.  And why isn't that a propensity?
```

NABsPITc

1           MR. BARRETT:  For here --

2           THE COURT:  Just because they did it before, they did

3     it here?

4           MR. BARRETT:  Right.

5           THE COURT:  Just because they did it to others, they

6     did it here?

7           MR. BARRETT:  In this case it shows, number one, it

8     shows motive, opportunity, intent, plan, knowledge, absence of

9     mistake.  Those are specifically exceptions.

10          THE COURT:  Did you provide any authority for the

11    argument that retaliation against --

12          Let me ask my question.

13          MR. BARRETT:  OK.  Sorry.

14          THE COURT:  Did you provide any authority in your

15    opposition for the proposition that retaliatory actions against

16    other employees are admissible against a plaintiff?

17          MR. BARRETT:  Because the motion was so broad and

18    vague, I didn't know that is what they were referring to.  I

19    certainly, if they had pinpointed that that is what they were

20    seeking to exclude --

21          THE COURT:  Did you offer any authority --

22          MR. BARRETT:  Not in this.

23          THE COURT:  You did not answer.  You did not offer any

24    authority and you've got an excuse on why you didn't.

25          That's what you're telling me?

NABsPITc

1          MR. BARRETT:  So there is authority that I offered in

2     my opposition that that points out those particular exclusions.

3          THE COURT:  Did you provide any authority for the

4     proposition that evidence of retaliation against employees A, B

5     and C can be admissible against plaintiff employee D?

6          MR. BARRETT:  No.

7          THE COURT:  Do you know of any such authority exists?

8          MR. BARRETT:  Yes.  And I would be more than happy to

9     provide that to the court.

10          THE COURT:  OK.  I think, in fairness, the point nine

11     was a little broad.  If anyone wants to give me any additional

12     authority on the specific proposition of the admissibility of

13     evidence of retaliation by a defendant against employees A, B

14     and C is admissible against plaintiff employee D, I would be

15     happy to read it.

16          Let's have that by close of business Friday as well.

17     It can be in the same letter, and you can have a little more

18     than three pages if you want to include that, both sides.

19          All right.  I'll reserve decision on it.  The point,

20     that prong of the motion is granted, except that I will reserve

21     decision on this one specific aspect.  Plaintiff will not and

22     may not offer evidence of write-ups, disciplinary infractions,

23     that kind of thing that you sometimes see that would purport to

24     impugn someone's character.

25          In a hostile environment case, acts of discrimination

NABsPITc

 1    against other employees would be admissible.  I'm not sure

 2    that, in this context, acts against other employees would be,

 3    but we'll take a look at it.

 4              Point ten.  Plaintiff should be precluded from

 5    requesting a specific dollar amount from the jury.  The motion

 6    is granted with respect to emotional distress damages.  I think

 7    we had a discussion about that.

 8              There is no objection to that, correct?

 9              MR. BARRETT:  That's correct.

10              THE COURT:  OK.  Subject to further discussion about

11    proving economic losses, the motion is denied as to economic

12    losses.  You can make a calculation and suggest a number to the

13    jury, and that's what economic losses are.  That's the nature

14    of economic losses.

15              Any further discussion of point ten?

16              All right.  And now moving to point 11 which relates

17    to evidence supporting plaintiff's economic damages.  I'm not

18    sure why seven is tied in, but I'll hear from Mr. Suhovsky.

19              Are you going to do this, or Ms. Silver?

20              MR. SUHOVSKY:  OK.  Thank you, Judge.

21              Just to preface our argument, let the court know why

22    we believe point seven is tied to this point is that in light

23    of our initial pretrial conference and our settlement

24    conference in September --

25              THE COURT:  Don't tell me what was discussed during

NABsPITc

1    our settlement conference, but go ahead otherwise.

2              MR. SUHOVSKY:  Right.

3              Our understanding of how plaintiff intends on proving

4    his damages, in addition to what we've argued in our motion in

5    limine, is eliciting testimony from the witnesses listed in the

6    motion about their salary and their rates and things along

7    those lines.

8              So we believe that the late disclosure of the evidence

9    in the exhibits or actually just the evidence of how plaintiff

10   intends on proving these damages, namely the spreadsheet that

11   was turned over on the eve of trial, goes hand in hand with how

12   the plaintiff intends on supporting those calculations, which

13   were disclosed on the eve of trial.

14             THE COURT:  I think you're being general ridiculous in

15   calling it a spreadsheet.  We're talking about that chart?

16             MR. SUHOVSKY:  The one-page chart.

17             THE COURT:  All right.

18             MR. SUHOVSKY:  So --

19             THE COURT:  Let me ask you this.

20             MR. SUHOVSKY:  Sure.

21             THE COURT:  Was there any evidence produced about what

22   these other employees were paid or what their rates were?

23             MR. SUHOVSKY:  No, your Honor.

24             So that's one of the main contentions that we have

25   with respect to this motion in limine.

NABsPITc

1              THE COURT:  Let me hear from Mr. Barrett.

2              What do you plan on doing in this respect?

3              MR. BARRETT:  Yes.  So, first off, with respect to

4     these other witnesses, the 26(a) was produced years ago during

5     discovery with these specific witnesses listed here in their

6     motion so that --

7              THE COURT:  I assume did you produce any employment

8     tax records for these other individuals, or was it just you

9     just identified their names?

10             MR. BARRETT:  We identified them because they are

11    public employees, their salaries are all a matter of public

12    record, and we were going to ask the court to take judicial

13    notice of that because this is public information by statute.

14             THE COURT:  I don't think I can take judicial notice

15    of what a particular employee was making.

16             MR. BARRETT:  OK.

17             THE COURT:  I mean, that --

18             MR. BARRETT:  Well, it's a government, it's a

19    government publication.  It's a public record.

20             THE COURT:  Are you saying that a member of the public

21    can find out what my law clerk will be paid because they are

22    government employees?

23             I don't think that makes any sense.

24             MR. BARRETT:  There is a website.  If they are

25    employees of the City of New York, you can go on a website

NABsPITc

1   *seethroughny* and it comes from information provided by the

2   State of New York.

3           THE COURT:  By specific name or by category of --

4           MR. BARRETT:  By name.  By these individual's name.

5   That is public information.

6           And, of course, because they work for the defendant

7   city, the city obviously knows how much they made regardless of

8   whether that information is public.  And then in terms of your

9   question about us furnishing them with this information, they

10  had a NYSER release that they could have sent to NYSER and

11  gotten all of his tax returns, everything that he submits to

12  NYSER including his pension data.  It appears that they never

13  actually submitted that release.

14          THE COURT:  I thought it was submitted because some

15  documents were produced.

16          MR. BARRETT:  Right.  Within the last month or two,

17  they finally got around to, you know --

18          THE COURT:  What is the theory of damages?

19          What is your theory of economic damages?

20          MR. BARRETT:  That Mr. Pitre has worked for the City

21  of New York since he was 18 years old.  His career was cut

22  short due to these violations that are the subject matter of

23  this case by decades, over two decades.  And we have comparator

24  witnesses who are the same title, who under the union contract

25  are required to get paid the same amount.  And so we can have

NABsPITc

