UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
EDWARD PITRE,                                                    Civ No: 18-CV-5950-(DC)
                              Plaintiff,


             -against-


THE CITY OF NEW YORK,
FIRE DEPARTMENT OF THE CITY
OF NEW YORK, JAN BORODO, individually,
JOHN FIORENTINO individually, and
JOSEPH M. MASTROPIETRO, individually,

                              Defendants.
-----------------------------------------------------------------------X


**PLAINTIFF EDWARD PITRE'S MEMORANDUM IN SUPPORT OF HIS MOTION
FOR RECONSIDERATION OF THIS COURT'S ORDER DISMISSING THE CASE**


<u>Preliminary Statement</u>

Plaintiff Edward Pitre, respectfully urges the Court's reconsideration of its order dismissing Plaintiff's lawsuit during trial and before Plaintiff rested his case-in-chief, and requests that the Court issue an order granting a new trial, in the alternative if the Court declines to grant a new trial, Plaintiff requests that his non-Federal, non-FMLA claims, including those arising under the NYSHRL and NYCHRL for disability discrimination, failure to accommodate, and retaliation be dismissed *without* prejudice to his right to renew those claims in New York State Court.

Upon being presented with evidence of a personal injury lawsuit arising from the same injury that formed led up to for Plaintiff's FMLA, disability discrimination, and failure to accommodate claims in this case, the Court noted that it was "deeply troubled that Mr. Pitre did not disclose this other lawsuit…" and stating further on p. 2 of the D&O: "First, I concluded that Pitre was attempting to commit a fraud on the Court because he had previously brought -- ***and failed to disclose*** -- a state

1

court case based on the same purported accident that is the basis of this lawsuit."

Respectfully, the Court is in error, as the slip and fall is ***not*** the basis of this lawsuit. It is Defendants' discrimination and failure to accommodate subsequent to the slip and fall injury that is the basis of this lawsuit. Additionally, when the Court made its decision to dismiss this lawsuit, it did so without the knowledge that the City of New York (the very same Defendant herein) was a party to that lawsuit and that Mr. Pitre ***did in fact disclose that lawsuit*** in his deposition[1], and Defense counsel at the time, Mr. Nicholas B. Green[2], aside from some follow up questions in the deposition, did not pursue any further discovery on that lawsuit. No deficiency letter was ever served by Mr. Green after Plaintiff furnished his discovery responses and objections. No post-deposition discovery demands were ever served by Mr. Green, in fact no further discovery was sought by the Defendants at all until a trial date was set, well after the close of discovery, which had been extended numerous times at the Defendants' requests by Judge Marrero.  Defendants' written discovery requests never sought any documentation related to this personal injury lawsuit or any other lawsuit. Defendants also never raised the affirmative defense of offset in their Answer. Moreover, they never sought to amend their answer to raise the affirmative defense of an offset from the proceeds of the settlement in that lawsuit after Mr. Pitre disclosed it in his deposition. The Defendants knew very well about that lawsuit since they were implead as a party to that lawsuit, and received over $20,000 of the $65,000 settlement proceeds (as discussed below).

Plaintiff made numerous objections to Defendants' discovery requests and withheld documents and information in good faith and based on those objections.  Plaintiff's discovery

---

[1] See Attachment 1 attached hereto with the excerpts of Mr. Pitre's deposition transcript where he discloses and describes that personal injury lawsuit on the record. Defendants never bothered to seek additional discovery on that lawsuit.

[2] While still listed as counsel for Defendants in the docket of this matter, Mr. Green is no longer employed at the Law Department.

objections were never opposed, Defendants never served any deficiency letters, or even bothered to send any follow-up emails seeking further discovery and never even breached the topic or discussed seeking to compel further discovery.   How can Mr. Pitre have failed to disclose something that Defendants never actually sought disclosure on?[3]

When the Court made the decision to impose the drastic sanction of dismissal, it apparently also did so without the knowledge that *(a)* the ***City of New York was a 3rd Party Defendant in that personal injury lawsuit; (b) the Law Department of the City of New York filed an Answer in that lawsuit***[4]; ***(c) it consented to and was furnished with a copy of the settlement agreement in that lawsuit***[5]; ***(d) it was a signatory to the Stipulation of Dismissal resulting from the settlement in that lawsuit***[6]; ***and (e) The City of New York's Law Department was the claims administrator for Mr. Pitre's workers compensation insurance, which was significantly reimbursed out of the settlement proceeds from that personal injury lawsuit.***

There is minimal, if any overlap in damages from those two lawsuits, but even though the City's Law Department unquestionably knew about that personal injury lawsuit (because they represented the City in that lawsuit), Defendants failed to raise offset (or estoppel based on any contradictions or inconsistencies) in their Answer or any Amended Answer in this case[7], which is required by CPLR Section § 4545 in order to obtain an offset on damages and FRCP 8(c)(1) related to any estoppel arguments.   Any offset on damages sought by Defendants is precluded as a matter of law, because they failed to raise it as an affirmative defense in their Answer or an Amended Answer in this lawsuit, as is required by CPLR § 4545, and they should not have been allowed to raise offset

---

[3] When asked about any other lawsuits in his deposition, Mr. Pitre did disclose the other lawsuit, see Attachment 1.
[4] See Attachment 2, the City's Third Party Answer in the state case.
[5] See Attachment 3, the City's letter consenting to the settlement in the state case.
[6] See Attachment 4.  The stipulation of dismissal in the state case signed by the City.
[7] Again, this is an error attributable to Mr. Green.

as an issue in their cross examination of Mr. Pitre. Counsel for the City waited until the 4th day of trial to seek preclusion of damages based on this lawsuit, and then only introduced the Complaint, and not any other of the numerous documents in that docket showing that the City actually participated in this lawsuit, and received a significant portion of the proceeds from the settlement (approximately 1/3 of the total settlement as discussed below).

