18 CV 5950 (DC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EDWARD PITRE,

                                                        Plaintiff,

-against-

THE CITY OF NEW YORK,
FIRE DEPARTMENT OF THE CITY
OF NEW YORK, JAN BORODO, individually,
JOHN FIORENTINO individually, and
JOSEPH M. MASTROPIETRO, individually,

                                                        Defendants.

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

# HON. SYLVIA O. HINDS-RADIX

*Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-172
New York, NY 10007

*Of Counsel:*  Lauren Silver Desiree Alexander
*Tel:*          (212) 356-2507, (212) 356-3177

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1
STATEMENT OF FACTS ........................................................................................................ 2
ARGUMENT .............................................................................................................................. 5
  POINT I .................................................................................................................................. 5
    PLAINTIFF FAILS TO MEET THE STANDARD OF RECONSIDERATION .................. 5
  POINT II ................................................................................................................................. 8
    THE COURT PROPERLY DISMISSED THIS CASE FOR FRAUD ON THE COURT .... 8
  POINT III .............................................................................................................................. 10
    A LESSER SANCTION CANNOT REMEDY THE FRAUD COMMITTED UPON THE COURT. ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. United States*,
   686 F. Supp. 417 (S.D.N.Y. 1988)..................................................................................6

*Analyticial Surveys, Inc. v. Tonga Partners, L.P.*,
   684 F.3d 36 (2d Cir. 2012)..............................................................................................5

*Anglo Am. Ins. Grp., P.L.C. v. CalFed, Inc.*,
   940 F. Supp. 554 (S.D.N.Y. 1996)..................................................................................6

*Henderson v. City of N.Y*,
   No. 05.............................................................................................................................5

*Hidalgo v. New York*,
   11 CV 5074 (JS), 2012 U.S. Dist. LEXIS 117270 (E.D.N.Y. Aug. 20, 2012)..............5

*Justice v. City of N.Y.*,
   No. 13 CV 4016 (MKB), 2015 U.S. Dist. LEXIS 97657 (E.D.N.Y. July 27,
   2015) ..............................................................................................................................5

*Metro. Opera Ass'n v. Local 100, Hotel Emples & Rest. Emples. Int'l Union*,
   No. 00 Civ. 3613 (LAP), 2004 U.S. Dist. LEXIS 17093 (S.D.N.Y. Aug. 27,
   2004) ..........................................................................................................................6, 7

*Morser v. AT&T Info. Sys.*,
   715 F. Supp. 516 (S.D.N.Y. 1989)..................................................................................6

*Range Rd. Music, Inc. v. Music Sales Corp.*,
   90 F. Supp. 2d 390 (S.D.N.Y. 2000)...............................................................................5

*Rossbach v. Montefiore Med. Ctr.*,
   81 F.4th 124 (2d Cir. 2023) .............................................................................10, 11, 12

*Rossbach v. Montefiore Med. Ctr.*,
   No. 19-5758, 2021 US Dist. LEXIS 14703 (S.D.N.Y. Aug. 5, 2021).............10, 11, 12

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995)..............................................................................................5

**Statutes**

28 USCS § 1927 ("§ 1927") ................................................................................................10

| **Cases** | **Pages** |
|---|---|
| Family and Medical Leave Act | 1, 4 |

**Other Authorities**

| | |
|---|---|
| Fed. R. Civ. P. Rule 50 | 7 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x

EDWARD PITRE,                                                        No. 18 CV 5950 (DC)

                              Plaintiff,

    -against-

THE CITY OF NEW YORK,
FIRE DEPARTMENT OF THE CITY
OF NEW YORK, JAN BORODO, individually,
JOHN FIORENTINO individually, and
JOSEPH M. MASTROPIETRO, individually,

                              Defendants.

