**Commission on Human Rights**

---

**SECTION B: Public Accommodation** (fill out only if your inquiry involves a public accommodation)

Basis of Discrimination -- Check all that apply:
☐ Race    ☐ Age    ☐ Religion/Creed    ☐ National Origin    ☐ Sexual Orientation
☐ Color    ☐ Gender    ☐ Gender Identity    ☐ Marital Status    ☐ Alienage/Citizenship Status
☐ Disability/Failure to Accommodate

---

**SECTION C: Employment** (fill out only if your inquiry involves employment)

How many employees does your employer have? ☐ More than 4    ☑ More than 15

Are you in a union? ☑ Yes   ☐ No   Which union? _____

Basis of Discrimination -- Check all that apply:
☑ Race    ☐ Color    ☐ Sexual Orientation    ☐ Alienage/Citizenship Status
☐ Gender    ☐ Gender Identity    ☐ Credit History    ☑ Disability/Failure to Accommodate
☐ Pregnancy    ☐ Marital Status    ☑ National Origin    ☐ Arrest/Conviction Record
☐ Age    ☐ Religion/Creed    ☐ Unemployment Status    ☐ Status as victim of domestic violence, sexual violence, or stalking

---

**SECTION D: Explain**

Briefly describe what happened:

_____
_____
_____
_____
_____

---

## OFFICE USE ONLY*****OFFICE USE ONLY *****OFFICE USE ONLY

| Date of Intake | Intake Number |
|---|---|

**Attorney Assigned**

1. Statute of Limitations deadline: LEB _____    EEOC _____

2. How did this person hear about the Commission? (check all that apply)
☐ CRB    ☐ Social Services    ☐ City Agency    ☐ Internet    ☐ Elected Official
☐ Community Org.    ☐ Commissioner    ☐ CCHR Website    ☐ 311    ☐ Private Lawyer
☐ Social Media    ☐ Legal Services Org. ☐ Press    ☐ TV    ☐ Radio
☐ Newspaper    ☐ Email    ☐ Flyer/Brochure    ☐ Taxi TV    ☐ Other Complainant
☐ Advertisement (Please specify if possible) _____
Details: (If Elected Official, City Agency, Commissioner, or Other, write in the name/more information)
_____

3. Language Access Issues:
a. Limited English Proficient? ☐ Yes   ☐ No
b. Primary Language of Complainant: _____
c. In which language was intake conducted? _____
d. Method of interpretation: ☐ LEB staff ☐ Phone    ☐ Volunteer ☐ Paid Interpreter

4. Were referrals made? ☐ Yes   ☐ No    Where? _____

5. Was a complaint filed? ☐ Yes   ☐ No

**Approved by**

 **Commission on Human Rights**

Date 3/12/16   Intake #

# INTAKE FORM

## Your Information

**Name** Edward Pine

**Preferred Title** (e.g. Dr., Ms., Mx) Mr.

**Date of Birth** 2/28/71

**Address** 130-59 115th Street

**City** South Ozone Park

**State** NY

**Zip** 11420

**Cell Phone** (732) 801-0349

**Other Phone**

**Occupation** Communication Electrician

**Email**

**Race/Ethnicity** Hispanic/Latino

**Primary Language** English

**Family Status:** ☑ Married ☐ Domestic partner ☐ Single ☐ Other _____

**Emergency Contact**

## Information About the Person or Entity that Took Action Against You

**Name** _____

**Company if any** Fire Dept of the City of NY  Plant Operation

**Address** 240 E 111th Street

**City** New York

**State** NY

**Zip** 10029

**Phone** (212) 987-8450

**Second Contact**

**Address**

**City**

**State**

**Zip**

**Phone**

**Date of most recent incident of discrimination:** 2014 to present (ongoing)

**Borough where incident occurred:** Manhattan, Brooklyn, Bronx

**Have you filed any complaint about this incident in any other place?** ☐ Yes ☑ No

If yes, check the place or describe below:
☐ EEOC ☐ NY State Division of Human Rights ☐ HUD ☐ HPD ☐ NYCHA ☐ Court
☐ Other: _____

**My inquiry has to do with:**
(check one, and then fill out the next section depending on your answer)
☐ Housing (Complete Section A and D)
☐ Public Accommodation (store, restaurant, taxi, dentist office, etc.) (Complete Section B and D)
☑ Employment (Complete Section C and D)
☐ Discriminatory Harassment (Complete Section D)
☐ Bias-based Profiling by Law Enforcement (Complete Section D)

**Have you ever had an appointment with the Commission before?**
☐ Yes ☐ No

List when, and the result of your inquiry:
_____
_____
_____
_____

## SECTION A: Housing (fill out only if your inquiry involves housing)

**Type of Housing:**
☐ Co-op ☐ Commercial ☐ Rental ☐ Shelter
☐ SRO ☐ Owner-occupied ☐ Condo **Approx. Number of Units** _____

**Basis of Discrimination -- Check all that apply:**
☐ Race ☐ Color ☐ Presence of Children ☐ Marital Status
☐ Gender ☐ Gender Identity ☐ National Origin ☐ Sexual Orientation
☐ Religion/Creed ☐ Occupation ☐ Lawful Source of Income ☐ Alienage/Citizenship Status
☐ Age ☐ Disability/Failure to Accommodate

**CITY OF NEW YORK**

**COMMISSION ON HUMAN RIGHTS**

-----------------------------------------------------------------x

In the Matter of the Complaint of:                                    Verified Complaint

Edward Pitre
Complainant,                                    Case No.

-against

The City of New York,
Fire Department of the City of New York
Respondent.
-----------------------------------------------------------------x

1.      I have personal knowledge of the facts below. If called upon to testify to those facts, I could do so truthfully. I am over 18 years of age and competent to testify to the matters stated in this declaration. I make this declaration based on my personal knowledge. This declaration is given voluntarily. I have not been coerced or threatened in any manner in exchange for this declaration.

2.      I reside at 130-59 115th Street, South Ozone Park, N.Y. 11420.

3.      I am a communication electrician at the City of New York Fire Department ("FDNY"). They are located at 240 E. 111th Street, New York, NY 10029

4.      I filed a lawsuit against the FDNY in May of 2012. My claim was settled around the fall of 2014. After the lawsuit, I continued to work in the same job and was subjected to retaliation and harassment.

5.      I was also injured on the job in February 2015. After my injury I made several requests for reasonable accommodations that were denied.

6.      Shortly after the lawsuit, my colleagues moved my FDNY commuter vehicle in front of a bus stop while I was out of town. When I returned, I was reprimanded and my driving

6.      Shortly after the lawsuit, my colleagues moved my FDNY commuter vehicle in front of a bus stop while I was out of town. When I returned, I was reprimanded and my driving privileges taken away for a month. To my knowledge, no other electrician has had their commuter vehicle privileges taken away during my twenty-five years of employment.

7.      As soon as my driving privileges were reinstated, my commuter privileges were removed indefinitely for some other reason.

8.      In the lawsuit, I complained specifically about the discriminatory actions of Senior Supervisor, John Fiorentino ("Fiorentino"). After the lawsuit, he would call at 7:01 A.M. everyday I was scheduled to work to ask my supervisor if I was on time for work.

9.      At the end of 2014, I signed up for a specific day for fiber optic training. Fiorentino changed the schedule so that I was scheduled to attend the training on the same day as him. When I was in the training, Fiorentino moved his chair to face me for the entire training. One day of training I left early and Fiorentino forced the instructor to mark me as AWOL for the entire day.

10.     In February of 2015, I was injured on the job when I fell off the side of a truck. I had injuries to both my shoulder and hand.

11.     I was out of work due to my injuries. During this time I was taken off payroll and the FDNY refused to compensate me for my time off. Additionally, the FDNY told the Worker's Compensation Board that I did not take any time off from work.

12.     I applied for a discretionary grant from the city because I had exhausted my vacation and sick time. I was denied it more than once although I am aware of at least three white men who have had a discretionary grant awarded in the last five years.

13.     I submitted a doctor's note for an absence from work. Fiorentino rejected this doctor's note because it did not have doctor's stamp. He then initiated an IG investigation of the missing doctor's stamp.

14.     In April of 2015, my entire Manhattan crew was informed that per Fiorentino's orders that I no longer had seniority and had to answer to all junior employees. When I asked Fiorentino why, he said I had no seniority because everyone hates me.

15.     I was denied a transfer to Queens. I requested this reasonable accommodation to be closer to my physical therapist. At first they just didn't respond to my request, and then I was told it was verbally denied and would not be denied in writing. When I asked why, I was told: you're disabled, what does it matter? Another electrician requested a transfer around the same time and was granted it.

