UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EDWARD PITRE,                                                                                  Civ No: 18-CV-5950-(DC)

                     Plaintiff,

     -against-

THE CITY OF NEW YORK,
FIRE DEPARTMENT OF THE CITY
OF NEW YORK, JAN BORODO, individually, and
JOSEPH M. MASTROPIETRO, individually,

                     Defendants.
------------------------------------------------------------------------X

**PLAINTIFF EDWARD PITRE'S REPLY MEMORANDUM IN SUPPORT OF HIS MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER DISMISSING THE CASE**

<u>Preliminary Statement</u>

    Plaintiff Edward Pitre submits this Reply Memorandum of Law in support of his request for the Court's reconsideration of its order dismissing Plaintiff's lawsuit during trial and before Plaintiff rested his case-in-chief, and requesting that the Court issue an order granting a new trial, or in the alternative, if the Court declines to grant a new trial, Plaintiff requests that his non-Federal, non-FMLA claims, including those arising under the NYSHRL and NYCHRL for disability discrimination, failure to accommodate, and retaliation be dismissed *without* prejudice to his right to renew those claims in New York State Court.

    Tellingly, in their opposition to this motion Defendants have abandoned their assertion that Mr. Pitre "failed to disclose"[1] his prior personal injury lawsuit during this lawsuit as the basis for their

---

[1] As noted in Plaintiff's currently pending motion for reconsideration, there can be no dispute that Mr. Pitre in no way failed to disclose the existence of the personal injury lawsuit, because he *did* disclose it in his deposition, and

1

allegation that Mr. Pitre perpetrated a 'fraud on the court, in favor of a new two-pronged argument that is also meritless. Now that Defendants' 'failure to disclose' theory of fraud has fallen apart, they attempt to argue that a fraud was attempted by purportedly seeking "double recovery" for the "same exact injuries", and a premature argument for what is in essence a directed verdict related to a purported lack of evidence presented at trial.

First, Defendants' 'double recovery' theory of fraud is meritless, because, as discussed on our initial memorandum, offset from collateral sources is not permitted in employment discrimination cases. Defendants completely fail to address this point in their Response in opposition to this motion. Instead, they repeatedly make the demonstrably false assertion that Mr. Pitre is seeking recovery "for the exact same set of injuries." The personal injury case was for exactly that, the injuries suffered when Mr. Pitre slipped and fell on February 27, 2025. This case was for an entirely distinct set of injuries, arising from the discrimination, failure to accommodate and retaliation that occurred through the actions of the FDNY *after* his slip and fall injury, which defendants used to intentionally destroy Mr. Pitre's career by forcing him into early retirement causing far more significant economic damages than the initial personal injury. The Defendants want the Court to conflate these separate and distinct injuries, however doing so would be a clear error. Not once in this case has Mr. Pitre asserted that the Defendants were responsible for his slip and fall. Not once in his personal injury case did he assert that the owners of premises where he slipped and fell were responsible for the City's failure to accommodate, discrimination and retaliation. The claims and injuries, and damages sought are obviously different.

Even if offset was permitted, this does not rise to the level of a willful and contumacious fraud

---

more importantly, the City of New York's Law Department participated in that lawsuit as a Third-Party Defendant and the City took roughly 1/3 of that personal injury settlement as the worker's compensation claims administrator. It was defense counsel who failed to disclose these crucial facts to the Court while accusing Mr. Pitre and his attorneys of attempting a 'fraud on the court.'

on the Court warranting the most extreme sanctions. Defendants cannot refute that Mr. Pitre disclosed the personal injury lawsuit and that Defendants have been aware of Plaintiff's recovery from the personal injury lawsuit since before this lawsuit was filed[2]. The record of this case shows that Defendants' failed to raise offset as an affirmative defense in their Answer, they never sought to amend their Answer to raise it, they failed to raise it in a Rule 12 motion to dismiss, they failed to raise it in their motion for summary judgement, and they failed to raise in in their numerous motions *in limine*. Seeking 'double recovery', when it is permitted in employment discrimination cases cannot be a 'fraud on the court'.

