UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

EDWARD PITRE,                                              :

                         Plaintiff,              :          **<u>MEMORANDUM DECISION</u>**

             - v -                              :          18 Civ. 5950 (DC)

THE CITY OF NEW YORK, JAN BORODO,       :
and JOSEPH M. MASTROPIETRO,

                               :

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**APPEARANCES:**              DEREK SMITH LAW GROUP, PLLC
                            By:    Seamus Barrett, Esq.
                                    Ian Michael Bryson, Esq.
                                    Zachary Ian Holzberg, Esq.
                          One Penn Plaza, Suite 4905
                        New York, NY  10119
                        Attorneys for Plaintiff

                        SYLVIA O. HINDS-RADIX, Esq.
                        Corporation Counsel of the City of New York
                        By:    Lauren Fae Silver, Esq.
                                    Desiree Denise Alexander, Esq.
                                    Assistant Corporation Counsels
                        100 Church Street, Room 2-176
                        New York, New York  10007-2601
                        Attorney for Defendants

CHIN, Circuit Judge:

        On January 22, 2024, the fourth day of trial, I dismissed this case in the

interest of justice.  As I explained in a written decision filed on January 29, 2024 (the

"Decision"), Doc. No. 138, I did so for three reasons.  First, I concluded that Pitre was

attempting to commit a fraud on the Court because he had previously brought -- and

failed to disclose -- a state court case based on the same purported accident that is the

basis of this lawsuit.  Trial Tr. at 575.  Second, the revelation that Pitre had failed to

disclose the prior lawsuit reflected, in my view, "the culmination of circumstances, the

poor lawyering throughout."  *Id*.  Third, although Pitre had substantially completed his

case, he had presented little, if any, proof from which the jury could rule in his favor.

*See Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 142 (2d Cir. 2023) (explaining that a

district court has the inherent power to sanction a party who "acted in bad faith,

vexatiously, wantonly, or for oppressive reasons" (citation omitted)); *Almeciga v. Ctr. for

Investigative Reporting, Inc.*, 185 F. Supp. 3d 401, 427 (S.D.N.Y. 2016) ("[A] court has the

inherent power to impose sanction on a party for perpetrating a fraud on the Court.");

*Radecki v. GlaxoSmithKline*, 646 F. Supp. 2d 310, 315-19 (D. Conn. 2009) (dismissing the

case with prejudice as a sanction for perjury at trial).

       In the Decision, I gave Pitre and his lawyers an opportunity to move for

reconsideration of my decision to dismiss the action, and I also gave defendants an

opportunity to move for sanctions.  Both sides have done so, and the motions are fully

briefed.  The facts and evidence at trial are set forth in the Decision and will not be

repeated in detail here.  *See* Doc. No. 138.

For the reasons that follow, Pitre's motion for reconsideration is DENIED, and defendants' motion for sanctions is GRANTED to the extent set forth below.

**1.      Pitre's Motion for Reconsideration**

**A.      The Prior Lawsuit**

Pitre moves for reconsideration principally based on his assertion that he had previously disclosed the prior state court personal injury action.  Doc. No. 145 at 2.  Indeed, he notes that the City was aware of the lawsuit because it was a third-party defendant in the lawsuit and received payment of $20,619.67 (out of a total settlement of $65,000) in full satisfaction of a lien of approximately $146,000.  Doc. Nos. 145 at 13, 145-3 at 1.[1]  He also referred to the lawsuit in his deposition in this case, at which he was represented by his trial counsel, Seamus Barrett.  Doc. No. 145-5 at 2.  Hence, I was mistaken to the extent that I believed that Pitre had failed to disclose the prior lawsuit.  *See* Doc. No. 138 at 6.  That belief resulted from the manner in which the issue arose at trial – that is, the prior lawsuit was only brought out by defense counsel during Pitre's cross-examination.