```
 1    them -- so we can have them bring in evidence of their salary,

 2    if the court is not willing to take judicial notice of these

 3    public records that show their salaries.

 4                THE COURT:  I'm not.  I don't think I can take

 5    judicial notice of that.  I mean, I think it's not something

 6    that a court can or should take judicial notice of.  If you

 7    need someone to explain what it is --

 8                MR. BARRETT:  So we intend to have these witnesses who

 9    have been disclosed for years and years, well before discovery

10    closed.

11                THE COURT:  And the argument is that if Mr. Pitre

12    hadn't been retaliated against or discriminated against, he

13    would be making what they are making?

14                MR. BARRETT:  Yes.  Yes, that's right.

15                THE COURT:  And are some of them making $206,000 a

16    year?

17                MR. BARRETT:  In that range, yes.

18                THE COURT:  All right.  Let me hear from the defense.

19                MR. SUHOVSKY:  Your Honor, just to address a point by

20    Mr. Barrett, referencing the supplemental disclosures back on

21    June 15, 2022, these witnesses' names were disclosed.  But the

22    defendants' point, which is why we were arguing that these go

23    hand in hand with the one-page chart that was disclosed, was

24    the reason that was given for these witnesses to be called at

25    trial has nothing to do and no reference with respect to
```

NABsPITc

|     |                                                                    |
|-----|--------------------------------------------------------------------|
| 1   | damages.  These are copy-and-pasted paragraphs about witnesses     |
| 2   | who have knowledge of the ongoing violation of due process         |
| 3   | rights.  Nothing about salary.                                     |
| 4   |         So the defendant' position --                              |
| 5   |         THE COURT:  Do we have a copy?                             |
| 6   |         MR. SUHOVSKY:  We can hand up a copy to the court.  We     |
| 7   | have an extra copy.                                                 |
| 8   |         THE COURT:  Yes.                                           |
| 9   |         In other words, the names were disclosed, the subject     |
| 10  | matter of their testimony, and no mention was made of damages?    |
| 11  |         MR. SUHOVSKY:  Correct, your Honor.                        |
| 12  |         So defendants' position, which we think is supported,     |
| 13  | one, by the plain reading of Rule 26 and Rule 37, as well as      |
| 14  | the case law in this circuit, including a case ruled upon by      |
| 15  | your Honor, this is not a substantially justified late            |
| 16  | disclosure.  Again, both of these on the eve of trial.            |
| 17  |         Nor is it harmless.  The reason it's not harmless and     |
| 18  | the plaintiff's argument fails, we are the city.  We have these   |
| 19  | names.  We should be able to pull that information.               |
| 20  |         THE COURT:  Is that information publicly available?        |
| 21  |         Is that correct --                                         |
| 22  |         MR. SUHOVSKY:  Well --                                     |
| 23  |         THE COURT:  -- what every employee city in the makes,     |
| 24  | that's public information?                                         |
| 25  |         MR. SUHOVSKY:  Whether or not it's accurate is --         |

NABsPITc

there's plenty of websites that are out there.  I can't say for

sure that this information, if there is a salary that's out

there.  Who knows whether or not --

THE COURT:  I would assume someone could look up and

find a salary for a particular title.  But, for example, these

guys get overtime.

I mean, does that disclosure indicate what they earned

as over time?

MR. SUHOVSKY:  We don't believe so.  It would just be

a salary.

Your Honor, that goes further to our point.  Had this

been disclosed, as it should have been per the rules, then the

defendants would be in a position where we can depose these

individuals on that specific information on that salary

information.  We could make specific requests or pull that data

to pull that salary information, and then we can use that in

conjunction, had the plaintiff actually disclosed his one-page

chart per damages calculations, and we could have hired an

expert to analyze it.

This is all stuff we could not do for something that

is a major, major aspect of this case.  Should we lose, that's

the difference between a small monetary amount that is awarded

or something that is in the multi millions of dollars.  It's

not just one instance of a late disclosure and it's not just

one instance of opposing counsel throwing a curve ball.  These

NABsPITc

```
 1    witnesses were not disclosed with this specific information.
 2              THE COURT:  I'm going to reserve on this aspect of it.
 3    What about other aspects of this?
 4              That's not the only issue.
 5              Yes.
 6              MR. BARRETT:  OK.  So, first off, I just need to