Neither the shoddy lawyering alleged against Plaintiff's counsel by the Court[8], and the alleged "lack of evidence" are valid bases to impose the extreme sanction of dismissal, particularly since Plaintiff had not rested.

Indeed, if any side could rightly be accused of intentionally misleading the Court and perpetrating a fraud, it would be defense counsel who presented the Complaint in Mr. Pitre's personal injury lawsuit, making the false appearance of fraud. The Defendants' counsel attempted to show that Plaintiff somehow fabricated another accident for his injuries for which he claimed a disability in the instant action. However, that is not the case. The personal injury accident was the exact injury forming the basis of Plaintiff's disability claim herein. Defendants were deceptive in hiding from the Court other documents from the docket of that case showing that the City of New York **was a party to that lawsuit, and they filed an Answer in that lawsuit and were a signatory to the stipulation of dismissal and they consented to and were sent a copy of the settlement agreement in that lawsuit, and received a sizeable portion (nearly 1/3[rd]) of the settlement proceeds from that lawsuit to recoup the City's payments made in connection to worker's compensation for the injury.** How can Mr. Pitre be punished and sanctioned for allegedly failing to disclose information that was already

---

[8] The Court's order also accuses Plaintiff's counsel of dishonesty, however there is not a single instance in the record of this case, where I ever knowingly misled or offered false evidence in this case. However, the record is rife with instances of the Court berating, insulting and otherwise showing open hostility to Plaintiff's counsel, including blaming Plaintiff's counsel for Defense Counsel, Nicholas Green's repeated failures during discovery and after discovery, and precluding Plaintiff from offering crucial and admissible evidence based on Mr. Green's discovery failures.

well known to the Defendant City and their attorneys? It does not make sense.

I have been the only attorney continuously handling this case for over five years. Over that period of time I have come to know Plaintiff ("Ed"), very well, and I have come to know the facts giving rise to his claims very well. I trust Ed, and I know him to be a kind, patient, forthcoming and honest man (unfortunately, I cannot say the same for all of the potential plaintiffs I have encountered in my relatively short career as a plaintiff-side attorney), and he may also not be the most sophisticated litigant. But that should not preclude him from having his claims adjudicated on their merits.

I would not dare bring any case to trial, including this one, if I did not have 100% faith in the veracity and truth of my client's claims, much less *for my first jury trial*, and *before a Circuit court judge*. My familiarity with Ed and with the facts of this case were the only reason I did not defer to more experienced trial counsel to be the lead attorney at trial for this case, a decision that with the benefit of hindsight I can now see was a mistake. But an attorney's good faith mistake cannot be the valid basis for the extreme sanction of dismissal, and the Court's imputation of "bad faith" based on my inexperience is misplaced and unfair, especially to Ed.

## Mr. Pitre and I Made No Attempt to Commit Any Fraud The Court

In its 1/28/24 Memorandum & Order ("the Order") on p. 7, the Court cites one example claiming that Mr. Pitre's testimony was "flat-out false." However, this lone example has a simple, obvious and innocuous explanation. The record reflects that Mr. Pitre was being asked about regularly recurring sources of income, such as social security, disability, workers compensation, pension and other such recurring income related to his injury. If Mr. Pitre had been asked if he received a settlement in that lawsuit, he would have obviously answered "yes," and if asked to elaborate, he would have described how the City of New York was paid out a sizeable portion of the settlement because the City of New York's Law Department was the claims administrator for the workers

compensation claim that was reimbursed out of that settlement[9], and perhaps most importantly, that the City was a party to that lawsuit (which he describes in his deposition, see Attachment 1). This in notwithstanding the fact that because there is no offset, the testimony is inadmissible anyway. (See below)

Courts in this Circuit have noted that: "dismissal is a 'drastic remedy' [and] 'should be imposed only in extreme circumstances, usually after consideration of alternative, less drastic sanctions.'" *Saul v. Tivoli Sys.*, 2001 U.S. Dist. LEXIS 9873, *14-16 citing *West v. Goodyear Tire & Rubber Co.*, 167 F.3d at 779-80 (quoting *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988)). [*15] *Accord, e.g., Barsoum v. NYC Housing Auth.*, 2001 U.S. Dist. LEXIS 3814, 2001 WL 332956, *3 (S.D.N.Y. 2001)(citing *Bobal v. Rensselaer Polytechnic Inst*, 916 F.2d 759, 764 (2d Cir. 1990), *cert. denied*, 499 U.S. 943, 113 L. Ed. 2d 459, 111 S. Ct. 1404 (1991)). Thus, it is available only if the wrongdoer has acted willfully or in bad faith or is otherwise chargeable with "fault", *West*, 167 F.3d at 779 (citing *Jones v. NFTA*, 836 F.2d 731, 734 (2d Cir. 1987), *cert. denied*, 488 U.S. 825 (1988)), and even then the court must be satisfied that no less rigorous sanction will adequately serve the purposes of the spoliation doctrine. *See, e.g., id.* at 780 (reversing dismissal because of adequacy of lesser sanctions).