------------------------------------------------------------------- x

## PRELIMINARY STATEMENT

Defendants submit this Memorandum of Law in Opposition to plaintiff's Motion for Reconsideration of the Court's decision to dismiss the Complaint. Plaintiff's motion should be denied since it fails to meet the standard for granting reconsideration and it misapprehends the true basis for dismissal of this case: abject fraud on the Court. The timing of disclosing the fraud and the affirmative defenses raised are irrelevant. Specifically, Plaintiff sought to hold two different entities responsible for the same set of injuries. Plaintiff asserted that Defendants were responsible for his on-the-job injuries and disability, contending they discriminated against Plaintiff on the basis of his race and disability, and had willfully violated his rights under the Family and Medical Leave Act ("FMLA").  However, as subsequently revealed at trial, Plaintiff previously sued two private entities, Morningside Heights, SN, and J&F Meat Market Corp. ("J&F Meat Market"), for the exact same injuries sustained and disability incurred as claimed in this action; that case was settled, with Plaintiff obtaining sizeable monetary compensation. Plaintiff cannot be compensated twice for the same exact injuries, no matter how he attempts to disguise it.  Furthermore, when dismissed, plaintiff had substantially completed his case, and, as the Court observed, Plaintiff

had presented no meritorious proof as to any of his claims. As such, Plaintiff's motion for reconsideration should be denied.

A. **STATEMENT OF FACTS**

On February 27, 2015, Plaintiff allegedly sustained injuries to his hand and shoulder. *See* Docket No. ("Dkt. No.") 1, Complaint ¶ 27. Plaintiff thereupon sought monetary compensation from entirely separate entities for the exact same set of injuries. *See generally* Dkt. No. 1, and Dkt No. 142 Exhibit 1 ¶¶42-45. Initially, Plaintiff filed a state court action against J&F Meat Market on July 23, 2015, claiming that on February 27, 2015, he injured his hand and shoulder, and sustained a disability, emotional damages, and lost wages from slipping and falling on snow and ice in front of their property, contended **solely** because of their negligence. *See Id.* ¶¶27, 42-47. Plaintiff claimed that he was "severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock, and mental anguish, great physical pain and emotional upset, some or which injuries are permanent in nature and duration." *Id*. ¶42. Moreover, in the Verified Bill of Particulars submitted in that action, Plaintiff specified his injuries and his subsequent surgeries. *See* Dkt No. 142 Exhibit 2 ¶¶15 and 18. Indeed, Plaintiff detailed his injuries, noting that he "may eventually require a total shoulder replacement" due to the alleged negligence of J&F Meat Market. *Id.* Notably, nowhere in those pleadings does Plaintiff mention highly salient operative facts, as pleaded in this action, including that he was on duty at the time pursuant to his New York City Fire Department ("FDNY") employment, that his FDNY truck was involved, or, as later claimed in the subsequent federal action, that the FDNY or the City of New York had contributed to any of his injuries. Plaintiff settled that lawsuit and subsequently filed a stipulation of discontinuance on June 11, 2018. *See* Dkt No. 142 Exhibit 3.

Yet, only weeks later, Plaintiff filed the instant action in this Court, Dkt No. 1, where he, once again, claimed that on February 27, 2015, he injured his hand and shoulder, and

sustained a disability, emotional damages, and lost wages. However, this time, eschewing any of the allegations raised in the prior state action, Plaintiff instead claimed he fell from his FDNY truck. *See* Dkt. No. 1 ¶¶ 27-28; 68-70. Nowhere in the subsequent action did Plaintiff acknowledge his prior claims against J&F Meat Market, nor the circumstances alleged in that prior action, including the existence of snow and ice leading to slippery conditions, or the heart of his previous claim, that those unremedied conditions in front of the business had resulted in his fall, injuries, and permanent disabilities.

At trial in this action, and despite this, Plaintiff's counsel unabashedly asserted the theory, in his opening statement, that Defendants were singularly responsible for all of Plaintiff's injuries sustained on February 27, 2015, as well as his resulting disability, and that Defendants' alleged failure to accommodate Plaintiff had exacerbated his injuries. *See* Trial Transcript Dkt No. 142 Exhibit 4 ¶45 at 571:37. Later, upon cross-examination, Plaintiff entirely embraced his counsel's theory, testifying that his disability arose entirely *because of* the Fire Department, and needed subsequent surgery, all because Plaintiff had fallen from his FDNY vehicle. *Id*. At 563:6-17.