16.     I began to get a series of write-ups. Each time I was written up, I asked for my union representative to be present and management denied my requests. I was forced to sign the write-ups. On May 27th, I received an unjustified write-up for lateness on my voluntary time and unscheduled leave without pay when I had vacation.

17.     In July of 2015, I received a good evaluation from my direct supervisor, Miguel Correa ("Correa"), afterwards Correa was spoken to by Fiorentino for giving me a good evaluation.

18.     In August of 2015, Correa received an e-mail from Fiorentino that I was no longer allowed to leave the borough during work hours on assignments.

19.     Shortly after my good performance evaluation, I was written up again.

20.     On September 11, 2015, I had surgery on my shoulder for on the job injury. The following Monday, my medical benefits were terminated. Since then I have still not received any

medical benefits. Additionally, I have not received workers compensation benefits in five months.

21.    At the end of 2015, I requested to return to work on light duty. My request for a reasonable accommodation was denied. To my knowledge, there are other workers that have been given light duty positions when Fiorentino so choses.

22.    FDNY subjected me to retaliation and retaliatory harassment by writing me up and creating obstructions and difficulties in my work after I engaged in protected activity by filing and settling a lawsuit against the FDNY.

23.    FDNY discriminated against me because of my race and national origin.

24.    FDNY failed to engage in an interactive process and denied me reasonable accomodations for my disability.

25.    The actions of FDNY have affected me and my entire family. The stress has compromised my relationship with my wife and family, and has affected my mental health.

26.    As a result of the forgoing, the City of New York Fire Department violated my rights under Title VII, the New York State Human Rights Law, and the New York City Human Rights Law.

I, the undersigned, hereby declare under penalty of perjury that the statement I made above is true to the best of my knowledge, information, and belief.

Edward Pitre

Subscribed and sworn before me
This 1⁄5 day of May, 2016

Signature of Notary Public

AMY ELIZABETH ROBINSON
Notary Public, State of New York
No. 02RO6306036
Qualified in Kings County
Commission Expires June 16, 2018

County: Kings    Commission expires June 16, 2018

STOLL, GLICKMAN & BELLINA, LLP


By: _____

Saranicole A. Duaban, Esq.
475 Atlantic Avenue, 3rd floor
Brooklyn, New York 11217
(718) 852-3710
sduaban@stollglickman.com
*Attorneys for Plaintiff*





# FIRE DEPARTMENT
48-34 35TH STREET          LONG ISLAND CITY, NY 11101

DANIEL A. NIGRO – FIRE COMMISSIONER

JOSEPH M. MASTROPIETRO, *Assistant Fire Commissioner*
*Bureau of Facilities Management*
BMD. Construction. Design. OSHA Unit, & Plant Operations

**TO:**      **Edward Pitre**
             Communication Electrician

**FROM:**    **Miguel Correa**
             Supervisor of Communication Electricians

**DATE:**    May 27th, 2015

**SUBJECT:  SUPERVISOR'S CONFERENCE WITH CE – Edward Pitre**

This memorandum will confirm our conversation, held on ___5/27/2015___ during which, the following was brought to your attention;

## INCIDENT 1

Your start time is at 7:00am. On the following dates within the past one (1) month, you had seven (7) occurrences of lateness. They are as follows;

April 17th, you clocked in at 7:30am  — Friday

X = April 19th, you clocked in at 7:09am — Sunday

April 23rd, you clocked in at 7:45am — Thursday

X April 26th, you clocked in at 7:44am — Sunday

May 7th, you clocked in at 7:19am, — Thursday

May 14th, you clocked in at 7:15am — Thursday

X May 16th, you clocked in at 7:02am — Saturday

May 22nd, you clocked in at 7:15am  — Friday

## CORRECTIVE MEASURE:

As per *Red Book chapter 9 Absence Control Manual, page 12m section B, employees are obligate to report to work in accordance with their scheduled arrival time. Employees not at their work locations at their scheduled time are considered late.* Excessive lateness will not be tolerated as it impacts operations and planning of manpower and deployment of staff into the field. You should be able to give yourself ample time to arrive on time to your work location.

## INCIDENT # 2

Within the 2015 calendar year, you had five (5) unscheduled LWOP (leave without pay) absences. The incidents are as follows;

January 23rd
February 17th
May 5th
May-11th
May-12th

 missing has (40)

## CORRECTIVE MEASURE:

As per *Red Book chapter 9 Absence Control Manual, page five (5) section A, all leave usage must be requested be completing a time and leave request form for a supervisor's review and approval.* Proper notification needs to be given to your Supervisor so that work load distribution and allocation of resources can be achieved. Unscheduled leave of absence is disruptive to the Unit's day-to-day Operations.

*Future incidents of a similar nature may result in disciplinary action.*

A copy of this memorandum will be inserted into your personnel folder.

_____
**Supervisor's Signature**

_____
**Date**

**RECEIPT:**

I have been given a copy of this Statement, which is being placed on record and understand that I have the right to submit a reply in writing for the record if I so choose.

_____
**Employee's Signature**

_____
**Date**



# FIRE DEPARTMENT
48-34 35TH STREET          LONG ISLAND CITY, NY 11101

DANIEL A. NIGRO – FIRE COMMISSIONER

JOSEPH M. MASTROPIETRO, *Assistant Fire Commissioner*
*Bureau of Facilities Management*
BMD, Construction, Design, OSHA Unit, & Plant Operations

**TO:**      **Edward Pitre**
             Communication Electrician

**FROM:**    **Miguel Correa**
             Supervisor of Communication Electricians

**DATE:**    **AUGUST 12, 2015**

**SUBJECT:**   **SUPERVISOR'S CONFERENCE WITH CE – EDWARD PITRE**

This memorandum will confirm our conversation, held on ___08/12/2015___ during which, the following was brought to your attention;

## INCIDENT # 1

You notified your Supervisor that you needed to call out of work (*sick, annual leave, leave with no pay*) on the following dates and times;

5/5/2015 at 6:46am (14 minutes before shift start) notified of sick leave

5/26/2015 at 7:07am (7 minutes after shift start) notified of sick leave

6/17/2015 at 6:17am (43 minutes before shift start) notified of personal business

6/18/2015 at 6:14am (46 minutes before shift start) notified of sick leave

7/28/2015 at 6:52am (8 minutes before shift start) notified of sick leave

8/3/2015 at 6:10am (50 minutes before shift start) notified of sick leave

## CORRECTIVE MEASURE:

As per Fire Department *Time and Leave Manual in chapter 9 of your Red Book, Part II: Sick leave benefits, section A.* "Employees must notify their supervisor of their illness at least one (1) hour prior to their scheduled reporting time".
This protocol has been established by the Department to allow Supervisors adequate time to make changes to work assignments. Your late notification impacts operations. If you are ill and cannot make it to work, contact your supervisor immediately.

## INCIDENT # 2

After your May 27th Supervisory Conference in regards to your excessive lateness, you were late the following days;

Saturday, June 6th clock-in @ 7:25am
Sunday June 7th, clock in @ 7:15am
Wednesday, June 24th, clock in @ 7:05am

**CORRECTIVE MEASURE:**

As per *Red Book chapter 9 Absence Control Manual, page 12, section B, employees are obligate to report to work in accordance with their scheduled arrival time. Employees not at their work locations at their scheduled time are considered late.* Excessive lateness will not be tolerated as it impacts operations and planning of manpower and deployment of staff into the field. You should be able to give yourself ample time to arrive on time to your detailed work location.

---

**INCIDENT # 3**

On the following weekends, you notified your Supervisor via the weekend overtime availability chart that you were available to work overtime and you later declined with late notification;

Saturday 6/27/2015

Saturday 6/13/2015

Saturday 5/23/2015

Sunday 5/3/2015

**CORRECTIVE MEASURE:**

Weekend assignments are to be treated as regular scheduled working days when elected to work as per weekend overtime availability sheet. Future failure to comply will result in refusal of weekend overtime work for time duration to be determined by Management.

---

**INCIDENT #4**

On the following dates, you were AWOL (Absent without leave). You did not contact your supervisor and did not show up for work;

June 19th, 2015
August 4th, 2015
August 5th 2015
August 6th 2015
August 7th 2015
August 10th 2015

**CORRECTIVE MEASURE:**

As per *Red Book chapter 9 Absence Control Manual, page 15, section C titled Absence without Leave (AWOL),* All employees are required to report to work as scheduled and work a complete shift. In situations of unplanned absence, an employee is required to contact his/her supervisor at least one (1) hour prior to his/her expected reporting time to request approval for leave.

## INCIDENT #5

On Monday, June 22nd, while on a job assignment with your assigned partner, you decided to leave the job early and drive back to the Manhattan garage to clock-out at 14:20. You stated you called the Manhattan garage land line knowing that your Supervisor was on annual leave that day. Your early departure from work was not authorized.