Second, Defendants argument, that the Court should not reconsider dismissal because such a dismissal is purportedly proper as some sort of de facto directed verdict ruling based on lack of evidence, also fails. Plaintiff was never given the opportunity to take re-direct testimony from Mr. Pitre, to elicit testimony from his most important 3rd party witness, Joseph Adams, and was never permitted to present his full case. Indeed, the purported 'lack of evidence' asserted by Defendants is speculative at best because Plaintiff was prematurely precluded from fully laying out his case and evidence to the jury. Additionally, Plaintiff, during trial was precluded from re-assessing the evidence before resting and potentially seeking to call additional witnesses, such as Plaintiff's orthopedist, Dr. DeMarco, and his union's counsel, Robert Berzichelli, who witnessed first-hand the retaliatory referral of Plaintiff's doctor's note submitted in support for his request for reasonable accommodation for investigation. Furthermore, Mr. Pitre presented significant evidence of Defendants' failure to accommodate his disability and that other communications electricians were granted light duty that he was denied.

---

[2] Any admission, acknowledgement or even attempted explanation of the fact that the City's Law department participated in the personal injury lawsuit but failed to bring this key fact to the Court's attention while accusing Plaintiff of 'fraud on the court' is conspicuously absent from Defendants' papers in opposition to this motion.

In the event that the Court finds that insufficient evidence exists to support Plaintiff's FMLA claims and declines to grant Plaintiff's request for a new trial, it should dismiss Plaintiff's City and State law claims *without prejudice* to refiling of those claims in State Court, because evidence was presented that Plaintiff requested accommodation and Defendants refused to accommodate Plaintiff's disability.

## ARGUMENT

### The Primary Reason for the Court's Mistaken Assumption to Conclude Bad Faith and Fraud has Been Proven False

In their opposition papers, Defendants are silent as to their participation in the personal injury lawsuit and are silent as to why they failed to inform the Court that the City participated in that lawsuit, the very lawsuit they were accusing Plaintiff of failing to disclose in this case. Plaintiff's law firm in this case, DSLG, did not participate in that personal injury lawsuit, which was filed against different defendants and based on different claims and theories of recovery. But Defendants' law firm, Corporation Counsel for the City of New York and its Law Department participated in that personal injury lawsuit as defense counsel for the City of New York, who were implead as a Third-Party Defendant in that lawsuit (See Dkt. # 148-3, the City's Third-Party Answer in the personal injury lawsuit). The City's Law Department was *also* the worker's compensation claims administrator who consented to the personal injury settlement, waived their right to any offset when that lawsuit was settled and took approximately one-third of that settlement to recoup a portion of worker's compensation payments issued (See Dkt. # 148-4, the City consent to settlement and waiver of offset letter in the personal injury case). Defendants' opposition papers are silent as to all these incontrovertible facts.

Plaintiff's moving papers demonstrate beyond cavil that there was no failure to disclose. The

4

Court noted that this, (now-proven-false) failure to disclose was "very troubling" and used it as the primary and most significant reason for dismissing this lawsuit. Such a failure to disclose would certainly be very troubling if it were true, but now we see that it's not true. However, a similarly troubling failure to disclose has now come to light. Defense Counsel, DeCastro, Alexander and Silver are all members of the City's Law Department, yet they failed to disclose their firm's involvement in the personal injury case, while accusing Mr. Pitre of failing to disclose that suit and seeking "duplicative recovery." Indeed, to this day, they have failed to explain *or to even acknowledge* that they were privy to information regarding this personal injury lawsuit for years before raising it for the first time on the fourth day of trial during Mr. Pitre's cross-examination. Furthermore, in their opposition to this motion, Defendants continue to mislead this Court to believe that they had no knowledge of the personal injury lawsuit, referring to information regarding this lawsuit as a "revelation." (Def.'s Response Memo. p. 3)

The Court clearly did not consider that the City was a party to the personal injury lawsuit when it made the decision to dismiss this case based on a mistaken assumption that Mr. Pitre "failed to disclose" that personal injury lawsuit. Defendants utterly fail to address the glaring question that is: How can Mr. Pitre have perpetrated a fraud by failing to disclose something that the City's Law Department was already aware of for years? The reason for Defendants' failure to address this point is obvious, because merely acknowledging that they participated in that personal injury lawsuit completely undermines their position that Mr. Pitre and I perpetrated a fraud on this Court.

If any fraud has been committed, it has been by Defense counsel who obtained an unfair dismissal of this action before Plaintiff rested his case by concealing their participation in the personal injury lawsuit, disingenuously leading this Court to believe that it was Mr. Pitre who failed to disclose the personal injury lawsuit.