---

[1]      The City had a lien of approximately $146,000 on account of compensation it had paid to Pitre (while he was not working) as well as medical expenses it had paid on behalf of Pitre.  *See* Doc. 145-3 at 1, 3-4.  When the case was settled in June 2018, the City agreed to accept $20,619.67 in "full satisfaction" of its lien.  *See id*. at 1.  In other words, the City waived its right to be repaid some $120,000 that it had paid to Pitre while he was not working or on his behalf for medical expenses.

On cross, Pitre disavowed receiving any income with respect to his injury other than workers' compensation, pension, disability, and social security.  Trial Tr. at 552.  He answered "[n]o" when asked whether he had received any "other money" than what was mentioned.  *Id.*; *see also id.* ("Q.  Beside social security [and other specified benefits], any other income?  A.  No.").  That answer, as it later became clear, was false, as Pitre had also received $65,000 -- some of which was for lost income -- as a result of the settlement of the prior lawsuit.  *See* Doc. No. 145-3 at 1.

After a few minutes of questioning on other matters, defense counsel asked Pitre about the prior lawsuit, which had been filed against J&F Meat Market and its parent company in 2015.  Trial Tr. at 563-64.  I had been unaware of the prior lawsuit, which evidently had been based on the same purported accident, and so I called for a sidebar.  *Id.* at 564.  The following colloquy ensued:

> THE COURT:        Are you aware of this complaint?
>
> MR. BARRETT:      No.
>
> THE COURT:        I suggest we take a recess and you talk to your client about what's going on here.
>
> MR. BARRETT:      Yes.
>
> . . .
>
> MS. DECASTRO:     At this point we believe that there is some fraud[] [on the] court committed by the plaintiff in this case.  We move for bad case [sic] sanctions for the --
>
> THE COURT:        I just said he should talk to his client first.

MS. DECASTRO:     I apologize.

THE COURT:     Too much aggression on the part of the city.  I understand where you're coming from.  Just wait and let's see.  I want to give him a chance to talk to his client.  You [(addressing Mr. Barrett)] might want to ask [Pitre] whether he wants to withdraw the lawsuit.  But let's go out.  I'm going to have the jury take a break.

*Id*. at 565-66.

Outside the presence of the jury, I started asking Pitre questions about his bringing two lawsuits based on the same accident when Derek Smith, named partner of the Derek Smith Law Group, PLLC (the "Firm"), who had been sitting in the audience, stepped forward to interject, indicating he wanted to have a conversation with Pitre.  *Id*. at 568-69.  Pitre stepped down from the witness stand, and I continued to discuss with the lawyers whether Pitre was attempting to commit a fraud on the Court by bringing a second lawsuit based on the same accident and seeking recovery for the same injuries twice.  *Id*. at 569-72.  Again, I asked Mr. Barrett if he had been aware of the prior lawsuit:

THE COURT:     You were not aware of this?

MR. BARRETT:     Right now --

THE COURT:     You were not aware of this case?

MR. BARRETT:     I just told you that, no.

THE COURT:     I understand that.  You were not aware that he was seeking damages for loss earnings in this other lawsuit?

MR. BARRETT:        I was not aware of the other lawsuit.

*Id*. at 573.

Although Mr. Barrett now states he has been "continuously handling this case for over five years," Doc. No. 145 at 5, at trial, he told me three times that he was not aware of the prior case.  My mistaken belief that Pitre had not disclosed the prior lawsuit to the City was based in part on Mr. Barrett's representations that he was unaware of the lawsuit.  Of course, Mr. Barrett's statements that he was unaware of the prior lawsuit are wholly inconsistent with his position now that the prior case had been disclosed in discovery in this case.

Even with the understanding now that Pitre had disclosed and the City was aware of the prior lawsuit, I am still convinced that Pitre was attempting to commit a fraud on the Court and to deceive the jury.  On direct examination at trial, he told the jury that he was injured while getting off the Fire Department vehicle:

> I was on the passenger side of the [Fire Department] utility vehicle.  As I
> was exiting out, it had a big pile of snow.  There's actually two steps.  I
> was stepping out, and I slipped and fell onto the sidewalk.

Trial Tr. at 456.  He contended that he "fell off [the] truck and slipped."  *Id*. at 563.  He testified that he hit the ground and injured his left hand and left shoulder.  *Id*. at 456.