 7    address some of the arguments defense counsel just made.
 8              Number one, they didn't ask for this information.
 9    They didn't follow up with this information.  It's disingenuous
10    for them to even make the assertion that there they would have
11    deposed these people.
12              THE COURT:  When I start talking, stop, mid word, mid
13    sentence.
14              Was there an interrogatory requesting a damages
15    calculation?
16              MR. SUHOVSKY:  Yes, your Honor.
17              THE COURT:  Do you have an extra copy of that?
18              MR. SUHOVSKY:  Yes.  I'll pass it up to the court.
19              THE COURT:  Thank you.
20              MR. SUHOVSKY:  I just have to find the specific
21    number.
22              THE COURT:  You know what I actually need is, I need,
23    which I now have, I need the response.  These things aren't
24    filed.
25              MR. SUHOVSKY:  It's the response as well.
```

NABsPITc

1          THE COURT:  The response is attached.  I see it's

2     plaintiff's responses.  Got it.

3          MR. SUHOVSKY:  Your Honor, we have a related argument

4     with respect to this which your Honor brought up last time.

5          THE COURT:  Do you know what interrogatory it is?

6          MR. SUHOVSKY:  I'm looking for that now, your Honor.

7          THE COURT:  OK.  I'm looking at 17, state in detail

8     each and every financial expense or loss allegedly incurred by

9     plaintiff as a result of the acts or omissions of defendants.

10    And then 18 is itemized in specific detail the mathematical

11    basis.  By the way, the plaintiff objected to that prior one.

12         The second one asks for, that is 18, an itemization in

13    specific detail of the mathematical basis for the damages

14    claims stating how plaintiff arrived at this figure, whether

15    plaintiff used a mathematical per diem or per week or per month

16    figure, etc.  And there is an objection and plaintiff refers to

17    the 26(a) disclosures.

18         Was there provided in the 26(a) disclosures the

19    mathematical basis for the damages claimed?

20         MR. SUHOVSKY:  No, your Honor.

21         THE COURT:  Mr. Barrett?

22         MR. BARRETT:  So the damages that are expressed in the

23    26(a) are $6 million in emotional distress damages, and then it

24    also goes on to state plaintiff --

25         THE COURT:  Do I have a copy of that?

NABsPITc

1          MR. BARRETT:  I believe they gave you one.

2          MR. SUHOVSKY:  It's the supplemental that you have.

3          THE COURT:  The first thing you gave me.  What page

4     are you looking at?

5          MR. BARRETT:  So if you go to --

6          THE COURT:  I see it.  I see it.

7          MR. BARRETT:  OK.  Yes.  It explains that he's

8     claiming annual salary from his termination date for ten years

9     plus bonuses, commissions, etc.

10         THE COURT:  Well --

11         MR. BARRETT:  Then we have punitive damages.

12         THE COURT:  All right.  I'll reserve decision on this.

13    I'll take a closer look at it.

14         Was there anything else in terms of disclosures that I

15    haven't seen yet?

16         I did get that packet of tax documents, but is there

17    anything else in terms of disclosures?

18         MR. BARRETT:  So in light of what we discussed last

19    time related to that chart, we revised it to include what he

20    has been getting paid in his pension.

21         THE COURT:  You mean you revised the chart recently?

22         My question is, was there anything else in terms of

23    the disclosures during discovery other than what I now have?

24         MR. BARRETT:  There was the NYSER release where they

25    could have gotten all of --

NABsPITc

1          THE COURT:  That was the release.

2          Anything else in terms of explaining your calculations

3    or what an amount is?  I don't even see an amount here other

4    than six million in emotional distress damages and nine million

5    in punitive damages.

6          MR. BARRETT:  Right.

7          THE COURT:  Was there --

8          MR. BARRETT:  There's deposition testimony from

9    plaintiff to that as well.

10          THE COURT:  That explains, did he give specific

11    amounts and calculations?

12          MR. BARRETT:  I don't believe he was asked that.

13          THE COURT:  The answer is no, he didn't?

14          But then your explanation is he wasn't asked.  Send me

15    the relevant pages, please, so I can take a look at that.

16          MR. SUHOVSKY:  Judge, just one additional point to

17    address a matter that you brought up previously with respect to

18    the defendants that were making a motion to compel.

19          THE COURT:  Yes.

20          MS. SILVER:  With respect to this information, we

21    think that there is Second Circuit case law that we can cite to

22    as well as New Hampshire District Court case that stands for

23    the proposition that a motion to compel was never made.  It

24    doesn't mean that the party that failed to make that motion to

25    compel --

NABsPITc