"Even if a party is found to have acted willfully, in bad faith or with gross negligence, the courts have more commonly looked to less extreme forms of remediation, such as a missing evidence charge, an instruction that the jury may or must draw an inference. in favor of the disadvantaged party on a particular issue, or the preclusion of evidence." *Id.* citing *e.g., Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 383-84 (2d Cir. 2001) [*16] *Byrnie*, 243 F.3d at 107-08; *Reilly v. Natwest Mkts. Group Inc.*, 181 F.3d 253, 267 (2d

---

[9] See Attachment 5, sworn affidavit of Mr. Pitre regarding this testimony and the personal injury lawsuit.

Cir. N.Y. 1999); *Barsoum*, 2001 WL 332956, at *5.

Here, Plaintiff was not afforded any such consideration or lesser sanction.  Instead of dismissing the case, the Court here could have, and should have briefly stayed the proceeding, to investigate whether the Defendants' assertion that Plaintiff failed to disclose the previous personal injury lawsuit was true or not.  If that had occurred, Plaintiff would have been able to present the whole picture, which shows that the City of New York's Law Department was undeniably aware of the personal injury lawsuit, because they litigated that lawsuit on behalf of their client the City of New York, who, after that complaint was filed, was implead as a 3rd Party Defendant in that lawsuit, and they received proceeds of the settlement in that case.

United States Circuit Courts have "concluded that employing the most extreme remedy to cure a violation is an abuse of discretion and then remanded for the district court to select among less extreme alternatives. *United States v. Orozco*, 916 F.3d 919, 926 citing, e.g*., United States v. Gonzales*, 164 F.3d 1285, 1292-93 (10th Cir. 1999) ("[W]e find it necessary to remand to the district court for consideration [**17] of less severe sanctions.").

If the Court had taken this simple step to verify what defense counsel was alleging, for the first time, during Plaintiff's cross-examination, it would have found out that there was no violation, and no failure to disclose, but there was however only a limited and misleading picture provided by the defense, which failed to provide information that the City was involved in that lawsuit, and was reimbursed from the settlement proceeds of that lawsuit. Furthermore, the Court would have been able to discover that the Defendants waived their right to assert a defense of offset of damages from the personal injury case by failing to affirmatively raise that defense in their Answer or any amended answer. (See attachment 10, Defendants' Answer in this lawsuit)

Furthermore, there is no offset in employment law cases:

"Although defendant is correct that the legislature has limited the applicability of the collateral source rule in certain circumstances, there is no precedent for applying these limitations in the context of a claim of employment discrimination. Beginning in 1975, the New York legislature enacted a series of statutory amendments to C.P.L.R. § 4010, and its successor statute, C.P.L.R. § 4545, limiting the collateral source rule, initially as a means of dealing with medical malpractice insurance issues. See Kihl v. Pfeffer, 47 AD. 3d 154, 848 N.Y.S.2d 200 (2d Dep't 2007). The statutory exceptions to the common law rule that were enacted included wrongful death awards, and were eventually extended to "'any action' for personal injury, property damages or wrongful death where damages have been awarded for past or future economic  [*42] loss." Id., 47 A.D.3d at 162, 848 N.Y.S.2d at 206. The statute does not mention claims arising from discriminatory conduct, and as the court in Kihl noted, "[b]ecause C.P.L.R. § 4545(c) is in derogation of the common law, its provisions must be strictly construed." Id., 47 A. D.3d at 163, 848 N.Y.S.2d at 206 (citing cases). Indeed, defendant has not cited a single case under either Federal or New York State law in which the court entertained an offset under circumstances where the claim was based on employment discrimination and the amount paid in benefits was paid by a third-party insurer, as it has been here. Cf., EEOC v. Yellow Freight System, Inc., No. 98 CV 2270, 2001 U.S. Dist. LEXIS 20240, 2001 WL 1568322, at *4 (S.D.N.Y. Dec. 6, 2001) (permitting the defendant, who was self-insured and who paid benefits directly to the employee-victim, to enter evidence demonstrating its right to an offset).

Moreover, the Second Circuit has held that the decision whether to apply the collateral source rule to deduct benefits from a back pay award in an employment discrimination case "'rests in the sound discretion of the district court.'" Dailey v. Societe Generale, 108 F.3d 451, 460 (2d Cir. 1997). The Court explained: "We do not believe that the rule…requiring the deduction of these collateral benefits is appropriate, particularly in view of the compelling reasons, expressed by many of our sister circuits, that a district court might decline to deduct unemployment insurance from back pay," Id. at 460-61; see also Ramey v. District 141, Int'l Ass'n of Machinists & Aerospace Workers, 362 Fed. Appx. 212, 2010 WL 292769 (2d Cir. Jan. 27, 2010). When the benefits do not come from the employer, but instead come from a collateral public source, such as unemployment or social security benefits, the Second Circuit has noted that "'[a]s between the employer, whose action caused the discharge, and the employee, who may have experienced other noncompensable losses, it is fitting that the burden be placed on the employer.'" Promisel v. First Am. Artificial Flowers, Inc., 943 F.2d 251, 258 (2d Cir. 1991) (quoting Maxfield v. Sinclair Int'l, 766 F.2d 788, 795 (3d Cir. 1985) (declining to set off social security benefits in ADEA lost wages context).