During cross-examination, Defendants questioned Plaintiff about his lawsuit against J&F Meat Market. *Id.* At 563-564. Upon the revelation that Plaintiff had advanced two different actions, against two different entities, seeking damages for the same injuries arising on the same day, the Court privately questioned counsel. *Id*. At 564:16. The Court asked Plaintiff's counsel, Mr. Barrett, about the prior lawsuit; Mr. Barrett denied knowledge. *Id.*, at 565:14-15. The Court recessed, suggesting that Plaintiff should consider withdrawing his action. *Id.*, at 568:6-11. Thereafter, outside the presence of the jury, the Court further questioned Plaintiff about the existence of the prior lawsuit and his willful pursuit of duplicative claims in this action.

3

*Id.*, at 568:1 – 569:1. During that questioning, the lead partner of the law firm representing Plaintiff, Derek Smith, of the Derek Smith Law Group ("DSLG"), interceded, apparently to spare Plaintiff from answering further probing questions from the Court. *Id*. At 568:25 – 569:8. Following yet another recess, rather than withdraw the action or seek to be relieved from representation, Plaintiff's counsel elected to continue the trial. Indeed, Plaintiff's attorneys attempted to justify and differentiate the prior lawsuit despite Plaintiff's patent attempt to obtain recovery from two separate entities for the exact same injuries. *Id.*, at 569:11 – 575:2. Due to this fraud and Plaintiff side's unrelenting support of the fraud, dismissal was the proper remedy and no lesser sanction could have remedied the fraud.

      Notwithstanding the aforementioned fraud, a jury could not have found in Plaintiff's favor. Indeed, when the Court dismissed this case, the trial was almost complete. Plaintiff had called both defendants to the stand, two witnesses, and had testified on his own behalf. Plaintiff presented no evidence that he was discriminated or retaliated against on the basis of his race or disability. *See* Memorandum & Order ("M&O") at 26. Nor did Plaintiff present any evidence that his rights under the Family and Medical Leave Act ("FMLA") were violated. *Id* at 27. Indeed, Plaintiff presented no proof that he even qualified for FMLA leave, let alone that his rights were willfully violated by the FDNY. *Id.* At 29. To the contrary, the only testimony at trial was that Plaintiff was treated differently from "everyone else" not because of his race or disability but because Plaintiff failed to follow the rules. *Id* at 25. Plaintiff offered no medical evidence regarding his disability, no paystubs or payroll records to prove his damages, nor much of anything else to prove his claims. *Id* at 30. Instead, Plaintiff and his witnesses either *perjured* themselves under oath or offered inconsistent testimony. See e.g. *Id* at M&O at 7 Plaintiff; at 15-16 Gregory Seabrook and Dudley Placide. Because Plaintiff failed to offer

4

sufficient proof of any of his claims from which the jury could find in favor of the Plaintiff, dismissal was the proper remedy.

## ARGUMENT

## POINT I

### PLAINTIFF FAILS TO MEET THE STANDARD OF RECONSIDERATION

The standard for granting reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matter, in other words, that might reasonably be expected to alter the conclusion reached by the Court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "It is thus 'well settled' that a motion for reconsideration is 'not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Justice v. City of N.Y.,* No. 13 CV 4016 (MKB), 2015 U.S. Dist. LEXIS 97657, at *2 (E.D.N.Y. July 27, 2015) (quoting *Analyticial Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012)) (internal citations omitted); see also *Range Rd. Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000) ("Such motions must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on issues that have been thoroughly considered by the court."). "In other words, 'reconsideration of a court's previous order is an extraordinary remedy to be employed sparingly in the interest of finality and conservation of scarce judicial resources.'" *Justice*, 2015 U.S. Dist. LEXIS 97657, at *2 (quoting *Hidalgo v. New York*, 11 CV 5074 (JS), 2012 U.S. Dist. LEXIS 117270, at *1 (E.D.N.Y. Aug. 20, 2012)). "In order to have been 'overlooked,' the decisions or data must have been put before [the court] on the underlying motion…and which, had they been considered, might have reasonably altered the result before the Court." *Henderson*