On March 19th, you clocked in at 5:59am and clocked out at 7:00am at the Manhattan garage. Your Supervisor was on annual leave and you did not notify any management of your departure until 9:45am when Senior Supervisor, John Fiorentino received a call from Gregory Seabrook notifying him that you left work due to shoulder pain.

## CORRECTIVE MEASURE:

As per *Red Book chapter 9 Absence Control Manual, page 15, section C titled Absence without Leave (AWOL),* All employees are required to report to work as scheduled and work a complete shift. Employees may not leave work prior to their scheduled departure time, unless the supervisor has given prior permission.

If your immediate Supervisor is not available, contact the main Fort Totten number (718) 281-3917 or contact John Fiorentino (917) 769-1069 or Director, Jan Borodo (347) 386-3919 directly to inform management of necessary early departure from work. Leave a detailed message if any staff member is not available to take your call. All attempts should be made to contact a Supervisor.

*Future incidents of a similar nature will result in disciplinary action.*

A copy of this memorandum will be inserted into your personnel folder.

Miguel A. Correa
Supervisor's Signature

08/12/15
Date

**RECEIPT:**

I have been given a copy of this Statement, which is being placed on record and understand that I have the right to submit a reply in writing for the record if I so choose.

Disagree with most of Dates under Protest & Review
**Employee's Signature**

**Date**

## C/E Pitre

Fiorentino, John (FDNY)

**Sent:** Monday, August 03, 2015 11:27 AM

**To:** Correa, Miguel (FDNY)

**Cc:** Mastropietro, Joseph (FDNY); Borodo, Jan (FDNY); Granieri, Deborah (FDNY)

---

Miguel

Be advised, that from this point forward, C/E Pitre is not to leave his Borough for any reason (detail out, supplies, checks etc.) during working hours.


*John Fiorentino*
*Senior Supervisor*
*FDNY, Bureau of Facilities*
*Plant Operations*
*316 Sgt. Beers Avenue*
*Cluster 1 Box 16*
*Fort Totten, N.Y. 11359*
*John.Fiorentino@fdny.nyc.gov*
*Office: (718) 281-3932*
*Mobile: (917) 769-1069*
*Fax: (718) 281-3855*



# FIRE DEPARTMENT

## CITY OF NEW YORK



## PERFORMANCE EVALUATION

## STATEMENT OF UNDERSTANDING

I have been given a copy of my evaluation for the period of

04/01/2015      to      06/30/2015 .

If I do not agree with its contents, I understand that I have the right to submit a written reply which will be attached to the file copy.

_____      _____

Employee's Signature              Date



# NON-MANAGERIAL PERFORMANCE EVALUATION FORM (FDNY)

APPRAISAL PERIOD FROM: 04/01/2015 TO: 06/30/2015

☑ ANNUAL    ☐ PROBATIONARY

| EMPLOYEE'S NAME (Last Name, First Name) | EMPLOYEE ID # | PRESENT CIVIL SERVICE TITLE |
|---|---|---|
| Pitre, Edward | 510722 | Communication Electrician |

| OFFICE TITLE | CIVIL SERVICE STATUS: |
|---|---|
| Communication Electrician | ☑ PERM  ☐ PROV  ☐ PROB  ☐ NON-COMP  ☐ LABOR CLASS |

| BUREAU | DIVISION/UNIT | DATE ASSIGNED |
|---|---|---|
| Communications | Plant Operations | 10/30/2000 |

## INDIVIDUAL TASK RATINGS

**TASK NO.** 1

TASK DESCRIPTION:
Snake and install, maintain, and repair the copper and fiber cable line network within buildings, overhead and underground.  Locate, clear, and repair troubles in electrical cable and fiber optic cable, and line network.

STANDARDS:
1. Locate circuit faults, conduct installations, repairs and restore circuits in a minimal amount of time.
2. Submits accurate, legible, and detailed daily work orders at end of tour
3.

ACTUAL PERFORMANCE:
Mr. Pitre has shown the ability to efficiently troubleshoot or repair open or grounded circuits, and  he provides informative work reports to help keep accurate records.

TASK RATING:

☐ Unratable   ☐ Unsatisfactory   ☐ Conditional   ☐ Good   ☑ Very Good   ☐ Outstanding

**TASK NO.** 2

TASK DESCRIPTION:
Replaces and/or extends cable or aerial line plant, maintains and replaces damaged fire alarm posts and poles including excavating and replacing concrete as necessary.

STANDARDS:
1. Completes job in a timely and safe manner
2. Performs equipment removal, replacement and testing as required.
3. Submits accurate, legible, and detailed daily work orders at end of tour

ACTUAL PERFORMANCE:
Mr. Pitre has worked hard to complete assignments, has shown an understanding of the specifications and the needs of our operations.  He has displayed concern for the safety of the public and pride for the task at hand.  He also submits detail work orders.

TASK RATING:

☐ Unratable   ☐ Unsatisfactory   ☐ Conditional   ☐ Good   ☑ Very Good   ☐ Outstanding

**TASK NO.** 3

**TASK DESCRIPTION:**

Operates compressor, pneumatic, hydraulic, and power equipment as required in the work, operates motor vehicle.

**STANDARDS:**

1. Maintains valid license to opearte motor vehicle & operates vehicle within NYC guidelines.
2. Treats and maintains tools and equipment with proper care at all times.
3. Documents loaned department equipment from warehouse

**ACTUAL PERFORMANCE:**

The maintenance of Mr. Pitre's equipment and company vehicle to department standards are satisfactory.

**TASK RATING:**

☐ Unratable　☐ Unsatisfactory　☐ Conditional　☐ Good　☑ Very Good　☐ Outstanding

---

**TASK NO.** 4

**TASK DESCRIPTION:**

Keeps accurate and legible records of work order assignments, provides overtime availability notification to supervisor and preparation of application for leave requests as per department policy and procedures within scheduled deadlines.

**STANDARDS:**

1. Adheres to Department Time & Leave Manual in regards to the Leave Requests
2. Provides daily detailed work orders to supervisor identifying all work completed, in legible manner
3. Notifies Supervisor of weekend overtime availability by no later than 8:00am Thursday.

**ACTUAL PERFORMANCE:**

Do to unforeseen family issues, he has used LWOP on various occasions but he has kept me abreast of these situations.

**TASK RATING:**

☐ Unratable　☐ Unsatisfactory　☑ Conditional　☐ Good　☐ Very Good　☐ Outstanding

---

**TASK NO.** 5

**TASK DESCRIPTION:**

Arrives to work and to scheduled job site(s) prepared with proper tools and gear within scheduled time by Supervisor, Completes all repairs in a safe and professional manner and in accordance with industry standards. Notifies Supervisor of field conditions, problems, and progress/completion of work.

**STANDARDS:**

1. Arrives on time for the work day, prepares for the work assigned (Records, Tools, Equipment).
2. Promptly notifies Supervisor of field issues, problems, and successful completion of work.
3. Follows all safety procedures when on the job.

**ACTUAL PERFORMANCE:**

Mr. Pitre has shown improvement on his punctuality. He carries himself in a professional manner at the department facility or on the job site. He maintains a clean and safe work environment and also keeps a record of what he encounters out in the field.

**TASK RATING:**

☐ Unratable　☐ Unsatisfactory　☑ Conditional　☐ Good　☐ Very Good　☐ Outstanding

## EMPLOYEE'S OVERALL RATING

The overall rating is derived from the general tendency indicated by ratings for individual tasks, taking into consideration the importance of priority tasks. The supervisor should also consider factors not reflected in the tasks statements. These include the employee's attendance, punctuality, and impact upon the work of others.

**Other Factors:** (Elaborate on items not reflected in tasks but impact upon overall rating.)

Mr. Pitre has shown the ability to be a very good electrician. He has made great progress in his efforts to excel through adversity. He has also made progress in motivating others around him.

**OVERALL RATING:**

☐ Unratable   ☐ Unsatisfactory   ☐ Conditional   ☑ Good   ☐ Very Good   ☐ Outstanding

**PROBATIONARY:**

☐ 1st Qtr.   ☐ 2nd Qtr.   ☐ 3rd Qtr.   ☐ 4th Qtr.

☐ Retain   ☐ Terminate   ☐ Extend

**JUSTIFICATION FOR OVERALL RATING:**

Mr. Pitre has shown the ability to work well with coworkers, he has shown a willingness to teach new employees, and he has assisted other employees if asked upon. He has taken on a leadership role when necessary and he has shown a good work etiquette to ensure proper quality of work.

**PLANS TO IMPROVE EMPLOYEE'S PERFORMANCE:**

I plan to work closely with this individual to exchange ideas. Attempt to build a better working relationship to assure his best efforts on cable installation and maintenance of the department.