**Defendants' Opposition Fails to Address Plaintiff's Extensive Case Law Showing Why Offset is Not Appropriate In Employment Discrimination Cases**

Courts in employment discrimination cases involving collateral offset have routinely held that any 'windfall' in the form of duplicative damages should inure to the victim of discrimination, not to the employer, who would benefit unfairly from a reduction in a damages award. (See e.g. Plaintiff's moving memo's citations to: *Siracuse v. Program for the Dev. of Human Potential*, 2012 U.S. Dist. LEXIS 73456, *40-48; and *Greenway v. Buffalo Hilton Hotel*, 951 F. Supp. 1039, 1067) Seeking such a 'windfall' in 'duplicative recovery' that is supported by caselaw cannot be a fraud on the court. It is simply proffering a colorable and potentially successful legal argument.  Proffering such a potentially meritorious legal argument in good faith cannot be a fraud on the court.

Defendants have undeniably known about his personal injury lawsuit for years, so for Defense counsel to accuse Plaintiff of failing to disclose, and by implication, attempting to conceal that lawsuit, they are the side that can reasonably be accused of fraudulently obtaining dismissal before Plaintiff rested his case in chief.

**Defendants' Opposition Fails to Address Why They Never Raised Offset From the Personal Injury Settlement as an Affirmative Defense or Sought Related Dismissal Via Motion Practice**

If Plaintiff is seeking "monetary compensation from entirely separate entities for the exact same set of injuries," as Defendants falsely claim in their opposition papers (Response in Opp. Memo. p. 2), and the City's Law Department participated in that personal injury lawsuit, why did Defendants wait for years until the fourth day of trial to bring this to the Court's attention?  It does not make sense. This Court harshly painted Plaintiff's counsel's performance as "shoddy" and otherwise unfairly disparaged me and my co-counsel.  Now that light has been shed on Defense counsel's undeniable

6

and glaring failure to acknowledge and explain the City's participation in the prior personal injury lawsuit, and we now see that they deceptively used the existence of that prior lawsuit, while failing to disclose that *they participated in it* to fraudulently obtain dismissal of this lawsuit, this Court should be evenhanded in its treatment of Defense counsel.

At the very least Plaintiff should be granted a new trial or in the alternative, this Court should find that only Plaintiff's federal FMLA claims lack evidentiary support, and it should dismiss Mr. Pitre's City and State law claims *without* prejudice to renewal in New York State Supreme Court.

**There Has Been No Fraud On The Court Because The Underlying Incidents and Damages In the Personal Injury Lawsuit are Distinct From Those In This Lawsuit**

Defendants in their opposition papers make the false claim that the "underlying incident and damages are the same in both lawsuits." (Response in Opp. Memo p. 8) The record of these two cases shows that this assertion is demonstrably and categorically false.  For example, the first numbered paragraph in Plaintiff's Amended Complaint makes perfectly clear that this lawsuit is seeking damages Plaintiff has suffered as a result of "race and disability discrimination, together with retaliation, hostile work environment, and unlawful termination by his employer." (Dkt. #36 ¶ 1).  The jury instruction Plaintiff submitted for trial reiterated that this case is about employment discrimination, failure to accommodate, retaliation and wrongful termination, stating:

> *Plaintiff claims that he has been subjected to discrimination based on a disability, by being denied reasonable accommodations of a light duty assignment that was routinely granted to Plaintiff's coworkers and a transfer to an available location closer to his physical therapist, and subjected to discrimination because of his race. Plaintiff also alleges that Defendants retaliated against him by issuing numerous false and unwarranted writeups and disciplinary actions against him, stripped him of benefits and seniority, and by denying discretionary grants routinely granted to coworkers similarly injured on the job, all because he participated in and was viewed by the Defendants as the motivating individual in a separate race discrimination and retaliation lawsuit in December 2011. Plaintiff brings these claims pursuant to the New York State Human Rights Law and the New York City Human Rights Law.*

7

> *Plaintiff also claims that Defendants interfered with his rights under the Family and Medical Leave Act ("FMLA") and retaliated against him for exercising his rights under that act by, among other things, refusing to allow time off during training sessions to obtain medical treatment and by refusing to allow Plaintiff to return to a comparable light duty role where other disabled communications electricians have worked for years, and in some cases decades.* (See Dkt. # 102 pp. 21-22)

It should be obvious that this lawsuit is not claiming negligence and seeking damages from the slip and fall against the City. The slip and fall injury did not destroy Mr. Pitre's career. The violations of Plaintiff's rights by the Defendants in this case destroyed Mr. Pitre's career. Therefore, the damages are not "the exact same" as Defendants baselessly claim in their opposition papers.