Yet, in his verified complaint in the prior lawsuit, Pitre alleged that:

> On February 27, 2015, Plaintiff was *walking at the Premises* and slipped,
> tripped, and fell due to a icy, black icy, snowy, wet, dirty, hazardous,
> defective, and unsafe Premises.

Doc. No. 142-1 at ¶ 27 (emphasis added); *see also* Doc. No. 142-2 at ¶ 4 (Bill of

Particulars).  The Premises were alleged to be "the building at 1975 Amsterdam Ave.,

Manhattan, New York, and its adjoining sidewalk."  Doc. No. 142-1 at ¶ 8.  The verified

complaint made no mention of a Fire Department vehicle or any vehicle and did not

allege that Pitre fell off a truck or that he fell while disembarking from a utility vehicle.[2]

Hence, Pitre filed two lawsuits based on the same alleged fall but asserting

inconsistent and contradictory theories.  In the earlier case, he alleged that he slipped

and fell while "walking at the Premises" of J&F Meat Market, without any mention of

falling off a Fire Department utility vehicle.  In the present case, he alleges that he fell

off a Fire Department utility truck, without any suggestion that he fell while "walking"

on a poorly maintained sidewalk.

Moreover, despite his counsel's efforts to argue otherwise, Pitre is seeking

damages in this case for injuries for which he has already been compensated, at least in

part.  In the state court case, Pitre alleged that his "resulting injuries" were "caused

*solely*" by reason of the negligence and carelessness of the defendants in that case, that

is, J&F Meat Market and its parent corporation.  Doc. No. 142-1 at ¶ 35 (emphasis

---

[2]      The Third Party Complaint filed by defendants J&F Meat Market and its parent
corporation in the state court action mentioned the Fire Department, stating that
"[i]mmediately *before* arriving at the premises . . ., the plaintiff was a passenger in a
vehicle owned, leased, operated, used, controlled and/or maintained by the City of New
York, the Fire Department of New York City."  Doc. No. 145-7 at 8 ¶ 2 (emphasis
added).

added).  He alleged that he was "severely injured" and "rendered sick, sore, lame and disabled," "some of which injuries are permanent in nature and duration."  *Id*. at ¶ 42. He alleged in his bill of particulars that he "may eventually require a total shoulder replacement procedure in the future," without any mention of any aggravation of his injury because of the purported failings of the Fire Department.  Doc. No. 142-2 at ¶ 15. He also claimed economic damages, as he alleged that he "ha[d] suffered and in the future will necessarily suffer additional loss of time and earnings from employment." Doc. No. 142-1 at ¶ 45.  He also asserted that he would be "unable to pursue the usual duties with the same degree of efficiency as prior to this occurrence, all to Plaintiff's great damage."  *Id*. at ¶ 46.

In the present case, Pitre has claimed that if he had been given "light duty" by the Fire Department after the incident, "[m]y injur[ies] wouldn't be so severe," Trial Tr. at 436, and, consequently, he was "forced to retire" at age 45 when he otherwise would have worked until he was in his 60s, *id*. at 435-36.  He testified that as a consequence of being forced to retire early, he lost income as "[he] was only getting one-third of my salary" and suffered emotionally as well.  *Id*. at 518-19, 522.  Pitre acknowledged that he was "basically alleging . . . that [he was] disabled *because* of the fire department."  *Id*. at 563 (emphasis added).  At a minimum, there is a substantial overlap in the damages sought in the two cases, and thus, Pitre is seeking to recover twice for at least some of the same injuries.  *See Bender v. City of New York*, 78 F.3d 787,

793 (2d Cir. 1996) ("A basic principle of compensatory damages is that an injury can be

compensated only once.  If two causes of action provide a legal theory for compensating

one injury, only one recovery may be obtained." (citations omitted)); *see also Phelan v.*