```
 1              THE COURT:  It depends on the circumstances,
 2     obviously.  If the plaintiff didn't provide proper responses, I
 3     don't know that it was the defendants' burden necessarily to
 4     compel.
 5              I'm going to look at all of this.  If you want to cite
 6     anything else on this point, include it in your letters that
 7     you're sending to me on Friday.
 8              But anybody want to add anything else on the issue of
 9     a lack of an expert, Mr. Pitre's ability to testify to these
10     calculations?
11              MR. BARRETT:  I would like to, your Honor.
12              THE COURT:  Go ahead.
13              MR. BARRETT:  So there is significant case law to that
14     both within the Second Circuit and outside.  I was able to
15     identify case law to this point --
16              THE COURT:  Yes.
17              MR. BARRETT:  -- related --
18              THE COURT:  Put it in the letter.  Put it in the
19     letter so that I have it.
20              MR. BARRETT:  OK.
21              THE COURT:  I did have some other questions.
22              I haven't gotten a proposed verdict sheet.  I don't
23     know what claims the parties --
24              Is there one?  I didn't see one.
25              MS. SILVER:  Yes, your Honor.  We filed one.
```

NABsPITc

1              THE COURT:  Oh, I have it.  Never mind.  I have it.

2              Is there one for the plaintiff, too, or just the

3    defendants?

4              I see.  It's a joint proposed verdict form, but

5    nothing is agreed upon.  OK.  I see essentially six claims that

6    both sides suggest we put to the jury.

7              Is there a difference in terms of the standard, the

8    legal standard for retaliation under the FMLA New York State

9    law and New York City law?

10             Is there a difference in the elements?

11             Does the charge need to be different or can they be

12   treated as the same?

13             MR. SUHOVSKY:  Your Honor, we would -- actually, we

14   would have to look into that to just make sure.  There might be

15   a nuance difference.

16             THE COURT:  Yes.  I mean, I'm trying to figure out

17   whether I need to charge the jury on separately as to each

18   legal theory and how long it's going to take.

19             I saw in the complaint that there is an aiding and

20   abetting claim.  Is that still being pursued?

21             MR. BARRETT:  Yes, your Honor.

22             THE COURT:  Under New York State and New York City

23   law?

24             MR. BARRETT:  Yes, your Honor.

25             THE COURT:  How is that different from a

NABsPITc