Plaintiff argues that here, the benefits were not paid by PDHP; instead, she contends they were paid by third-party insurers, pursuant to plaintiff's contractual and  [*44] statutory right to receive benefits as part of her employment compensation. (Pl.'s Offset Mem.14 at 4). Case law in this Court and in the Second Circuit supports the conclusion that under these facts, the Drinkwater exception does not apply, and any windfall should be to the benefit of the victim of bias — in this case, the plaintiff — and not to the perpetrator. See, e.g., Klein v. United States, 339 F.2d at 517-18 (holding that disability insurance benefits should not be offset against any recovery); Meling v. St. Francis College, 3 F. Supp. 2d. 267, 276 (E.D.N.Y. 1998) (refusing to deduct long term disability benefits from a back pay

award in an ADA case and noting "I prefer to confer the unavoidable windfall on the victim of discrimination"). In <u>Meling v. St. Francis College</u>, this Court declined to deduct amounts received in disability benefits from the plaintiff's back pay award even though the defendant employer sent premiums to the insurance company on behalf of all employees. 3 F. Supp. 2d at 277. Noting that the plaintiff would receive more than she would have had she not been terminated, the court determined that "a 'compelling reason' to exercise that discretion in favor [*45] of refusing to deduct benefit payments is that it is better to confer a windfall payment to the victim rather than the perpetrator of unlawful discrimination." <u>Id</u>. at 275-76 (quoting <u>Dailey v. Societe Generale</u>. 108 F.3d at 460-61).

Other courts agree. The Sixth and Eighth Circuits have also declined to apply the collateral source rule in the context of employment cases. <u>See, e.g., Hamlin v. Charter Twp. of Flint</u>, 165 F.3d 426, 434-35 (6th Cir. 1999) (declining to apply the collateral source rule in an employment discrimination context because to do so would undermine the deterrent functions of the statute); <u>Arneson v. Callahan</u>, 128 F.3d 1243, 1248 (8th Cir. 1997) (declining to apply offset in the context of an action brought before the NLRB). In <u>Sam Teague Ltd. v. Hawai'i Civil Rights Commission</u>, the Supreme Court of Hawaii noted that as of February 1999, "no federal circuit has determined that unemployment benefits should be deducted, as a matter of law, from back pay awards in discrimination cases." 89 Hawaii 269, 282, 971 P.2d 1104, 1117 (Sup. Ct. 1999) [*46] (citing cases). The Eighth Circuit explained in <u>Gaworski v. ITT Commercial Financial Corp.</u>, 17 F.3d 1104, 1112 (8th Cir. 1994) that "[b]lack pay awards in discrimination cases serve two general functions: (1) to make victimized employees whole for the injuries suffered as a result of the past discrimination; and (2) to deter future discrimination." Reducing a back pay award by amounts that are not paid by the employer "'makes it less costly for the employer to wrongfully terminate a protected employee and thus dilutes the prophylactic purposes of a back pay award,'" conferring "a windfall to the employer who committed the illegal discrimination." <u>Sam Teague Ltd. v. Hawai'i Civil Rights Commission</u>, 89 Hawaii at 282, 971 P.2d at 1117 (quoting <u>Gaworski v. ITT Commercial Financial Corp.</u>, 17 F.3d at 1113).

Although plaintiff's award In this case was based on the NYCHRL and not federal anti-discrimination laws, courts interpreting issues under the City and State Human Rights Laws typically look to the federal courts' construction of federal anti-discrimination statutes. <u>See, e.g., Argyle Realty Assocs. v. N.Y. State Div. of Human Rights</u>. 65 A.D.3d 273, 285-86, 882 N.Y.S.2d 458, 468-69 (2d Dep't 2009). [*47] In fact, as plaintiff argues, if anything, the NYCHRL is "to be construed liberally for the accomplishment of the uniquely broad and remedial purposes" of the statute; therefore, a determination to reduce the amount to be paid in damages and thus award a windfall to the defendant employer found liable for discriminatory conduct would seem to be contrary to the goals of the statute. <u>See Albunio v. City of New York</u>, 16 N.Y.3d 472, 477, 947 N.E.2d 135, 922 N.Y.S.2d 244, 246 (2011) (admonishing courts to construe the NYCHRL broadly in favor of discrimination plaintiffs) (internal citation omitted). In the absence of an explicit statutory exception to the collateral source rule, the Court is left to exercise its discretion in determining whether to reduce the plaintiff's award by the amounts paid from her disability insurers.

Having considered the competing policy concerns raised in this case, the Court finds that in the context of the jury's finding of employment discrimination based on plaintiff's

suffering from cancer, the need to deter future discrimination outweighs the concern that the victim is receiving a windfall. Particularly in this case, where the disability benefits paid to plaintiff were not  [*48] paid by the employer, the Court exercises its discretion in favor of plaintiff and declines to impose an offset that would merely reduce the amount that the employer is required to pay for its unlawful conduct, resulting in a windfall for the very party found responsible for plaintiff's damages. Accordingly, the Court denies defendant's motion for an offset.

*Siracuse v. Program for the Dev. of Human Potential*, 2012 U.S. Dist. LEXIS 73456, *40-48

Also, as held,

"However, the Second Circuit has noted, in the context of an employment discrimination case, that "while collateral source payments do represent an additional benefit to the plaintiff, we note a sister circuit's view that 'as between the employer, whose action caused the discharge, and the employee, who may have experienced other noncompensable losses, it is fitting that the burden be placed on the employer.'" *Promisel v. First American Artificial Flowers, Inc*., 943 F.2d 251, 258 (2d Cir. 1991), cert. denied, 502 U.S. 1060, 117 L. Ed. 2d 110, 112 S. Ct. 939 (1992) (quoting *Maxwell v. Sinclair International*, 766 F.2d 788, [**78] 795 (3d Cir. 1985) (holding that social security benefits should not be set off from ADEA lost wages award), cert. denied, 474 U.S. 1057, 88 L. Ed. 2d 773, 106 S. Ct. 796 (1986)).