*v. City of N.Y*, No. 05 CV 2588 (FB) (CLP), 2011 U.S. Dist. LEXIS 130350, at *2 (E.D.N.Y. Nov. 10, 2011). Otherwise, reconsideration will be denied. *Metro. Opera Ass'n v. Local 100, Hotel Emples & Rest. Emples. Int'l Union*, No. 00 Civ. 3613 (LAP), 2004 U.S. Dist. LEXIS 17093, at *5 (S.D.N.Y. Aug. 27, 2004) (citation omitted); see also *Anglo Am. Ins. Grp., P.L.C. v. CalFed, Inc.*, 940 F. Supp. 554, 557 (S.D.N.Y. 1996) (successful motion for reconsideration "must present 'matters or controlling decisions the court overlooked that might materially have influenced its earlier decision'") (quoting *Morser v. AT&T Info. Sys.*, 715 F. Supp. 516, 517 (S.D.N.Y. 1989)); see also *Adams v. United States*, 686 F. Supp. 417, 419 (S.D.N.Y. 1988) (motion for reconsideration denied where the Government failed to point to law which was overlooked and "evidence of agency interpretation which the court is said to have overlooked lends no support to the Government's case").

Reconsideration should not be granted here. The Court did not overlook any controlling decisions or data. To the contrary, the Court meticulously scrutinized the State Court complaint and Verified Bill of Particulars before dismissing the case. Dkt. No. 4 570:6- 25; 571:1-4. Those documents revealed that Plaintiff sued two different entities for the same injuries and his resulting disability. Further investigation would not have changed anything. Simply put, Plaintiff's attempt at duplicative recovery warranted dismissal. As such, his motion for reconsideration should be denied.

Moreover, Defendants would be substantially prejudiced if Plaintiff is granted a new trial. To allow for reconsideration will unfairly give Plaintiff an unwarranted opportunity to re-litigate the case. At trial, Plaintiff had the opportunity to cross-examine two individual defendants. To subject the individual defendants to further cross-examination because of Plaintiff's own extraordinary failures is prejudicial to Defendants. Furthermore, Plaintiff

presented five total witnesses on his direct case, and elicited no worthwhile evidence from any of them to support his claims. *See* M&O at 2, 26 , 27 , 29, and 32. As the Court notes, as an alternative ground for dismissal in its M&O, "a reasonable jury could not find that Pitre was discriminated against or retaliated against because of his race or protected activity." *Id*. at 29. Based on this record, had the Court not dismissed the case, Defendants plainly would have been meritorious in a motion made pursuant to Fed. R. Civ. P. Rule 50, whether made following Plaintiff's case or, if warranted, after the jury's verdict. Thus, permitting reconsideration under these circumstances provides Plaintiff an unjustified retrial and, moreover, would be severely prejudicial to Defendants.

Likewise, Plaintiff advises that, if granted a new trial, he would not simply re-try this action, but rather would upend all the players. Dkt No. 145 at 22. Indeed, not only would counsel be replaced with a more "experienced" trial attorney, but, for no colorable reason whatsoever, Plaintiff would demand a different judge preside over the trial. *Id*. Having failed to elicit any relevant testimony for his claims, despite calling five witnesses to the stand, Plaintiff requests a second chance simply to excuse – and whitewash – his failure to properly litigate the case. In contrast, Defendants spent substantial time and resources in litigating this case, and preparing for and presenting at trial. To grant a new trial, against backdrop of the fraudulent circumstances attending dismissal, opposing counsel's poor lawyering, and Plaintiff's wholesale lack of evidence presented at trial, lies fully at Plaintiff's feet. His motion for reconsideration should be denied.