**PLANS TO CHANGE CONDITIONS AFFECTING EMPLOYEE'S PERFORMANCE:**

By working closely with Mr. Pitre, I hope to build on his morale and his importance in this division to get the best out of him.

**PLANS AND RECOMMENDATIONS TO CAPITALIZE UPON EMPLOYEE'S STRENGTHS:**

Mr. Pitre exhibits good abilities to troubleshoot, install, repair the underground cable plant, and also to rebuild circuitry when necessary. He has shown the ability to be a good leader.

**EMPLOYEE'S COMMENTS**

1) IS This EVALUTIN GOING TO AFFECT My PROMOTIN

2) What ABOUT all my missing TIME

3) NOH PAYMENT OF Holiday (STILL WAITING)

4) NO GLOVES, EQUIPMENT - BrokeH

5) CONSTANTLY Taining PEOPLE who suppose TO ELECTRICIAN

MIGUEL A. CORREA
**Supervisor's Name (Type or Print)**

**Supervisor's Signature**

07/31/15
**Date**

_____
**Reviewer's Name (Type or Print)**

_____
**Reviewer's Signature**

_____
**Date**

**EMPLOYEE'S STATEMENT:** My signature below indicates only that my evaluation has been discussed with me and that I have received a copy of the evaluation on this date. This does not necessarily indicate my agreement with the contents of this evaluation. I understand that I have a right to submit a written response to this evaluation.

_____
**Employee's Signature**

_____
**Date**

## RE: CR#77167

Correa, Miguel (FDNY)

**Sent:** Wednesday, April 15, 2015 2:53 PM

**To:** Borodo, Jan (FDNY); Fiorentino, John (FDNY)

**Cc:** Granieri, Deborah (FDNY)

---

Sir,

I have FM12007, 08, and 09 parked on the avenue. Pitre is the only C/E willing to take a vehicle to another location. I told him he can not get a commuter.

Miguel A. Correa
FDNY, Plant Operations - Manhattan
Supervising Communication Electrician
240 E. 111th Street
New York, New York 10029
corream@fdny.nyc.gov
Office : 212-987-8450
Fax :    212-987-8453
Cell :    347-909-0385

From: Borodo, Jan (FDNY)
Sent: Wednesday, April 15, 2015 2:52 PM
To: Correa, Miguel (FDNY); Fiorentino, John (FDNY)
Cc: Granieri, Deborah (FDNY)
Subject: RE: CR#77167

Is this Pitre's vehicle again, same as regarding the request to park at Union St.?

-----Original Message-----
From: Correa, Miguel (FDNY)
Sent: Wednesday, April 15, 2015 2:24 PM
To: Fiorentino, John (FDNY); Borodo, Jan (FDNY)
Cc: Granieri, Deborah (FDNY)
Subject: FW: CR#77167

Sir,

I spoke with the Battalion Chief yesterday and I am looking into a manner to rectify this situation. Any suggestions??

Miguel A. Correa
FDNY, Plant Operations - Manhattan
Supervising Communication Electrician
240 E. 111th Street
New York, New York 10029
corream@fdny.nyc.gov
Office : 212-987-8450
Fax :    212-987-8453
Cell :    347-909-0385

From: Engine 91 (FDNY)
Sent: Wednesday, April 15, 2015 1:43 PM
To: Correa, Miguel (FDNY)
Subject: FW: CR#77167

ιι. ∪κ#//16/

From: Rocco, Gary R. (FDNY)
Sent: Tuesday, April 14, 2015 12:02 PM
To: Engine 91 (FDNY); Battalion 12 (FDNY)
Cc: Rocco, Gary R. (FDNY)
Subject: FW: CR#77167

Please see the complaint below.  Do what you can to alleviate this.

Thank you,
Gary Rocco
Deputy Chief
Operations
718-999-2648

-----Original Message-----
From: Lamberti, Maria (FDNY)
Sent: Tuesday, April 14, 2015 9:28 AM
To: Rocco, Gary R. (FDNY)
Cc: Boyle, Christopher (FDNY)
Subject: CR#77167


Maria Lamberti
Executive Assistant to the
 Deputy Commissioner for Public Information FDNY
9 Metrotech Center, 8th Floor
Brooklyn, New York 11201
Office: 718-999-2831
Fax: 718-999-0033

-----Original Message-----
From: outgoingagency@customerservice.nyc.gov
[mailto:outgoingagency@customerservice.nyc.gov]
Sent: Thursday, April 09, 2015 6:12 PM
To: Lamberti, Maria (FDNY); Scott, Angel (FDNY); Kordova, Yelena (FDNY)
Subject: City of New York - Correspondence #1-1-1088545572 Message to Agency Head,
FDNY - Other Agency Complaint

Your City of New York - CRM Correspondence Number is 1-1-1088545572

DATE RECEIVED: 04/09/2015 18:03:38

DATE DUE: 04/23/2015 18:11:36

SOURCE: 3-1-1 Call Center

RELATED SR# OR CASE#: N/A

EMPLOYEE NAME OR ID#: N/A

DATE/TIME OF INCIDENT:

LANGUAGE NEED:

The e-mail message below was submitted to the City of New York via NYC.gov or the
311 Call Center. It is forwarded to your agency by the 311 Customer Service Center.
In accordance with the Citywide Customer Service standard, your response is due in

14 calendar days.

Message Type:

Topic: Other Agency Complaint

First Name: AKBAR

Last Name: ALI

Organization:

Apartment Number:

Street Address: 34-06 57 STREET

City: WOODSIDE

State: NY

Postal Code: 11377

Country:

Work Phone #: 9174599482

Email Address: INDOPAK2173@GMAIL.COM

Message: THE FIRE DEPARTMENT PARKS THEIR TRUCK IN FRONT OF THE BUISNESS ON 2173 2ND
AVENUE BETWEEN 111TH AND 112TH STREET. PREVENTING THE BUISNESS FROM MONEY. THIS HAS
BEEN FOR ALMOST A MONTH.

ASSIGNMENT
(PURSUANT TO SECTION 7.2 OF THE LEAVE REGULATIONS
FOR CAREER & SALARY PLAN EMPLOYEES)

INSTRUCTIONS:   EXECUTE IN DUPLICATE AND SUBMIT TO EMPLOYING AGENCY: THE EMPLOYING AGENCY WILL FORWARD THE
DUPLICATE COPY TO THE WORKER'S COMPENSATION SECTION OF THE LAW DEPARTMENT.

KNOW ALL MEN BY THESE PRESENTS, THAT I _____

RESIDING AT (FULL ADDRESS) _____

AND EMPLOYED BY THE CITY OF NEW YORK AS _____. ASSIGNED TO THE DEPARTMENT OF

_____, FOR AND IN CONSIDERATION OF BEING GRANTED A LEAVE OF ABSENCE
WITH PAY BY THE CITY OF NEW YORK, PURSUANT TO SECTION 7.2 OF THE LEAVE REGULATIONS FOR NEW YORK CITY EMPLOYEES
WHO ARE UNDER THE CAREER AND SALARY PLAN DO HEREBY ASSIGN, TRANSFER, AND SET OVER AND UNTO THE CITY OF NEW
YORK SUCH PART OF ANY AMOUNT THAT MAY HEREAFTER BECOME PAYABLE TO ME AS THE RESULT OF ANY JUDGEMENT OR
SETTLEMENT OF ANY ACTION OR CLAIM I MAY HAVE OR WHICH MIGHT BE BROUGHT ON MY BEHALF AGAINST SUCH PERSON OR
PERSONS, PARTY OR PARTIES, ASSOCIATIONS FOR CORPORATIONS AS MAY BE LIABLE TO ME OR TO MY REPRESENTATIVE FOR THE
INJURY SUBTAINED BY ME AND FOR WHICH I HAVE RECEIVED A LEAVE OF ABSENCE WITH PAY FROM THE CITY OF NEW YORK, AS
SHALL BE EQUAL TO THE PAY THAT I RECEIVE FROM THE CITY OF NEW YORK DURING MY LEAVE OF ABSENCE AND TO ANY
MEDICAL DISBURSEMENT MADE BY THE CITY OF NEW YORK IN BEHALF.