Defendants wrongly assert that: "Dissatisfied with his settlement in state court, Plaintiff brought the federal action in an attempt to recover more money for the exact same injury…Yet weeks after receiving a settlement in that case, plaintiff filed a Federal lawsuit alleging that the exact same injuries were caused by Defendants' alleged discrimination and failure to accommodate after the accident" Response in Opp. Memo pp. 8-9. This ignores that in 2016, antecedent to this lawsuit Plaintiff had filed a pre-litigation administrative complaint for discrimination and retaliation on the claims giving rise to this lawsuit with the NYC Commission on Human Rights, years before the personal injury lawsuit was settled. (See Dkt. 148-1 and 148-2, Plaintiff's NYCCHR filings).

More importantly though, the injury is different, and the damages are different. As I attempted to explain at trial, **this is not a personal injury lawsuit, it is an employment discrimination and retaliation lawsuit**. (See e.g. Trial Transcript pp. 569-571). To accept Defendants' baseless proposition that the "damages are the exact same" would lead to the clearly erroneous and absurd conclusion that no personal injury plaintiff who settles their case could ever sue their employer for subsequent FMLA and disability discrimination claims. Plaintiff's personal injury settlement compensated him a total of $45,000 ($20,000 of the settlement was taken by the City of New York)

for the pain and suffering of the injury he sustained in the fall and related harms. This lawsuit seeks compensation for different harms arising from Defendants' failure to accommodate and other violations that lead to the end of Plaintiff's career as an FDNY communications electrician resulting in far greater economic damages than those compensated by the personal injury settlement. Furthermore, how can the owner of the premises where he slipped and fell have paid a settlement that compensated Mr. Pitre for the subsequent unlawful and discriminatory acts of his employer, the City of New York? Defendants' position makes no sense.

**Purported Insufficient Evidence Is Not A Basis For the Extreme Sanction of Dismissal**

Even if the Court finds a lack of evidence to support Mr. Pitre's FMLA claims, which are his sole federal claims, this Court should then only dismiss Mr. Pitre's City and State law discrimination/failure to accommodate and retaliation without prejudice to bringing those claims in State Court, because ample evidence has been presented at trial showing that Mr. Pitre was denied light duty while other communications electricians were given such assignments.

Such a dismissal on the basis of a purported lack of evidence is not a sanction, but is a potential outcome of a motion for a directed verdict. No such motion has been made here, and Plaintiff was denied the opportunity to present his full case.

However, even when considering a directed verdict *after* a Plaintiff rests his case in chief, Courts caution against jumping the gun:

*While courts have the power to direct a verdict in plaintiff's favor at the close of plaintiff's case, this power must nonetheless [**5] be exercised with great restraint in order to avoid the possibility that a party will be precluded from presenting facts which make out a question for the jury. Where there is any doubt at all as to the propriety of a directed verdict, district courts should not jump the gun but should wait until both sides have presented their evidence before ruling on motions for directed verdict.*

*Buchanan v. City of San Antonio*, 85 F.3d 196, 198 citing *United States v. Vahlco Corp.*, 720 F.2d 885,

889 (5th Cir.1983).

Here, the partial, misleading, and likely inadmissible evidence at trial of Mr. Pitre's prior personal injury action, which Defendants concealed the City's participation in (or at least failed to disclose it to the Court, when it was their own office that litigated the personal injury case on behalf of the City and it was also their office that was the workers compensation administrator who benefitted from the settlement), wrongly led this Court to conclude that Mr. Pitre failed to disclose this lawsuit. This prevented Mr. Pitre from being allowed to fully present his case to the jury. Any conclusion that Mr. Pitre's case in chief was "substantially complete" is speculative and ignores the indisputable fact that Mr. Pitre had not yet rested when this Court jumped the gun and dismissed his case.

Additionally, a directed verdict is not a sanction, making it premature and improper in this instance.

## **CONCLUSION**

Based on the foregoing, and on Plaintiff's initial motion papers, as well as the documents reflected in the record of this case, this Court should reconsider and reverse its decision dismissing Mr. Pitre's case, or in the alternative, this Court should only dismiss Mr. Pitre's FMLA claims with prejudice, while dismissing his other claims arising under City and State laws *without prejudice* and decline to exercise supplemental jurisdiction over Mr. Pitre's City and State law discrimination and retaliation claims, so that he can renew those claims in New York State Supreme Court. Plaintiff respectfully requests the foregoing relief and for other further such relief as the Court deems just and proper.

Dated: March 29, 2024
      New York, New York

*Respectfully submitted,*

**DEREK SMITH LAW GROUP, PLLC**
*Attorneys for Claimant*

<u>/s/ Seamus Barrett</u>
Seamus P. Barrett, Esq.
Zachary Holzberg, Esq.
Ian Bryson, Esq.
One Pennsylvania Plaza, Ste 4905
New York, New York 10119
(212) 587-0760

11