*Local 305*, 973 F.2d 1050, 1063 (2d Cir. 1992) ("A plaintiff may not recover twice for

the same injury." (citations omitted)).  Moreover, Pitre lied when he told the jury that he

had not received any "other money" on account of the injuries in question other than the

specific benefits identified.  Trial Tr. at 552 ("Q.  Other than the ones we just mentioned,

you received no other money, right?  A.  Right.").  In fact, when the prior lawsuit was

settled, the City waived its right to recover some $120,000 of its lien for compensation

and medical expenses -- monies it had paid to or on behalf of Pitre.  *See* note 1 *supra.*

Notably, the Firm has been sanctioned for similar conduct before.  Just this

week, the Second Circuit affirmed the district court's imposition of sanctions --

including the award of $81,439 in attorneys' fees -- against the Firm and one of its

lawyers because they "seriously misrepresented the nature of a concurrent [state court]

action."  *Doe 1 v. E. Side Club, LLC.*, No. 23-1015-CV, 2024 WL 1756106, at *1 (2d Cir. Apr.

24, 2024) ("*Doe II*"), *aff'd, Doe 1 v. East Side Club, LLC.*, No. 18 CIV. 11324 (KPF), 2021 WL

2709346 (S.D.N.Y. July 1, 2021) ("*Doe I*").  Just as in this case, the plaintiff there --

represented by the Firm -- sought to recover damages for the same injury in both the

federal case and the state court case.  *See Doe II*, 2024 WL 1756106, at *1 (explaining that

the plaintiff "'simultaneously . . . sought to recover for *the same purported emotional*

9

*distress*' in the [state action] and in this case" (quoting *Doe I*, 2021 WL 2709346, at *21)).

As the district court held, the state court action "was directly relevant to -- if not

dispositive of -- the . . . damages sought in [the federal] case." *Doe I*, 2021 WL 2709346,

at *23.  Just as in that case, Pitre and his counsel here made "misrepresentations about

the nature of . . . or scope of [a state court action] . . . with improper purpose -- . . . to

gain a strategic advantage at trial, with reckless disregard for the truth." *Id*.

      In short, I find that Pitre was attempting to defraud the Court and the jury

in this case by misrepresenting the manner in which he was purportedly injured and

the cause of his purported injuries, and by seeking damages for injuries for which he

had already been compensated, at least in part.

      **B.**    <u>**The Poor Lawyering**</u>

      In the Decision, I also recounted the poor lawyering on Pitre's side both

before trial and at trial.  I acknowledged that while poor lawyering in itself may not be a

reason to dismiss a lawsuit, *see, e.g.*, *Perry v. Guerrieri*, No. 18-CV-6443L, 2020 WL

8855260, at *3 (W.D.N.Y. Aug. 27, 2020) ("[W]here an attorney has been at fault, courts

have recognized that it would often be unfair to penalize the client for his counsel's

neglect." (collecting cases)), here, however, Pitre played a significant role in the pattern

of ineptitude that resulted in an enormous waste of time and resources.  *Cf. Hillig v.*

*Comm'r of Internal Revenue*, 916 F.2d 171, 174 (4th Cir. 1990) ("A dismissal sanction is

usually inappropriate when it unjustly penalizes a *blameless* client for the attorney's

behavior." (emphasis added) (collecting cases)).  Pitre failed to provide basic documentation to support his claims, Doc. No. 138 at 8-9, 27-30, recruited witnesses who testified falsely, *id*. at 15-16, and testified falsely himself, *id*. at 7.