```
 1    discrimination claim?
 2              MR. BARRETT:  There is a separate statute that gives
 3    rise to that claim.
 4              THE COURT:  All right.  You've provided the elements
 5    for the different claims?
 6              MR. BARRETT:  Yes.
 7              THE COURT:  All right.  I mean, I believe city law is
 8    different from state and federal law.  There's a much lighter
 9    burden under city law.
10              Have the parties addressed all that in the request to
11    charge?
12              MR. BARRETT:  So there is shockingly disagreement
13    between the parties on that.
14              THE COURT:  Yes.  I don't believe in this joint
15    request to charge.  It never seems to really work.
16              But in terms of you provided me your views and they
17    provided me with their views, is that correct?
18              MS. SILVER:  Yes, your Honor.
19              THE COURT:  We'll have to deal with it when the time
20    comes.
21              Do we want to discuss anything else on the record?
22              I'll get some more rulings out to you next week.
23    We're going to start trial on November 1.  Year going to sit
24    9:30 to 4:30 each day.  One midmorning break, lunch break, one
25    midafternoon break.
```

NABsPITc

1          We'll do eight jurors.  I don't think we need more

2     than eight jurors.

3          It will be in this courtroom, I believe.

4          I don't do sidebars.  If you have an objection, one

5     word or a rule number, that's it.  No speaking objections.  If

6     you really want to talk about something, give chambers a call.

7     I'll see you before the jury gets here or you can raise it

8     during the break or at lunch or at the end of the day.  But

9     when the jury is here, I want them to be hearing the taking of

10    testimony.

11         Have a witness available at all times.  If you run out

12    of witnesses, you rest.

13         How much time do you want for openings?

14         MR. BARRETT:  Can I have 45 minutes?

15         THE COURT:  Too long.

16         MR. BARRETT:  Half an hour?

17         THE COURT:  You know, how much time?

18         MR. SUHOVSKY:  15 minutes would be fine.

19         THE COURT:  15 minutes per side for openings.

20         I think I'll make some rulings next week.  Most likely

21    I'll want to see you maybe the afternoon before.

22         Ms. Silver, are you going to be away?

23         You'll be back?

24         MS. SILVER:  Yes, your Honor.  I get back on the day

25    before, so the 31st.

NABsPITc

```
 1            THE COURT:  You get back on the 31st?

 2            MS. SILVER:  I get back the evening of the 30th, so

 3   I'll be back in the office on the 31st.

 4            THE COURT:  I might need to see you for last minute

 5   things.  If so, we'll have you come down maybe that afternoon.

 6   If there are any open items, depending on what happens.  What I

 7   like to do is, if there are exhibits that are not in dispute,

 8   they should all be offered en masse at the beginning of the

 9   trial so that we can save time.  Even if it's only a few,

10   that's why I've been pushing you on this.  I'm flabbergasted

11   that there don't seem to be any.  There must be some basic

12   documents that can come in.

13            MR. BARRETT:  If I may, just to that point, there are.

14   I mean, I reviewed it.

15            THE COURT:  I don't know what the issue is between

16   counsel, but we're at the stage now where, you know, I want to

17   have a smooth, efficient trial.  And I think as I told you, I

18   have Wednesday, Thursday, Friday.  I might want to take a late

19   luncheon the 2nd.  One of my colleagues is being inducted, but

20   then I have Monday.

21            I think we went through this.  I can do Monday and

22   Tuesday the 6th and the 7th.  I'm going out of town on the 8th,

23   and if we don't finish by the 7th, we'll have to finish on the

24   following week, the week of the 13th.  So my plan is to move

25   things along.
```

NABsPITc

1          All right.  Any other questions or points to make?

2          MR. BARRETT:  Not from plaintiff's side.

3          MR. SUHOVSKY:  Your Honor, just to clarify the letter

4    for Friday.  It's with respect to the issue regarding the

5    deceased witness.

6          THE COURT:  Yes.

7          MR. SUHOVSKY:  What were the other?

8          THE COURT:  The deceased witness, any other cases,

9    authority on the evidence of retaliation against others coming

10   in against as for retaliation against the plaintiff.

11         Was there anything else in terms of the disclosures

12   that we talked about?

13         Was there anything else?

14         LAW CLERK:  Additional info as to points seven and 11,

15   point seven and 11 which were to be addressed.

16         THE COURT:  Point seven and 11, if you want to add

17   anything on seven and 11.

18         All right.  I want to see counsel off the record for a

19   bit.

20         (Adjourned)

21

22

23

24

25