The cases cited by Defendant to support its contention that an employment discrimination action is a tort action subject to § 4545(c) do not directly address the issue, rather, they state that discrimination actions are injuries to the personal rights of individuals and can be classified as tort actions. However, § 4545(c) does not, by its terms, apply to all tort actions. 11 Simply characterizing an employment discrimination claim as a tort action does not bring the action within § 4545(c). Further, the court's research has not revealed, nor has the Defendant been able to offer, any authority that § 4545(c) applies to an employment discrimination claim. As the New York Court of Appeals has stated that § 4545 should be construed "in the narrowest sense that its words and underlying purposes permit," *Oden v. Chemung County Industrial Development Agency*, 87 N.Y.2d 81, 661 N.E.2d 142, 144, 637 N.Y.S.2d 670 (N.Y. 1995), this court will not extend the meaning of § 4545(c) to include an employment [**79] discrimination case such as the instant action."

*Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039, 1067

Additionally, even if we were to assume that the personal injury recovery was somehow relevant to these proceedings, it would not be relevant until after a trial and when a collateral source hearing would be held. CPLR 4545 states that offsets only occur ***after*** the verdict "Any collateral source deduction required by this subdivision shall be made by the trial court after the rendering of the jury's verdict." Thus, even if the Court were to impose a duty on Plaintiff to reveal the other case, the duty to reveal only arises after the verdict.

### The Damages Sought in this Case are Separate and Far More Significant and Higher Than the Damages Sought in Plaintiff Personal Injury Case

The Court's decision and order mistakenly conflates the damages sought by Plaintiff in his personal injury lawsuit with the damages sought in this lawsuit. There is not substantial overlap. To the extent that there is *any* overlap, Plaintiff should have been given the opportunity to waive the overlapping damages and continue to complete his case-in-chief.  The basis for the damages sought in the two lawsuits are unquestionably based on different claims and theories of recovery.  Plaintiff recovered less than $45,000 in his personal injury settlement after the City's worker's compensation reimbursement was take out.  The damages proffered by Plaintiff in this case range into the seven-figures (or higher) because they are related to Plaintiff's diminished earning capacity over the span of his adult life after the age of 46, and they stem from Defendants' actions *after* his slip and fall injury as a basis to force him into early retirement.  The recovery sought in the personal injury case was limited directly to those suffered because of the slip and fall and did not touch on the defendants' actions giving rise to this case.  Furthermore, since Defendants knew about his recovery in the personal injury case, and they did not raise it as an affirmative defense in their Answer, they waived such an offset defense (these topics are both described below).

### The City and Its Law Department Have Been Aware of the Personal Injury Lawsuit Since 2017

The Court's Decision contains an alarming and significant oversight regarding the personal injury lawsuit.  In describing Plaintiff's prior personal injury lawsuit on pp. 5-6 of the D&O, the Court states: "A stipulation so ordered on May 23, 2018, provides as follows:

[T]he matter is settled subject to workers compensation approval. Upon receipt of signed releases and written workers compensation approval, all claims and all third party claims will be discontinued."

Pitre v. Morningside Heights SN, Stipulation, Index No. 157588/15 (S. Ct. N.Y. Co. May 23, 2018)" (Attachment 6 submitted herewith is a true and correct copy of that stipulation from the docket of the personal injury case).

One of the signatories to that stipulation is Jeannine Brisard, Assistant Corporation Counsel for the Law Department of the City of New York, who signed the stipulation on behalf of a defendant she was representing in that case, The City of New York. (See Attachment 6)

One sentence later, on p.6 the D&O states: "Pitre did not disclose to the City or other defendants in this case anything about the state court case or the settlement in the state court case or the amounts paid to him as a result of that settlement."  This is the Court's primary and most significant basis to allege that Mr. Pitre and his counsel prosecuted this matter in "bad faith" and committed a "fraud on the court" and thus dismissed the case before Mr. Pitre had rested his case in chief.  Notwithstanding that Mr. Pitre was forthcoming about the state court lawsuit in his deposition when asked about it, Defendants never served any written discovery requests seeking disclosure of this lawsuit, as discussed below.

Moreover, in a major oversight, the Court appears to have not looked further into the docket of that personal injury lawsuit.  The very next docket entry in that case after the stipulation noted

in the D&O described above, is the stipulation of dismissal which is also signed by Jeannine Brisard on behalf of her client, the City of New York, a defendant in that case, which is noted in her signature block on that stipulation. Furthermore, docket entry #11 in that state court action contains the Third-Party Summons and Complaint impleading the City of New York and the Fire Department of New York City into that lawsuit (see Attachment 7), and The City of New York's Answer to the 3rd Party Summons and Complaint is contained in docket entry #33 of that case (see Attachment 2)

The City's Law Department consented in writing to the settlement in that case, it was the claims administrator for Plaintiff's workers compensation insurance and was reimbursed $20,619.67 from the personal injury settlement totaling $65,000 (see Attachments 3 and 8).

Plaintiff did not "fail to disclose" this lawsuit and settlement, because the City has known about and openly participated in that lawsuit for years and consented to and benefitted from the settlement in that lawsuit. The City was aware of that lawsuit because it was a party to that lawsuit. Plaintiff has no such obligation to tell the Court what the City already knew.