## POINT II

## THE COURT PROPERLY DISMISSED THIS CASE FOR FRAUD ON THE COURT.

A. The Underlying Incident And Damages Are The Same in Both Lawsuits, Warranting Dismissal.

As the Court explained in the M&O, "[o]bviously, if the state court settlement compensated Pitre for lost income or other economic damages or pain and suffering in whole or in part, he would not be permitted to recover for the same injuries in this case, even though the two cases proceeded on different legal theories." *See* M&O at 6 (internal citations omitted). This is exactly what Plaintiff is trying to do. Dissatisfied with his settlement in state court, Plaintiff brought the federal action in an attempt to recover more money for the exact same injury. As discussed above, one injury gets compensated a single time, regardless of Plaintiff's satisfaction with that compensation. Plaintiff cannot continue to sue different defendants for the same injuries until suitable compensation is attained. Doing so, as Plaintiff did here, constitutes fraud. Thus, each of Plaintiff's arguments fail.

First, Plaintiff argues that the two lawsuits are different because the damages in State Court concern the pre-accident failure to clear the sidewalk by J&F Meat Market and the damages in Federal Court concern the post-accident alleged discrimination by the FDNY. Dkt No. 145 at 11. However, this is not accurate. The damages are the exact same, yet Plaintiff is seeking multiple ways to be compensated for them. Plaintiff's state complaint averred that "**solely**" due to the state defendants poor maintenance of the sidewalk, he became "lame and disabled," suffered "severe nervous shock and mental anguish," and lost time from work and "in the future will necessarily suffer additional loss of time and earnings from employment." Dkt No. 142 Exhibit 1 ¶¶35; 45-46. The Verified Bill of Particulars supported these claims and a claim for his subsequent surgery. Dkt No. 142 Exhibit 2 ¶. Neither in the state complaint, nor in

8

the Verified Bill of Particulars, did Plaintiff attribute blame to the FDNY or mention a lack of accommodation. Yet weeks after receiving a settlement in that case, plaintiff filed a Federal lawsuit alleging that the exact same injuries were caused by Defendants' alleged discrimination and failure to accommodate after the accident. Dkt No. 142 Exhibit 1 at 2; Dkt No. 1 ¶¶ 27-28; 68-70. Plaintiff cannot have it both ways. Either J&F Meat Market defendants solely caused it, or Defendants caused it, but not both.

Second, Plaintiff argues that that the damages in the federal case are different because they are "related to Plaintiff's diminished earning capacity over the span of his adult life after the age of 46." Dkt No. 145 at 11. However, the State Court case already compensated Plaintiff for his broader claim of lost future earnings. Specifically, he claimed that "in the future [he] will necessarily suffer additional loss of time and earnings from employment." Dkt No. 142 Exhibit 1 ¶45. Thus, because Plaintiff was already compensated for his future earning potential, he can no longer seek such compensation.

Finally, Plaintiff argues that the two lawsuits are different based on the compensation Plaintiff ultimately received in the state case versus the compensation he requested in the federal case. Dkt No. 145 at 11. Simply requesting different amounts in different lawsuits does not change the incident or the injury itself. They remain the same, and Plaintiff sought to recover twice for the same injury. As such, dismissal was the proper remedy imposed by the Court.

B. Plaintiff's Remaining Arguments Are Irrelevant as They Misapprehend the True Basis for The Court's Dismissal

The dismissal in this case is based squarely on the fraud Plaintiff committed. Yet Plaintiff continues to equivocate in his motion for reconsideration, as discussed above. Plaintiff's

9

prior mention of the State Court case at his deposition, as convoluted and confusing as it was, is of no moment. Regardless of when Plaintiff disclosed the prior lawsuit, the federal lawsuit cannot proceed. Plaintiff alleged that J&F Meat Market was responsible for his injuries sustained on February 27, 2015 and resulting disability. Then, at trial, Plaintiff's counsel asserted the theory that Defendants were singularly responsible for all of Plaintiff's injuries sustained on that date, as well as his resulting disability, and that Defendants' alleged failure to accommodate Plaintiff had exacerbated his injuries. *See* Dkt No. 142 Exhibit 4 at 571:37. Plaintiff supported his counsel's theory during cross-examination by testifying that his disability arose entirely *because of* the Fire Department, and needed subsequent surgery, all because Plaintiff had fallen from his FDNY vehicle. *Id.* at 563:6-17. Without debate, Plaintiff cannot recover twice for the same exact injuries.