I HEREBY AUTHORIZE THE CITY OF NEW YORK TO COLLECT THE AMOUNT PAID ME BY THE CITY OF NEW YORK DURING MY
LEAVE OF ABSENCE AND THE AMOUNT OF ANY MEDICAL DISBURSEMENTS PAID BY THE CITY OF NEW YORK IN MY BEHALF FROM
THE PARTY OR PARTIES WHO SHALL BE OR BECOME INDEBTED TO ME AS THE RESULT OF ANY JUDGEMENT OR SETTLEMENT OF ANY
ACTION OR CLAIM ARISING FROM THE INJURY SUSTAINED BY ME FOR WHICH I RECEIVED A LEAVE OF ABSENCE WITH PAY FROM
THE CITY OF NEW YORK, AND I FURTHER STIPULATE AND CONSENT THAT THE SUMS SAID PAID TO ME BY THE CITY OF NEW YORK
DURING MY LEAVE OF ABSENCE AND ANY MEDICAL DISBURSEMENT PAID BY THE CITY OF NEW YORK IN MY BEHALF SHALL
CONSTITUTE A PRIMARY LIEN WHICH MAY BE PLACED OR CHARGED AGAINST SUCH ACTION, CLAIM AND/OR FUNDS SECURED AS A
RESULT OF SUCH ACTION OR CLAIM AS I MAY HAVE, REGARDLESS OF WHO MAY BE IN POSSESSION OF SUCH FUNDS.

I HEREBY AUTHORIZE AND DIRECT SUCH PERSON OR PERSONS, PARTY OR PARTIES, FIRM OR FIRMS, CORPORATION OR
CORPORATIONS WHO WILL OR MAY BECOME INDEBTED TO ME BY REASON OF THE AFORESAID INJURY SUSTAINED BY ME, TO PAY
TO THE CITY OF NEW YORK, AS SUCH ASSIGNEE, OUT OF THE AMOUNT DUE OR WHICH MAY BECOME DUE TO ME, SUCH SUMS AS ARE
CLAIMED BY SAID CITY FOR THE AMOUNT OF MONEY GIVEN TO ME BY THE CITY DURING MY LEAVE OR ABSENCE, AND FOR ANY
MEDICAL DISBURSEMENT PAID BY SAID CITY IN MY BEHALF, WITHOUT FURTHER NOTICE TO SUCH PARTIES FROM ME, AND I
THEREBY AGREE TO HOLD SUCH PARTIES HARMLESS ON ACCOUNT OF SUCH PAYMENTS.

I HEREBY AUTHORIZE AND DIRECT MY ATTORNEY OR ATTORNEYS, OR OTHER PERSON OR PERSONS, INTO WHOSE HANDS
OR POSSESSION ANY OF THE PROCEEDS SHALL COME, TO HOLD IN TRUST FOR AND TO PAY OVER TO THE CITY OF NEW YORK, SUCH
SUMS AS ARE CLAIMED BY SAID CITY TO HAVE WHEN PAID TO ME BY THE CITY DURING MY LEAVE OF ABSENCE AND SUCH SUMS, IF
ANY, WHICH HAVE BEEN PAID BY THE CITY FOR MEDICAL DISBURSEMENTS IN MY BEHALF.

IN WITNESS WHEREOF, I HAVE HERE UNTO SET MY HAND THIS _____ DAY OF _____, 19 ___

STATE OF NEW YORK   )   SS:           EMPLOYEE'S S.S.#: _____
COUNTY OF KINGS      )

ON THIS _____ DAY OF _____, 19_____ BEFORE ME PERSONALLY APPEARED

_____, TO ME KNOWN AND KNOWN TO ME TO BE THE INDIVIDUAL DESCRIBED IN AND
WHO EXECUTED THE FOREGOING INSTRUMENT AND DULY ACKNOWLEDGED TO ME THAT (S)HE EXECUTED THE SAME.

_____

I HAVE FULL KNOWLEDGE OF ASSIGNMENT ABOVE.

ATTORNEY'S SIGNATURE _____

NAME AND ADDRESS OF THE DEFENDANT _____

_____

NAME AND ADDRESS OF THE LIABILITY INSURANCE CARRIER _____

_____

## Fw: Edward Pitre

Borodo, Jan (FDNY)

**Sent:** Wednesday, September 02, 2015 08:39
**To:** Correa, Miguel (FDNY)
**Cc:** Florentino, John (FDNY)
**Attachments:** 30 GRANT REQ FORM.pdf (53 KB)

Please share this attached with pitre as an option. It is time sensitive. Please also have him call downtown HQ to advise them on his decision. If he goes with workers comp, he will be lwop until determination is made.

**From:** Martinez, Mauro (FDNY) [mailto:Mauro.Martinez@fdny.nyc.gov]
**Sent:** Tuesday, September 01, 2015 12:28 PM
**To:** Borodo, Jan (FDNY)
**Cc:** Swithers, Jay (FDNY); Polanco, Melissa (FDNY)
**Subject:** Edward Pitre

Mr. Borodo, as per our conversation on 9/1/15. Please have Mr. Edward Pitre complete the form and return for processing A.S.A.P. Please fax form to 718-999-0708. Thank you.

WEINGARTEN RIGHTS

Weingarten rights guarantee an employee the right to Union representation during an investigatory interview. These rights, established by the Supreme Court, in 1975 in the case of J'. Weingarten Inc,, must be claimed by the employee. The supervisor has no obligation to inform an employee that s/he is entitled to Union representation.

## What is an Investigatory Interview?

An investigatory interview is one in which a Supervisor questions an employee to obtain information which could be used as a basis for discipline or asks an employee to defend his/her conduct. If an employee has a reasonable belief that discipline or discharge may result from what s/he says, the employee has the right to request Union representation.

Examples of such an interview are:

1. The interview is part of the employer's disciplinary procedure or is a component of the employer's procedure for determining whether discipline will be imposed.

2. The purpose of the interview is to investigate an employee's performance where discipline, demotion or other adverse consequences to the employee's job status or working conditions are a possible result.

3. The purpose of the interview is to elicit facts from the employee to support disciplinary action that is probable or that is being considered, or to obtain admissions of misconduct or other evidence to support a disciplinary decision already made.

4. The employee is required to explain his/her conduct, or defend it during the interview, or is compelled to answer questions or give evidence.

It is an obligation of the Union to educate bargaining unit employees about their Weingarten rights **BEFORE** an occasion to use them arises. An employee must state to the employer that he/she wants a Union representative present; the employer has no obligation to ask: the employee if she/he wants a representative.

## Weingarten Rules

When an investigatory interview occurs, the following rules apply:

Rule 1 - The employee must make a clear request for Union representation before or during the interview. The employee can't be punished for making this request.

Rule 2 - After the employee makes the request, the supervisor has 3 options. S/he mug either:

a. Grant the request and delay the interview until the Union representative arrives and has a chance to consult privately with the employee: or

b. Deny the request and end the interview immediately; or

c. Give the employee a Choice of: 1)having the interview without representation or 2) ending the interview

Rule 3 - If the supervisor denies the request and continues to ask questions, this is an unfair labor practice and the

**C/E Pitre**

Fiorentino, John (FDNY)

**Sent:** Monday, August 03, 2015 11:27 AM

**To:** Correa, Miguel (FDNY)

**Cc:** Mastropietro, Joseph (FDNY); Borodo, Jan (FDNY); Granieri, Deborah (FDNY)

---

Miguel

Be advised, that from this point forward, C/E Pitre is not to leave his Borough for any reason (detail out, supplies, checks etc.) during working hours.

*John Fiorentino*
*Senior Supervisor*
*FDNY, Bureau of Facilities*
*Plant Operations*
*316 Sgt. Beers Avenue*
*Cluster 1 Box 16*
*Fort Totten, N.Y. 11359*
*John.Fiorentino@fdny.nyc.gov*
*Office: (718) 281-3932*
*Mobile: (917) 769-1069*
*Fax: (718) 281-3855*

**Edward Pitre surgery**
Borodo, Jan (FDNY)
**Sent:** Tuesday, September 01, 2015 12:20
**To:**   Correa, Miguel (FDNY)
**Cc:**   Fiorentino, John (FDNY); Granieri, Deborah (FDNY)

Good afternoon,

Can you inquire with Ed on what time does he intend on using for his leave?  LWOP?  He has about 2 hours sick and 9 hours A/L.

Thanks,


Jan Borodo
Director
FDNY Plant Operations
*Fort Totten BLDG 316-B*
*316 Sgt, Beers Ave.*
*Bayside, NY 11359*
borodoj@fdny.nyc.gov
*Office: (718) 281-3920*
*Mobile: (347) 386-3919*

THE CITY OF NEW YORK
OFFICE OF THE COMPTROLLER
1 CENTRE STREET ROOM 1122
NEW YORK, N.Y. 10007-2341

TELEPHONE: (212) 669-4437
FAX NUMBER: (212) 669-4002

Bureau of Labor Law

WILLIAM C. THOMPSON, JR.
COMPTROLLER

January 20, 2009

**CERTIFIED MAIL**

**Joseph Vicari**
**Business Representative**
**Local # 3, I.B.E.W.**
**158-11 Harry VanArsdale Jr. Ave.**
**Flushing, NY 11365**

**NOTICE OF FILING**
**ORDER AND DETERMINATION**

Enclosed herein is a copy of a determination entered and filed, January 8, 2009 in the Office of the Comptroller for the City of New York in the matter of a complaint for the fixation of compensation of Communication Electrician (91762), Supervisor Communication Electrician (91763), Communication Electrician's Helper (91761) and Senior Communication Electrician (91764).