Pitre's response to the concerns I raised about the lawyering on his side is to accuse the Court of "Open Hostility To Plaintiff's Case and Counsel."  Doc. No. 145 at 20.  Mr. Barrett contends that I treated him in a "cruel and ill-tempered manner."  *Id*. at 22.  While it is true that I admonished Mr. Barrett many times, the record will speak for itself -- the admonitions were all warranted.  *See* Doc. No. 138 at 8-23.  I bore no hostility or ill-will toward Pitre or his counsel, and there were times when I even assisted Mr. Barrett by, for example, rephrasing a poorly or improperly phrased question for him to move the trial along.  *See, e.g.*, Trial Tr. at 240-42 (assisting counsel in laying the foundation for an exhibit not yet in evidence); *see also, e.g.*, 1/12/2024 Tr. at 5 (giving Mr. Barrett additional time to submit proposed voir dire questions after he had missed deadline); Trial Tr. at 16-17 (giving Mr. Barrett additional time to provide proper deposition designations); *id*. at 333-35, 338-42, 344, 393, 489-91, 538-39 (giving plaintiff's counsel multiple opportunities to be heard on evidentiary issues); *see also* Doc. No. 138 at 16-24.  But the poor lawyering and lack of preparation -- described in detail in the Decision -- resulted in a significant waste of time and resources and tried my patience repeatedly.  Indeed, Mr. Barrett's lawyering was so inept that on the fourth day of trial, his co-counsel moved for a mistrial -- based on "*Mr. Barrett's* conduct up to this point."

Trial Tr. at 487 (emphasis added).  And, as is now apparent from the post-trial briefing,

another example of the poor lawyering was Mr. Barrett telling me -- three times -- that

he was unaware of the prior lawsuit when either he knew about it or, to give him the

benefit of the doubt, he had forgotten that the prior lawsuit had been disclosed in

discovery in the case.  *Id*. at 565, 573.

      While the poor lawyering on the plaintiff's side in this case would not

have been a basis in itself for dismissing the action, it was another indication of the

absence of good faith in the bringing and prosecution of this lawsuit.  Pitre's arguments

in this respect provide no basis for reconsidering my decision to dismiss the action.

    C.    **The Lack of Proof**

      In the Decision, I also discussed the lack of proof presented by Pitre at

trial.  Although he had substantially completed his case -- he had completed his direct

examination, and his only remaining witness was a third communications electrician

who was similarly situated to two other communications electricians who had already

testified -- there was little, if any, evidence to support his claims.  *See* Doc. No. 138 at 24-

32.  In his initial papers moving for reconsideration, he makes no effort to address the

lack of evidence.  *See* Doc. No. 145 at 1-24.  In his reply memorandum, he argues that

the Court "jumped the gun" in dismissing the case, Doc. No. 153 at 10, but he makes no

effort to identify any additional evidence beyond what he had already submitted at

trial.  *See id*. at 1-11.

As I noted in the Decision, in discussing Pitre's lack of proof, I was not granting judgment as a matter of law, but I concluded that the clear lack of evidence was "a further indication of the utter waste of time and resources" caused by the failures of Pitre and his counsel in this case.  Doc. No. 138 at 24.  *See Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 338 (2d Cir. 1999) ("Bad faith can be inferred when the actions taken are 'so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose.'" (quoting *People of State of N.Y. by Vacco v. Operation Rescue Nat.*, 80 F.3d 64, 72 (2d Cir. 1996))).

Indeed, Pitre's motion papers make clear that he had no further evidence to present at trial in support of his claims.  While he submitted numerous documents showing that the City had been a part of and had notice of the prior lawsuit, *see* Doc. No. 145, he submitted nothing to support his claims of discrimination and retaliation. In the Decision, I discussed his failure to present evidence at trial: (1) to support his race-and-retaliation claims, Doc. No. 138 at 24-27; (2) to show that he had worked the requisite hours or had a "serious health condition" qualifying him for FMLA leave, *id*. at 27-30; (3) to document his need for an accommodation or leave, *id*. at 30-31; and (4) to show that Borodo and Mastropietro had personally discriminated or retaliated against him, *id*. at 31-32.  Yet, in his motion papers, he has not provided or identified any medical records, payroll records, or other evidence that would support his claims.  *See*

13

Doc. Nos. 145, 153.  And what he had presented at trial was insufficient, as a matter of law, to prove his claims.

  As I concluded in the Decision, Pitre and his lawyers litigated this case shoddily, recklessly, and in bad faith, as they sought to recover money damages from the City and two individual City officials dishonestly, with little proof and little effort. Doc. No. 138 at 33.  Their conduct was "utterly inconsistent with the orderly administration of justice," *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (citation omitted), and "seriously affect[ed] the integrity of the normal process of adjudication," *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir. 1988) (citation omitted).