**Plaintiff Disclosed The Lawsuit In His Deposition**

Mr. Pitre was deposed by the City's attorney, Mr. Green on August 3 and 4 of 2021.  During his deposition, Mr. Pitre was asked about other lawsuits he had been involved in.  That testimony discloses and describes the personal injury lawsuit he was accused of failing to disclose by Defendants and the Court, to the limited extent Mr. Green asked Mr. Pitre about it in that deposition. Below is a true and correct copy of the deposition testimony in question:

12    Q.    Have you previously been a plaintiff or a

13    defendant in any other lawsuits?

14    A.    Yes.

15    Q.    And what lawsuits are those?

16    A.    Yes.

17    Q.    And what lawsuits are those?

18    A.    That was with the City of New York with -- it was

19    five employees, counting myself, and there was one -- part

20    of my injury, which was -- which was a lawsuit with the

21    third party -- City was third party, in front of the

22    building in which I fell.

23    Q.    And when -- were you the only plaintiff in that

24    lawsuit, or were there other plaintiffs?

25    A.    Which one?  The one in front of the building?

E. PITRE

Page 7

1    Q.    Are there multiple lawsuits that you have been a
2    party to?
3    A.    There was two, which is the same -- it was all
4    with -- the City of New York was also there, as well.
5    Q.    Okay.  So relating to the injury lawsuit, when
6    was that filed?
7    A.    I don't recall.
8          The date of injury was 2/27.  I'm pretty sure the
9    City has it, because they were there.  You should have all
10   of that information.
11   Q.    You said February 27th?
12   A.    That is correct.
13         That was the date of injury, and that's -- that's
14   because it was multiple surgeries, right, so the City --
15   they wanted -- I guess they wanted whatever -- any money I
16   received, they would be able to get back for the money that
17   they spent on my injuries.
18   Q.    What -- I'm sorry.
19         Just to clarify, you were the plaintiff in this
20   action; is that correct?
21   A.    Correct.
22   Q.    And you're saying that the City was getting money
23   from you that had been paid out for your injuries?
24   A.    No.  Because it happened on the job, it was
25   on-the-job injury, so any moneys that was -- that were

E. PITRE

Page 8

```
 1    given to me, they were going to, I believe, get a -- I
 2    don't know the actual number because of -- because they
 3    paid for all of the surgery, physical therapy, so which
 4    they did receive the money.
 5        Q.    Okay.  Would that lawsuit have been filed around
 6    2015, 2016; does that sound right to you?
 7        A.    '16, I believe.
 8        Q.    Okay.  And you said that there was another
 9    lawsuit.
10              Do you remember when that lawsuit was filed?
11        A.    I don't remember the date.
12        Q.    Okay.
13        A.    That was in the Eastern District.
14        Q.    And what was the subject of that lawsuit?
15        A.    Discrimination.
```

This is the extent of the discovery sought and taken by Defendants on the personal injury lawsuit in this case, *which they were also a party to, and received settlement proceeds from*.  Despite Plaintiff's testimony, Defendants made no effort to request any documentation related to this Third-Party Action and injury lawsuit.

Therefore, the Court's assertion that "Plaintiff failed to meet his obligations in discovery" and that he "failed to produce many relevant documents" is entirely speculative and not based in any facts contained in the record or docket of this case.  A far more accurate and fair assessment would be that Defense counsel failed to meet his obligations to his client in obtaining discovery from Plaintiff. Indeed, Judge Chin was not presiding over this case during discovery.  The docket of this case shows

that Judge Marrero, who was presiding over this case prior to Judge Chin and during discovery, authored much more measured opinions and orders that did not consistently and baselessly disparage the conduct of Plaintiff's counsel.  Judge Marrero's opinions and orders in this case also more accurately reflect the lawyering of the City's counsel during discovery and when dispositive motions should have been filed.  Furthermore, the D&O incorrectly accuses Plaintiff's counsel of "fail[ing]to comply with Federal Rule of Civil Procedure 26(a) with respect to economic damages -- that is, he did not provide in his Rule 26(a) responses a calculation of economic losses."  This statement by the Court in the D&O is false.

Attachment 9, submitted hereto, is a true and correct copy of Plaintiff's initial Rule 26(a) disclosures, which describe Plaintiff's economic damages to the degree of specificity required under Rule 26(a) and states: ""Plaintiff is claiming the annual salary at the time of the Plaintiff's date of termination times 10 years, plus bonuses, commissions, health insurance, pension, profit sharing and all other expected raises and benefits, reduced by earned income."  There is no authority that Plaintiff's counsel is aware of that says any higher degree of specificity in calculations must be disclosed pursuant to 26(a).

This is clearly a sufficient expression and calculation of the economic damages sought for the purposes of a Rule 26(a) disclosure to guide Defendants' discovery.  "While the question of how much information must be provided is not fully settled, the disclosed information should at least be enough to "help focus the discovery that is needed, and to facilitate preparation for trial or settlement." Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 26(a). "Initial disclosures should provide the parties 'with information essential to the proper litigation of all relevant facts, to eliminat[e] surprise, and to promot[e] settlement.'" *Mathews v. Denver Newspaper Agency LLP*, 2008 U.S. Dist. LEXIS 45565, *4 citing *Lobato*, 2007 U.S. Dist. LEXIS 65574, 2007 WL 2593485, at *5

Nonetheless, the Court repeatedly and inexplicably placed the blame on Plaintiff's counsel because Defendants failed to probe further into the information contained in this disclosure, even going so far as to grant a motion *in limine* that precluded whole sources of evidence, such as evidence of Plaintiff's shortfall in pension earning due to his forced early retirement.