Plaintiff also argues that Defendants should have raised an affirmative defense in order to offset the damages. This argument completely misses the point. The relief here is dismissal, not an offset of damages. Plaintiff cannot recover twice, and that is why the second lawsuit is, and should remain, dismissed.

## POINT III

### A LESSER SANCTION CANNOT REMEDY THE FRAUD COMMITTED UPON THE COURT.

Under the Court's inherent powers and 28 USCS § 1927 ("§ 1927"), it has the discretion to, among other things, dismiss a case with prejudice. *Rossbach v. Montefiore Med. Ctr.*, No. 19-5758, 2021 US Dist. LEXIS 14703 (S.D.N.Y. Aug. 5, 2021). Indeed, the law firm employing Plaintiff's counsel, DSLG, handled the *Rossbach* case where dismissal with prejudice was affirmed by the Second Circuit approximately six months ago. *See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 131 (2d Cir. 2023). In that case, Second Circuit explained that a

"primary aspect of the discretion that attends a federal court's inherent power is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. . . . [O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion." *Id* at 141 (internal citations omitted). Having reviewed the district court's finding of fraud committed by Plaintiff, and defended by DSLG, the Second Circuit affirmed such outright dismissal of the action. *Id.* Likewise here, this Court should maintain its dismissal of this case as a result of the fraud committed by this Plaintiff and once again defended by DSLG.

*Rossbach* also affirmed the district court's determination that no lesser sanction would be sufficient to remedy the impact of the Plaintiff's conduct or to deter future conduct. *Id* at 141-142. Permitting the trial to proceed would be a "futile waste of judicial resources." *See* M&O at 24. This Court, here, also examined the waste of judicial resources throughout the M&O, but particularly in the section entitled the "The Lack of Proof." *Id.* After putting on five witnesses, including Plaintiff himself, Plaintiff failed to establish any of his claims. *Id.* In fact, as the Court notes, Both Plaintiff and another witness, Seabrook, testified that Plaintiff was treated differently than everyone else; given the fact that those comparators were Black and Hispanic and involved in prior litigation against the FDNY, as the M&O observed, this evidence shows that Plaintiff was not treated differently for any discriminatory or retaliatory reason. *Id* at 25. This is, of course, simply one example of many which illustrate the futility of any lesser remedy than dismissal.

Moreover, like *Rossbach*, no other sanction could remedy the fraud committed on the Court here. Indeed, Plaintiff suggests no other appropriate sanction. *See* Dkt No. 145, generally. Instead, he offers that the Court should have stayed the case to further investigate. *Id.* at 7. No legitimate basis exists for that insufficient and altogether imprecise measure. Plainly,

11

Plaintiff cannot recover from two different entities for the exact same injuries merely by masking them under two different legal theories.  Further investigation would not have led to a different conclusion.

Plaintiff's counsel further cites to cases visiting lesser sanctions, such as precluding evidence or a missing evidence charge, but neither of these would remedy the fraud or deter future conduct. Dkt No. 145 at 6-7. None of these suggestions would have corrected the very problem herein: Plaintiff's attempt at recovering twice for the exact same injury. Plaintiff does not offer what evidence could be precluded or what "missing evidence" exists to draw a negative inference in order to remedy the fraud. *Id.* Such a suggestion is nonsensical. No amount of evidence preclusion or jury charges will allow Plaintiff to try this case to recover from Defendants what he already recovered from another entity for the exact same injuries. Plaintiff committed fraud. DSLG and the representative attorneys defended and continue to defend this fraud. Like in *Rossbach*, dismissal was – and remains – amply warranted.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiff's motion for reconsideration and a new trial and grant and such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 15, 2024

HON. SYLVIA O. HINDS-RADIX
Corporation Counsel of the
  City of New York
Attorney for Defendants
100 Church Street
New York, N.Y. 10007
Tel.: (212) 356-2507/(212) 356-3177

By:    *Lauren Silver*    /s/
           Lauren Silver
           *Senior Counsel*


           *Desiree Alexander*    /s/
           Desiree Alexander
           *Senior Counsel*

13