Wasyl Kinach, P.E.
Director of Classifications
Bureau of Labor Law

WK:vh
Enclosure

BEFORE THE COMPTROLLER OF THE CITY OF NEW YORK

X----------------------------------------------------------------------------------------------------X

In the Matter of the Complaint on behalf of employees in the title(s):

## COMMUNICATION ELECTRICIAN (91762)
## SUPERVISOR COMMUNICATION ELECTRICIAN (91763)
## COMMUNICATION ELECTRICIAN'S HELPER (91761)
## SENIOR SUPERVISOR COMMUNICATION ELECTRICIAN (91764)

for the fixation of their compensation as employees of the City of New York, et. al., at the prevailing rate of wages and supplemental benefits pursuant to New York State Labor Law Section 220 et seq.

----------------------------------------------------------------------------------------------------X

## CONSENT DETERMINATION

A Complaint under Section 220 of the New York State Labor Law, having been filed by

Local # 3, I.B.E.W., ("Complainant"), represented by Joseph R. Vicari, Business Representative,

representing employees of the City of New York, et. al., in the above referenced title ("employees"),

and this Consent Determination having been agreed to between the Mayor's Office of Labor

Relations ("OLR") on behalf of the City of New York, et. al., and the Complainant, compromising

and settling certain disputes of basic rates of wages, supplemental benefits and jurisdiction on all

issues of law and fact as to the title set forth in the caption,

NOW, THEREFORE, IT IS HEREBY DETERMINED BY CONSENT that:

The compromised basic rate of wages and supplemental benefits agreed upon are and have

been for the above mentioned employees of the City of New York, et al., as follows:

## COMMUNICATION ELECTRICIAN

| PERIOD | HOURLY RATE | SATURDAY, SUNDAY AND HOLIDAY RATE** |
|---|---|---|
| 10/1/06 through 5/9/07 | $37.40 | $56.10 |
| 5/10/07 through 5/7/08 | $39.10 | $58.65 |
| 5/8/08 through 5/13/09 | $39.95 | $59.93 |
| 5/14/09 through 5/13/10 | $41.65 | $62.48 |

## COMMUNICATION ELECTRICIAN'S HELPER

| PERIOD | HOURLY RATE | SATURDAY, SUNDAY, AND HOLIDAY RATE** |
|---|---|---|
| 10/1/06 through 5/9/07 | $24.31 | $36.47 |
| 5/10/07 through 5/7/08 | $25.42 | $38.13 |
| 5/8/08 through 5/13/09 | $25.97 | $38.96 |
| 5/14/09 through 5/13/10 | $27.07 | $40.61 |

## SUPERVISOR COMMUNICATION ELECTRICIAN

| PERIOD | HOURLY RATE | SATURDAY, SUNDAY, AND HOLIDAY RATE ** |
|---|---|---|
| 10/1/06 through 5/9/07 | $41.15 | $61.73 |
| 5/10/07 through 5/7/08 | $42.85 | $64.28 |
| 5/8/08 through 5/13/09 | $43.70 | $65.55 |
| 5/14/09 through 5/13/10 | $45.40 | $68.10 |

## SENIOR SUPERVISOR COMMUNICATION ELECTRICIAN #

| PERIOD | HOURLY RATE | SATURDAY, SUNDAY AND HOLIDAY RATE ** |
|---|---|---|
| 10/1/06 through 5/9/07 | $43.15 | $64.73 |
| 5/10/07 through 5/7/08 | $44.85 | $67.28 |
| 5/8/08 through 5/13/09 | $45.70 | $68.55 |
| 5/14/09 through 5/13/10 | $47.40 | $71.10 |

3

\#   Reclassified from Senior Supervisor of Line Repairers and Cable Splicers by
     Personnel Resolution No. 83-35 dated November 5, 1982.
\*\*  Subject to the limitations hereinafter set forth.

Overtime shall be paid in cash after forty (40) hours actually worked at the rate of time and
one-half (1-1/2X). For the purposes of this paragraph, the compensatory day off or holiday shall be
considered a day actually worked.

Work performed on a Saturday, Sunday, or holiday, when such work is not performed on a
sixth workday of a week but within a five-day week, shall be compensated at the rate of time and
one-half (1-1/2X).

No employee working a five-day week shall be entitled to more than one day of such five day
week at premium time rates, i.e., time and one-half, except that work performed on holidays shall be
paid at the holiday rate, that is time and one-half. Notwithstanding the above language, it is intended
that there will be a limit to the number of premiums paid in a week, to one (1), except in a holiday
week, it shall be one (1), besides the holiday, in a five day week.

In addition to the above rates, the titles shall continue to be paid a shift differential of:

### Effective 10/1/06 - $ 7.02

per shift from 4:00 p.m. to midnight or from 12 midnight to 8:00 a.m.

Dr. Martin Luther King, Jr.'s Birthday, the third Monday in January, shall continue to be a
regular holiday with pay. This holiday is in addition to those set forth in Article VII of Appendix A
annexed hereto.

4

Appendix A is further modified to provide for:

## Communication Electrician and Communication Electrician Helpers:

Effective **October 1, 2006,** the annual leave allowance for Communication Electricians and Communication Electrician Helpers who work at least a 249-day year and who were hired on or after July 1, 1985 shall accrue as follows:

| Years In Service | Annual Leave |
|---|---|
| At the beginning of the employee's 1st year | 8 ½ work days |
| At the beginning of the employee's 2nd year | 11 ½ work days |
| At the beginning of the employee's 3rd year | 11 ½ work days |
| At the beginning of the employee's 4th year | 13 ½ work days |
| At the beginning of the employee's 5th year | 18 ½ work days |
| At the beginning of the employee's 8th year | 23 ½ work days |
| At the beginning of the employee's 15th year | 25 ½ work days |

## Supervisor Communication Electricians and Senior Supervisor Communication Electricians:

Effective **October 1, 2006,** the annual leave allowance for Supervisor Communication Electricians and Senior Supervisor Communication Electricians who work at least a 249-day year and who were hired on or after July 1, 1985 shall accrue as follows:

| Years In Service | Annual Leave |
|---|---|
| At the beginning of the employee's 1st year | 10 work days |
| At the beginning of the employee's 2nd year | 13 work days |
| At the beginning of the employee's 3rd year | 13 work days |
| At the beginning of the employee's 4th year | 15 work days |
| At the beginning of the employee's 5th year | 20 work days |
| At the beginning of the employee's 8th year | 25 work days |
| At the beginning of the employee's 15th year | 27 work days |

## Sick Leave

## Communication Electricians and Communication Electricians Helper:

| PERIOD | ANNUAL ACCRUAL |
|---|---|
| 10/1/06 to 5/13/10 | 10 days |

5

**Supervisor Communication Electricians and Senior Supervisor Communication Electricians**:

PERIOD                          ANNUAL ACCRUAL

10/1/06 to 5/13/10              7 ½ days

This provision supersedes the annual leave accrual provisions set forth in Section 2 of Appendix A for employees hired on or after July 1, 1985.

**Leave Reg. Days**

Effective **May 8, 2008,** the paid leave benefits set forth in Article III, Sections (1)(a)-(f) of Appendix A annexed hereto **shall not** apply.

**Welfare Fund:**        Effective October 1, 2006, a Welfare Fund contribution shall be paid at the rate of $1,575 per annum per employee. The annual contribution shall be paid per employee by the City of New York to the Local 3 I.B.E.W. Welfare Fund, for the purpose of providing benefits to the employees.

Employees who have been separated from service subsequent to June 30, 1972 and who were covered by a Welfare Fund at the time of such separation pursuant to a separate agreement between the City of New York and the Certified union representing such employees, shall continue to be so covered subject to the provisions hereof, on the same contributory basis as incumbent employees. Contributions shall be made only for such time as said individuals remain primary beneficiaries of the New York City Health Insurance Program and are entitled to benefits paid for by

6

the City through such program; or are retirees of the New York City Employees Retirement System

who have completed five (5) years of full in time service with the City of New York except that

contributions for those employees hired after December 27, 2001 shall be governed by the provisions

of §12-126 of the Administrative Code of the City of New York, as amended..