   For the reasons set forth above and in the Decision, I adhere to my decision to exercise my inherent authority to dismiss the action with prejudice.  *See Rossbach*, 81 F.4th at 141 ("A 'primary aspect' of the discretion that attends a federal court's inherent power 'is the ability to fashion an appropriate sanction for conduct which abuses the judicial process . . . . [O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion.'" (alteration in original) (quoting *Chambers v. NASCO, Inc.*, 501 U.S.  32, 44-45 (1991))).  Nor is there any basis for imposing a lesser sanction than dismissal with prejudice.  This case has been litigated for six years, and we were on the fourth day of trial.  And despite having presented all of his evidence except for one clearly cumulative witness, Pitre had failed to present any convincing evidence to prove his claims and, to the contrary, had presented falsified

evidence.  He has not identified any alternative sanction that would suffice to address the conduct in this case.  At bottom, continuing the trial would have been "a futile waste of judicial resources."  *Id.* at 142; *see also Radecki*, 646 F. Supp. 2d at 319 (explaining that permitting a plaintiff who had testified falsely at trial to "pay a monetary penalty and then return to court and present his case before a new jury would give the appearance of tolerating 'a flagrant affront to the truth-seeking function of adversary proceedings'" (quoting *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 323 (1994))).  Nor would it be fair, as Pitre requests in the alternative, for the Court to decline to exercise supplemental jurisdiction over his state-and-city-law claims so that he could refile the claims in state court, as this case has been litigated in this Court for six years.

The motion for reconsideration is DENIED, as is the alternative request to dismiss without prejudice to refiling the state and city claims in state court.

## 2.    Defendants' Motion for Sanctions

By denying Pitre's motion for reconsideration, I am leaving intact the dismissal of this action with prejudice as a sanction.  The only remaining question is whether I should impose attorneys' fees and costs.  For the reasons set forth above, I will award attorneys' fees and costs.

The Supreme Court has held that "an order [of attorneys' fees] is limited to the fees the innocent party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith."  *Goodyear Tire*

*& Rubber Co. v. Haeger*, 581 U.S. 101, 103-04 (2017).  "A district court has broad discretion to calculate fee awards under that standard." *Id.* at 104.  If the district court grants an award of "legal fees *beyond* those resulting from the litigation misconduct, its award cannot stand." *Id.* (emphasis added).  In other words, the award of attorneys' fees must be "compensatory rather than punitive" and based on a reasonable calculation. *Id*. at 108 ("[A] sanction counts as compensatory only if it is 'calibrate[d] to [the] damages caused by' the bad-faith acts on which it is based." (second and third alterations in original) (citation omitted)).

Here, rather than direct defendants to submit an attorneys' fee application, I will exercise my discretion to award an amount of fees *substantially* below the fees that would be imposed based on a traditional lodestar calculation.  *See Rossbach*, 81 F.4th at 144 ("[T]he goal of a fee award 'is to do rough justice, not to achieve auditing perfection.'" (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011))).  I do so because defendants did not have to retain counsel as they are represented by the Corporation Counsel's office, and because I have already imposed the sanction of dismissal with prejudice.  I will award attorneys' fees of $10,000, as well as costs, against Pitre and counsel, jointly and severally.  If I were to award fees based on the time required to defend the case -- including the cost of three lawyers preparing for and attending a four-day trial -- the award would be much higher.  Under the circumstances, an award of fees of $10,000 and costs will suffice "to do rough justice." *Rossbach*, 81 F.4th at 144.

## <u>CONCLUSION</u>

For the reasons set forth above and in the Decision, Pitre's motion for reconsideration is DENIED and defendants' motion for attorneys' fees and costs is GRANTED to the extent set forth above.  The Court will enter judgment dismissing Pitre's claims with prejudice and awarding attorneys' fees of $10,000 and costs, against Pitre and his attorneys, jointly and severally.

SO ORDERED.

Dated:    New York, New York
          April 26, 2024

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation

17