**<u>Defendants Failed to Raise the Offset or Estoppel as an Affirmative Defense in Their Answer</u>**

Defendants failed to raise offset or estoppel in their Answer or any amended answer as an affirmative defense[10].  A defendant must plead §4545 (offset) as an affirmative defense in its answer. *Wooten v. State of New York* 753 NYS2d 266 (4th Dept. 2002) ("collateral sources of payment pursuant to CPLR 4545 must be pleaded as an affirmative defense.") Similarly, an estoppel argument appears to be implicated regarding allegedly inconsistent or contradictory claims in Plaintiff's personal injury complaint compared with his complaint in this case.

Further, CPLR § 4545 says offsets only occur in Personal Injury cases. Discrimination is not personal injury: "The remaining question is whether discrimination based upon national origin is conduct that can support a claim for interference with a prospective contract or economic relationship, which is an issue of first impression. Discrimination is not a tort claim. *Matter of Jennifer Amorosi v. South Colonie Independent Central School District,* 9 N.Y.3d 367, 372, 849 N.Y.S.2d 485, 880 N.E.2d 6 (2007). *30 CPS, LLC v Bd. of Managers of Cent. Park S. Med. Condominium*, 23 Misc 3d 1024, 1032 [Sup Ct 2009]. "The Federal court claims for breach of contract and **discrimination are not in tort**. Accordingly, General Obligations Law § 15–108(a)

---

[10] See Attachment 10, a copy of Dkt. #47, Defendants Answer in this matter.

does not apply (*see, Bankers Trust Co. v. Keeling & Assocs.,* 20 F.3d 1092, 1099), *Bauman v Garfinkle*, 235 AD2d 245 [1st Dept 1997] (emphasis added).

"As an initial matter, Supreme Court's characterization of plaintiff's discrimination claim as a "tort" and its application of General Municipal Law § 50–i to such claim was in error inasmuch as this statutory provision is confined to claims for personal injury, wrongful death or damage to property and **does not apply to discrimination claims** (*see, e.g., Sebastian v. New York City Health & Hosps. Corp.,* 221 A.D.2d 294, 634 N.Y.S.2d 114; *Mills v. County of Monroe,* 89 A.D.2d 776, 453 N.Y.S.2d 486, *affd.* 59 N.Y.2d 307, 464 N.Y.S.2d 709, 451 N.E.2d 456, *cert. denied* \*989 464 U.S. 1018, 104 S.Ct. 551, 78 L.Ed.2d 725).1 *Parry v. Tompkins County*, 260 AD2d 987, 988-89 [3d Dept 1999] (emphasis added)

CPLR 4545 also states that offsets only occur after the verdict "Any collateral source deduction required by this subdivision shall be made by the trial court after the rendering of the jury's verdict." Thus, if there is a duty, (which there is not), such a hypothetical duty to reveal only arises after the verdict.

In personal injury action, defendants were entitled to post-verdict disclosure pertaining to plaintiff's receiving social security disability payments, where plaintiff was found totally disabled and entitled to disability benefits after filing of note of issue but prior to trial; however, defendants were not entitled to post-verdict discovery concerning earnings, no-fault, or workers' compensation benefits where plaintiff had submitted to oral deposition and provided authorizations to no-fault carrier and Workers' Compensation Board prior to filing of note of issue. Hoffmann v S.J. Hawk, Inc., 177 Misc. 2d 305, 676 N.Y.S.2d 448, 1998 N.Y. Misc. LEXIS 295 (N.Y. Sup. Ct.

1998), aff'd, 273 A.D.2d 200, 709 N.Y.S.2d 448, 2000 N.Y. App. Div. LEXIS 6226 (N.Y. App. Div. 2d Dep't 2000).

The fact that the defendant tortfeasor escaped some liability in damages because of optional basic economic loss coverage, if unfair, was an unfairness which was dismissed by the enactment of N.Y. C.P.L.R. § 4545 in favor of avoiding the possibility of a double recovery for the same items of economic loss. *Condon v Hathaway*, 191 Misc. 2d 235, 740 N.Y.S.2d 600, 2002 N.Y. Misc. LEXIS 197 (N.Y. Sup. Ct. 2002).

A personal injury defendant was entitled to a post-verdict hearing to prove the existence of collateral sources of income to the injured plaintiff, pursuant to N.Y. C.P.L.R. 4545, but not to further discovery on the issue; the court applied the federal post-judgment interest rate of 28 U.S.C.S. § 1961 (a). *Underwood v B-E Holdings, Inc.*, 269 F. Supp. 2d 125, 2003 U.S. Dist. LEXIS 9970 (W.D.N.Y. 2003). Here, any offset collateral source income should have not been presented to the jury, and should have been addressed post-verdict.

**<u>The Court's Open Hostility To Plaintiff's Case and Counsel</u>**

Despite that I informed the Court that this was the first time that I ever tried a case in front of a federal jury, the Court repeatedly made a point to admonish me in open Court and in front of Defendants and their counsel and express it impatience with me, to the point that the Court began to make the Defendants' case for them and impute "bad faith" into my admitted inexperience. The D&O describes this case as an "utter waste of time" minimizing and callously disregarding that Mr. Pitre's career has been destroyed and his lifetime earning capacity has been catastrophically reduced because Defendant's refused to grant the accommodation that would allow him to stay on his job.