## Compensation Accrual Fund:

The following contributions will be paid per employee for each day actually worked, by the

City of New York, et al., to a Compensation Accrual Fund, known as "the Annuity Plan of the

Electrical Industry":

### Communication Electrician

|  | Per Hour | Per Day |
|---|---|---|
| Effective 10/1/06: | $6.36 | $50.88 |
| Effective 5/8/08 | $6.30 | $50.40 |
| Effective 5/14/09 | $5.87 | $46.96 |

### Supervisor Communication Electrician & Senior Supervisor Communication Electrician

|  | Per Hour | Per Day |
|---|---|---|
| Effective 10/1/06: | $6.36 | $50.88 |
| Effective 5/8/08 | $6.30 | $50.40 |
| Effective 5/14/09 | $5.87 | $46.96 |

### Communication Electrician's Helper

|  | Per Hour | Per Day |
|---|---|---|
| Effective 10/1/06: | $2.41 | $19.28 |

7

This Compensation Accrual Fund will be subject to a separate agreement between the City of New York et al. and the Complainant.  The liability of the City of New York et al., shall in no event exceed the amount hereinabove set forth for each effective day payable, irrespective of any upward modification by reason of imposition of any taxes, liens, attorneys' fees or otherwise, and provided further that the amount of contributions by the City shall be limited solely to the payment as provided herein.

a)      The provisions of this Consent Determination shall be consistent with the applicable provisions of the New York State Financial Emergency Act for the City of New York, as amended.

b)      The Complainant agrees to execute a full release to the City of New York et. al., for the period embraced herein, such release being set forth in the General Release and Waiver attached hereto as Exhibit "A."

c)      The Complainant agrees to waive any and all interest on all differentials of basic rates of wages and supplemental benefits.  It is expressly understood that such waiver, set forth in Exhibit "A" annexed hereto, shall include the waiver of any right to interest payments due pursuant to subdivision 8c of Section 220 of the Labor Law (L. 1967, c, 502, 1).  However,

(1)     Interest on wage increases shall accrue at the rate of three percent (3%) per annum from one hundred twenty (120) days after the filing date of this Consent Determination, or one hundred twenty (120) days after the effective date of the increase, whichever is later, to the date of actual payment,

(2)     Interest on shift differentials, holiday and overtime pay shall accrue at the rate of three percent (3%) per annum from one hundred twenty (120) days following their

8

earning, or one hundred twenty (120) days after the filing date of this Consent Determination, whichever is later, to the date of actual payment and

(3) Interest accrued under (1) or (2) above shall be payable only if the amount of interest due to an individual Employee exceeds five dollars ($5.00).

d) The Complainant herein shall refrain from filing any Article 78 proceedings in whole or in part with respect to any provision made herein and for any additional benefits other than those contained herein excepting that the right is reserved to bring any necessary proceedings for the enforcement of the terms of the Consent Determination.

e) The Complainant agrees to withdraw any and all objections in all of the periods embodied herein.

f) The Complainant agrees to waive any and all supplemental benefits payable under subdivision 3 of Section 220 of the Labor Law of the State of New York, such waiver being set forth in Exhibit "A" annexed hereto, and accept in lieu thereof the supplemental benefits set forth in this Consent Determination, and as set forth in Appendix A annexed hereto as modified herein.

g) Any new Employee who may be hired by the City of New York, et al., during the term of this settlement shall be required to comply with all of the terms and conditions herein upon the payment of the rates and supplemental benefits herein.

h) Any legal claims of any nature, including specifically, but not limited thereto, premium rates, holiday rates, shift rates, overtime rates or any other legal claims affecting rates and supplemental benefits of any kind whatsoever, are merged in this compromise and settlement for the period of the compromise and settlement contained herein.

i) The foregoing basic rates of wages and supplemental benefits are due and payable to

9

each and every employee of the City of New York, et al., serving in the above-referenced title beginning as of the effective date of the complaint filed herein, and shall be applicable to all employees of the City of New York, et al., serving in the above-referenced title who are represented by the Complainant.

j)    The basic rates and supplemental benefits herein are not to be construed as true prevailing rates and supplemental benefits but shall be considered rates and benefits in compromise and settlement of all issues of law and fact.

k)    It is further understood and agreed that in consideration of the compromise and settlement reached herein, the complaint in this matter is hereby settled.

l)    The submission of any Labor Law complaint, effective on **May 14, 2010**, can be made at the Bureau of Labor Law, Office of the Comptroller on or after that date.

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first above written.

CONSENTED TO:

FOR THE CITY OF NEW YORK

BY: _____
JAMES F. HANLEY
Commissioner of
Labor Relations

FOR CITY EMPLOYEES UNION,
LOCAL 3, I.B.E.W.

BY: _____
JOSEPH R. VICARI
Business Representative
Local 3, I.B.E.W

The basic rates and supplemental benefits agreed to herein between the parties are not to be construed as true prevailing rates and supplemental benefits, but shall be deemed substitute rates and benefits in compromise and settlement of all issues of law and fact raised in the complaint filed herein pursuant to Labor Law Section 220.8-d.

IT IS SO DETERMINED AND ENTERED

_____
WILLIAM C. THOPMSON, JR.
Comptroller

Dated: 1 · 08 · 09
New York, New York

UNIT:  **Communication Electricians et al.**
TERM:  **October 1, 2006 through May 13, 2010**

Steven Touliopoulos, M.D.
ORTHOPEDIC SURGEON
SPORTS MEDICINE
Board Certified

Charles A. DeMarco, M.D.
ORTHOPEDIC SURGEON
SPORTS MEDICINE
Board Certified

Kloomars Moosazadeh, M.D.
SPORTS MEDICINE
REHABILITATION
Board Certified

Erica Papathomas, D.P.M.
PODIATRY
Board Certified

Andrew M Cruz, RPA
Physician Assistant

Terry Y Lin, RPA
Physician Assistant

Adam Barile, RPA
Physician Assistant

DATE: 8/31/15

PATIENT NAME: Pitre, Edward

This is to certify that the above named patient has been treating with me for _____
Injuries sustained in a motor-vehicle/work related accident on ___ / ___ / ___.

___ The patient may return to work on: _____ without restrictions.
___ The patient may return to work on: _____ with the following
restriction: _____

___ The patient is totally disabled and cannot return to work until further notice.

___ The patient can return to school with NO physical activities including gym.
___ The patient may return to school and all physical activities including gym.

✓ Patient underwent/will undergo Left Shoulder Surgery
surgery on 9 / 11 / 15.

ADDITIONAL NOTES: If you have any questions
feel / free calling our office
_____
_____
_____

RECEIVED 08/31/15
Miguel A. Correa

Steven _____, MD
PHYSICIAN'S SIGNATURE

Astoria
23-18 31st Street, Suite 210
Astoria, N.Y. 11105
718-777-1885
Fax: 718-777-9613

Manhattan
141 West 28th Street, Suite 500
New York, NY 10001
212-924-6644
Fax: 212-924-9442

Bayside
217-04 Northern Blvd, Suite #2
Bayside, NY 11361
718-777-1885
Fax: 718-777-9613



*FIRE DEPARTMENT*
*COMMUNICATIONS – OP*
*316A Sgt. Beers Ave.*
*Cluster 1 Box 16*
*Fort Totten, NY 11359*
*(Phone) 718.281.3917*
*(Fax) 718.281.3894*

## "REQUEST FOR TRANSFER"

DATE: May. 19. 15

NAME: Edward Pirrec

ADDRESS: 130-59   115 st

LAST FOUR (4) DIGITS OF YOUR SOCIAL SECURITY NUMBER: 3271

CIVIL SERVICE STARTING DATE: 10·89

FIRE DEPARTMENT STARTING DATE: 10. 00

DATE IN TITLE: 10·00

CURRENT TITLE: Comm. Electrician

CURRENT WORK LOCATION: Manhattan

CURRENT SUPERVISOR: Miguel Correa

REQUEST TRANSFER TO: ① Queens

REASON: Due to my injuries suffered on the Job on
2-27-15 I need to be close to my doctors so I
can received Physical Therapy.

**EMPLOYEE'S SIGNATURE**

**SUPERVISORS SIGNATURE**

### TRANSFERS ARE BASED ON THE DISCRETION OF THE SR. SUPERVISOR
### AND FOR THE BETTERMENT OF THE DEPARTMENT

REV. 03/31/11

3/23/2015 10:31 AM FROM: Fax    TO: +1 (718) 777-9613    PAGE: 001 OF 002

    

LENOX HILL RADIOLOGY &
MEDICAL IMAGING ASSOCIATES P.C.