For example, exchanges such as:

Barrett: "If I may, your Honor." Court: "No.  I'm talking,"

 and the following excerpt:

> MR. BARRETT:   So, I mean, it's just I'm not clear on what I should tell him he can and can't say.   He can't talk about his racism that everybody experienced but can he talk about the culture that Ed was subjected to.   I mean, where's the line?
>
> THE COURT:   All right.   I said in my decision that witnesses could talk about discriminatory acts against Mr. Pitre.   I'm not sure what your culture argument is.
>
> MR. BARRETT:   That argument --
>
> THE COURT:   What are part of the problem here is -- Let me say this.   This is the worst tried case on the plaintiff's side I have seen in 29 years of trying cases.   The worst. You are just totally unprepared.   You know what takes an hour and 15 minutes, should take 15 minutes.   I still don't know what Mr. Pitre's story is.   I still don't know after months and months of presiding over this case, and I'm running out of patience.   So, my ruling stands. My ruling stands.   If the witnesses exceed the parameters I'm allowing, I assume I'll get an objection and then we'll deal it.
>
> MR. BARRETT:   You asked me a question.   May I be heard?
>
> THE COURT: No. No. Enough. Enough. I'm going to bring the jury in. 227-228

Every trial lawyer was once an inexperienced trial attorney at their first trial. However, here the Court's rigidity, unforgiving attitude, rudeness, short temper, and harshness to a first-time trial counsel, and the Court's unflinching expression of its *perception* of counsel's ineptitude, was inappropriate, un-called-for and is a valid basis for recusal based on the appearance of an inability to be impartial.  I concede that I was in over my head, as the Court stated openly and unnecessarily (because it was already obvious to everyone in the courtroom, especially me), but that is hardly

the basis for the cruel and ill-tempered manner in which the Court repeatedly dressed me down and ascribed bad faith and dishonesty to me, my co-counsel, Mr. Pitre and the witnesses who have stood up for him because they also believe that what happened to Ed was unfair.  I am a human being, and yes, I made mistakes during this trial, and I apologized for those mistakes, as the Court pointed out in the D&O "at least a dozen times." (p. 11 of the D&O).  I am also a plaintiff-side discrimination attorney because I believe that someone needs to stand up and fight when civil rights have been violated.  I'm not here to get rich, or to make a mockery of myself, the Court or our profession. I'm here, in this case, because I believe in Ed Pitre as a fellow human being, and I believe that his rights under the law have been violated.

I hereby respectfully ask that Your Honor recuse yourself due to the appearance of impartiality based on the foregoing and of the whole record of this case.  Alternatively, please grant Plaintiff a new trial, and I promise it will be tried by a more experienced trial attorney with me simply assisting.  Alternatively, to that, please dismiss this case without prejudice to continue the state claims in State court.  Respectfully, dismissal is cruel and inappropriate here.

**Unprepared Counsel Is Not a Basis For the Extreme Sanction of Dismissal**

Even in a case where counsel was rude and inexperienced, the attorney was afforded a full opportunity to try his case and he actually won: "Mr. Lee was exceedingly contentious, unduly adversarial and expended inordinate time in personal conflicts and arguments with opposing counsel, many of which resulted in needless discovery and logistic motions which burdened scarce judicial resources. Some of Mr. Lee's conduct or confusion could be attributed to a skilled legal technician's attempts to preserve his case and foil opposing counsel. But that is not the case here. The unnecessary court proceedings and confusion were, for the most part, due to inexperience. Mr. Lee caused countless problems for the Court's staff, was rude on occasion, without explanation or

apology. **Nonetheless, Mr. Lee was afforded full opportunity to try his client's case in what was a fair trial.**" (emphasis added) "For example, the repeated failure to follow the Federal Rules of Evidence during trial reveals that Plaintiff's attorney was inexperienced and lacked a practical knowledge of the Federal Rules of Evidence. Many times Mr. Lee reacted in an incredulous or hostile manner to the Court's rulings on objections and motions during trial. Plaintiff's attorney also had a practice of not raising all grounds or basis for his legal positions in oral argument and then raising them in motions for reconsideration." *Jadwin v. County of Kern*, 767 F Supp 2d 1069, 1131, n 71 [ED Cal 2011]

Here, I and my co-counsel were routinely apologetic for any shortcomings, and I take responsibility for my inexperience and the delay the Court has indicated that it caused. Plaintiff should have at least been afforded the opportunity to finish his case-in-chief.

<u>**The Court's Imagined Apparent Perjury By Witness Seabrook**</u>

Mr. Seabrook testified that he never had his driving privileges revoked by the Fire Department. That is not perjury. His driving privileges were revoked by the criminal court for DUI, not by the FDNY.

<u>**The Pleading in the Two Lawsuits are not Contradictory and Any "Inconsistencies" in the Factual Pleadings are Insignificant**</u>

The two lawsuits discussed in the Order were drafted and filed by two different attorneys based on two different sets of claims, years apart and seeking different damages, with some overlap. In conclusion, I respectfully ask this Court to allow Plaintiff to have this case decided on the merits and overturn its decision to dismiss this case.

Dated:  March 1, 2024
      New York, New York

*Respectfully submitted,*

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Claimant*

<u>/s/ Seamus Barrett</u>
Seamus P. Barrett, Esq.
Zachary Holzberg, Esq.
Ian Bryson, Esq.
One Pennsylvania Plaza, Ste 4905
New York, New York 10119
(212) 587-0760