Tel: 212-772-3111 - Fax: 212-734-5832 - www.lenoxhillradiology.com

Exam requested by:
CHARLES A DEMARCO MD
23 18 31ST STREET SUITE 210
ASTORIA NY 11105

**SITE PERFORMED: UPPER WEST SIDE**

**Patient:** PITRE, EDWARD
**Date of Birth:** 02-28-1971
**Phone:** (732) 801-0347
**MRN:** 990825R **Acc:** 1001182396
**Date of Exam:** 03-20-2015

**EXAM: MRI LEFT SHOULDER WITHOUT CONTRAST**

**HISTORY:** Left shoulder pain and limited range of motion

**TECHNIQUE:** An MRI examination of the left shoulder was performed using oblique coronal proton density and T2 fat suppression, oblique sagittal T1 and FSE T2 fat suppression, and axial T2 fat suppression sequences.

**COMPARISON:** No prior study is available for comparison.

**FINDINGS:** There is a superior labral tear/SLAP lesion involving the long head biceps tendon anchor and posterosuperior labrum, associated with a large multiloculated posterosuperior para labral ganglion cyst extending into the spinoglenoid notch measuring approximately 3.4 cm in maximal dimension. The latter finding raises the possibility of suprascapular nerve entrapment. The long head biceps tendon is normal in position within the bicipital groove. A tear of the posteroinferior glenoid labrum is noted associated with a smaller para labral cyst at the posteroinferior glenoid margin. There is also a tear involving the anterior glenoid labrum. The glenohumeral articular cartilage appears generally preserved. No significant-sized glenohumeral intra-articular effusion is demonstrated. There are no definite signs of adhesive capsulitis.

The subscapularis, supraspinatus, infraspinatus and teres minor tendons appear intact without definite evidence of a torn rotator cuff. No significant atrophy of the rotator cuff musculature is noted.

The acromioclavicular joint and the coracoclavicular ligaments appear intact. The anterior acromion process is laterally downsloping. No significant-sized subacromial-subdeltoid bursal fluid collection is noted.

**IMPRESSION:**
1. Superior labral tear/SLAP lesion involving the posterosuperior labrum, with an associated 3.4 cm posterosuperior para labral ganglion cyst extending into the spinoglenoid notch raising the possibility of suprascapular nerve entrapment
2. Additional labral tears involving the anterior and posteroinferior labrum
3. Laterally downsloping anterior acromion

## Confidential

- 61 East 77th Street, New York, NY 10075  - 130 West 79th Street, New York, NY 10024  - 240 Madison Avenue, New York, NY 10016
- 202 East 70th Street, New York, NY 10021  - 315 West 57th Street, New York, NY 10019  - 161 Atlantic Avenue, Brooklyn, NY 11201
- 400 East 66th Street, New York, NY 10065  - 340 East 64th Street, New York, NY 10065

3/23/2015 10:31 AM FROM: Fax   TO: +1 (718) 777-9613   PAGE: 002 OF 002

    

Tel: 212-772-3111 - Fax: 212-734-5832 - www.lenoxhillradiology.com

Continued: Page 2 of 2
**Patient:** PITRE, EDWARD
**Date of Birth:** 02-28-1971

Thank you for the opportunity to participate in the care of this patient.

David Milbauer MD (212) 249-1895 - *Electronically Signed: 03-23-2015 10:16 AM*

# Confidential

- 61 East 77th Street, New York, NY 10075    - 130 West 79th Street, New York, NY 10024    - 240 Madison Avenue, New York, NY 10016
- 202 East 70th Street, New York, NY 10021   - 315 West 57th Street, New York, NY 10019    - 161 Atlantic Avenue, Brooklyn, NY 11201
- 400 East 66th Street, New York, NY 10065   - 340 East 64th Street, New York, NY 10065

# UNIVERSITY ORTHOPEDICS OF NEW YORK, PLLC

Steven Toullopoulos, M.D.
ORTHOPEDIC SURGEON
SPORTS MEDICINE
Board Certified

Charles A. DeMarco, M.D.
ORTHOPEDIC SURGEON
SPORTS MEDICINE
Board Certified

Barry Katzman, M.D.
ORTHOPEDIC SURGEON
HAND/MICROVASCULAR SURGERY
SPORTS MEDICINE
Board Certified

John Vlattas, M.D.
PHYSICAL MEDICINE &
REHABILITATION
Board Certified

Kloomars Moosazadeh, M.D.
PHSICAL MEDICINE & REHABILITATION
Board Certified

Erica Papathomas, D.P.M.
PODIATRY

DATE: 6/9/15

PATIENT NAME: Pitre Edward

This is to certify that the above named patient has been treating with me for
_Multiple_ injuries sustained in a motor-vehicle/work related accident on
2/27/15.

___ The patient may return to work on:_____ without restrictions.
√ The patient may return to work on: _____ with the following
restriction: Light Duty / No Heavy Lifting.

___ The patient is totally disabled and cannot return to work until further notice.

___ The patient can return to school with **NO** physical activities including gym.
___ The patient may return to school and all physical activities including gym.

___ Patient underwent/will undergo _____
surgery on ___/___/___.

ADDITIONAL NOTES:
The above named Pt was seen in our office Today.
The Pt will follow up with the doctor on
7/21/15 at 1:30 pm. Any concerns, please contact
our office.
Thank you,

UNIVERSITY ORTHOPEDICS
23-18 31st STREET
ASTORIA, NY
(718) 777-

**PHYSICIAN'S SIGNATURE**

Astoria
23-18 31st Street, Suite 210
Astoria, N.Y. 11105
718-777-1885

Manhattan
155 Fifth Avenue, 2nd Floor
New York, NY 10010
212-924-6644

Bronx
1335 Westchester Avenue
Bronx, NY 10461
718-409-0050

# UNIVERSITY ORTHOPEDICS OF NEW YORK, PLLC

Steven Touliopoulos, M.D.
ORTHOPEDIC SURGEON
SPORTS MEDICINE ·
Board Certified

Charles A. DeMarco, M.D.
ORTHOPEDIC SURGEON
SPORTS MEDICINE
Board Certified

Kloomars Moosazadeh, M.D.
SPORTS MEDICINE
REHABILITATION
Board Certified

Erica Papaithomas, D.P.M
PODIATRY
Board Certified

·Andrew M Cruz, RPA
Physician Assistant

Terry Y Lin, RPA
Physician Assistant

Adam Barile, RPA
Physician Assistant

DATE: 6/2/16

PATIENT'S NAME: Pitre, Edward,

DIAGNOSIS: Left shoulder SLAP / Labrum tear

PRECAUTIONS: _____

**THERAPEUTIC MODALITIES:**
___ THERAPEUTIC MODALITIES PRN   ___ ULTRASOUND
___ PHONO   ___ ELECTRICAL STIMULATION   ___ COLD PACK
___ MOIST HEAT.   ___ MOBILIZATION   ___ MYOFASCIAL RELEASE

**THERAPEUTIC EXERCISE:**
___ ROM   ___ ACTIVE   ___ ACTIVE ASSISTED
___ PASSIVE   ___ STRENGTHENING   ___ STRETCHING
___ NEUROMUSCULAR RETRAINING (PNF)
___ POSTURAL RETRAINING   ___ SEATED   ___ STANDING FUNCTIONAL
___ GAIT TRAINING WITH:
___ ADAPTIVE DEVICE   ___ BALANCE COORDINATION
___ BIODEX EVALUATION/TRAINING OF   ___ U.E.   ___ L.E.
___ FLEXION BIASED TRUNK PROGRAM   ___ EXTENSIONS BIASED TRUNK PROGRAM
___ McKENZIE PROTOCOL ·   ___ STABILIZATION PROGRAM

**BODY PART:**
___ CERVICAL SPINE
___ THORACIC SPINE .
___ LUMBAR SPINE .
___ SHOULDER (RIGHT LEFT)
___ ELBOW (RIGHT LEFT)
___ WRIST (RIGHT LEFT)
___ PARASPINALS

___ HAND (RIGHT LEFT)
___ HIP (RIGHT LEFT)
___ KNEE (RIGHT LEFT)
___ ANKLE (RIGHT LEFT)
___ FOOT (RIGHT LEFT)
___ UPPER EXTREMITIES
___ LOWER EXTREMITIES

**HAND THERAPY:**
___ PARAFFIN
___ HAND STRENGTHENING

___ CARPAL TUNNEL EXERCISE
___ R.O.M. EXERCISE

**FREQUENCY OF TREATMENT:**
_2_ X WEEK – PHYSICAL THERAPY
___ X WEEK – HAND THERAPY
_6_ X WEEKS – FOLLOW UP

COMMENTS: _____

PHYSICIAN'S SIGNATURE

Astoria
23-18 31ˢᵗ Street, Suite 210
Astoria, N.Y. 11105
· 718-777-1885

Manhattan
· 18 West 31ˢᵗ Street, Suite 900
New York, NY 10010
212-924-6644
Fax: 212-924-9442

Bayside
217-04 Northern Blvd, Suite #2
Bayside, NY 11361
718-777-1885
Fax: 718-777-9613